# EXHIBIT 52

**Received(Date):**      Mon, 14 Apr 2014 13:27:42 -0400
**Subject:**    Re: Wire info
**From:**       arkadiy dubovoy <dubovoy01@gmail.com>
**To:**         vladislav khalupsky <vkhalupsky2002@yahoo.com>, Vladislav Khalupsky
<vkhalupsky@gmail.com>, dubovoy01@Gmail.com

On Apr 14, 2014 12:51 PM, "arkadiy dubovoy" <dubovoy01@gmail.com> wrote:

Company: boni Inc
Account number: ████1646
Routing number: ████0248
Swift: WFBIUS6S
Bank name: wells Fargo
Bank address: 420 Montgomery San Francisco Can 94104
CHIPS  participant: ████0509

SEC-DOJ-E-0003558

# EXHIBIT 53

**Received(Date):**       Wed, 27 Feb 2013 20:29:37 +0400
**From:**       Vladislav Khalupsky <vkhalupsky@gmail.com>
**To:**       dubovoy01@gmail.com

Please configure our account CMA-Edge ██████0078 as described below:
1. We want to place trades during an Extendet Hours Trading session
2. We want to have ability to trade through SafePass service
3. Sometimes, when i send an order more then 4K shares, in "Orders window" I see "order status" is "pending"
Is it posible to sent orders bigger than 4k without "pending" ??
4. In my "holdings window" I see a lot of position with zero Quantity and zero Value. Can you please explain
what's this ?

SEC-DOJ-E-0000232

# EXHIBIT 54

| **From:** | Vladislav Khalupsky <vkhalupsky@gmail.com> |
| **Sent:** | Monday, September 16, 2013 12:11 PM |
| **To:** | Arkadiy Dubovoy <dubovoy01@gmail.com> |
| **Subject:** | Re: |

---

http://finance.yahoo.com/news/caterpillar-highlights-strong-cash-flow-113000233.html

Sent from my iPhone

On 15 сент. 2013, at 22:26, Arkadiy Dubovoy <dubovoy01@gmail.com> wrote:

> http://investing.businessweek.com/research/stocks/financials/financials.asp?ticker=CAT&dataset=incomeStatement&period=Q¤cy=native
>
> http://finance.cat.com/cda/layout?m=389535&x=7&location=drop
>
> http://www.google.com/finance?cid=5736

SEC-USAONJ-E-0000527

| From: | Vladislav Khalupsky <vkhalupsky@gmail.com> |
|---|---|
| Sent: | Wednesday, December 11, 2013 6:29 PM |
| To: | dubovoy01@gmail.com |
| Subject: | |

Sent from my iPhone

**WEEK OF DECEMBER 09 - 13**

**TUESDAY, DECEMBER 10 2013**

| Time ⌄ | Release | For | Trading Impact ⌄ | Actual |
|---|---|---|---|---|
| 10:00 ET | Wholesale Inventories | Oct | Low | 1.4% |
| 10:00 ET | JOLTS - Job Openings | Oct | Low | 3.925M |

**WEDNESDAY, DECEMBER 11 2013**

| Time ⌄ | Release | For | Trading Impact ⌄ | Actual |
|---|---|---|---|---|
| 07:00 ET | MBA Mortgage Index | 12/07 | Low | 1.0% |
| 10:30 ET | Crude Inventories | 12/07 | High | -10.585M |
| 14:00 ET | Treasury Budget | Nov | Low | |

**THURSDAY, DECEMBER 12 2013**

| Time ⌄ | Release | For | Trading Impact ⌄ | Actual |
|---|---|---|---|---|
| 08:30 ET | Initial Claims | 12/07 | High | |
| 08:30 ET | Continuing Claims | 11/30 | High | |
| 08:30 ET | Retail Sales | Nov | High | |
| 08:30 ET | Retail Sales ex-auto | Nov | High | |
| 08:30 ET | Export Prices ex-ag. | Nov | Low | |
| 08:30 ET | Import Prices ex-oil | Nov | Low | |
| 10:00 ET | Business Inventories | Oct | Low | |
| 10:30 ET | Natural Gas Inventories | 12/07 | High | |

**FRIDAY, DECEMBER 13 2013**

| Time ⌄ | Release | For | Trading Impact ⌄ | Actual |
|---|---|---|---|---|
| 08:30 ET | PPI | Nov | High | |
| 08:30 ET | Core PPI | Nov | High | |

Read more: http://www.briefing.com/InPlavEq/EarningsEvents/EconomicEventsWeek1.htm#ixzz2nBo0u8hg

SEC-USAONJ-E-0000529

# EXHIBIT 55

**Individual CRD#:** 4118574

**Individual Name:** KORCHEVSKY CFA, VITALY V

## Office of Employment Address History

| From | To | Firm | CRD Branch Number | NYSE Branch Code Number | Firm Billing Code | Address | Type of Office | Private Residence |
|------|-----|------|-------------------|-------------------------|-------------------|---------|----------------|-------------------|
| 10/04/2005 | 10/06/2008 | INVESTMENT COUNSELORS OF MARYLAND (116379) | Non Registered Location | | 160569 | 803 CATHEDRAL STREET BALTIMORE, MD 21201 | Located At | No |
| 01/03/2000 | 09/21/2001 | MORGAN STANLEY DISTRIBUTION, INC. (30344) | Non Registered Location | | | ONE TOWER BRIDGE WEST CONSHOHOCKEN, PA 19428 | Located At | No |

**Please note that data contained in the U4 EMPLOYMENT HISTORY SCREEN is updated only by a U4 and does not reflect any changes made by the filing of a U5.**

## Employment History

| From | To | Name | Investment Related Business? | City | State | Country | Position |
|------|-----|------|------------------------------|------|-------|---------|----------|
| 10/2005 | Present | INVESTMENT COUNSELORS OF MD, LLC | Y | BALTIMORE | MD | USA | SR. VICE PRESIDENT |
| 10/2001 | 09/2005 | VICTUS CAPITAL/VICICS CAPITAL | Y | NEW YORK | NY | USA | PARTNER/PORTFOLIO MANAGER |
| 01/2000 | 10/2001 | MILLER ANDERSON & SHERRERD, LLP | Y | WEST CONSHOHOCKEN | PA | USA | PORTFOLIO MANAGER |
| 05/1998 | 12/1999 | GARDNER LEWIS ASSET MANAGEMENT | Y | CHADDS FORD | PA | USA | ANALYST/PORTFOLIO MANAGER |
| 09/1995 | 05/1998 | CRESTAR ASSET MANAGEMENT | Y | RICHMOND | VA | U.S.A. | SMALL-CAP FUND MANAGER |
| 06/1993 | 09/1995 | REGENT UNIVERSITY FINANCE DEPARTMENT | Y | VIRGINIA BEACH | VA | U.S.A. | INTERNAL INVESMTENT CONSULTANT |
| 06/1990 | 06/1993 | STUDENT | N | W. SPRINGFIELD | MA | USA | STUDENT |
| 09/1989 | 06/1990 | IMMIGRATION PROCESSING | N | NONE | AL | ITALY | IMMIGRANT |
| 01/1988 | 09/1989 | YASNEY FURNITURE CO. | N | ZHITOMIR | | UKRAINE | SENIOR EXECUTIVE OFFICER |

# U4 Employment History

**Individual CRD#:** 4118574          **Individual Name: KORCHEVSKY CFA, VITALY V**

## Office of Employment Address History

| From | To | Firm | CRD Branch Number | NYSE Branch Code Number | Firm Billing Code | Address | Type of Office | Private Residence |
|------|----|------|-------------------|-------------------------|-------------------|---------|----------------|-------------------|
| 10/04/2005 | 10/06/2008 | INVESTMENT COUNSELORS OF MARYLAND (116379) | Non Registered Location | | 160569 | 803 CATHEDRAL STREET BALTIMORE, MD 21201 | Located At | No |
| 01/03/2000 | 09/21/2001 | MORGAN STANLEY DISTRIBUTION, INC. (30344) | Non Registered Location | | | ONE TOWER BRIDGE WEST CONSHOHOCKEN, PA 19428 | Located At | No |

| **Please note that data contained in the U4 EMPLOYMENT HISTORY SCREEN is updated only by a U4 and does not reflect any changes made by the filing of a U5.** |
|---|

## Employment History

| From | To | Name | Investment Related Business? | City | State | Country | Position |
|------|----|------|------------------------------|------|-------|---------|----------|
| 10/2005 | Present | INVESTMENT COUNSELORS OF MD, LLC | Y | BALTIMORE | MD | USA | SR. VICE PRESIDENT |
| 10/2001 | 09/2005 | VICTUS CAPITAL/VICICS CAPITAL | Y | NEW YORK | NY | USA | PARTNER/PORTFOLIO MANAGER |
| 01/2000 | 10/2001 | MILLER ANDERSON & SHERRERD, LLP | Y | WEST CONSHOHOCKEN | PA | USA | PORTFOLIO MANAGER |
| 05/1998 | 12/1999 | GARDNER LEWIS ASSET MANAGEMENT | Y | CHADDS FORD | PA | USA | ANALYST/PORTFOLIO MANAGER |
| 09/1995 | 05/1998 | CRESTAR ASSET MANAGEMENT | Y | RICHMOND | VA | U.S.A. | SMALL-CAP FUND MANAGER |
| 06/1993 | 09/1995 | REGENT UNIVERSITY FINANCE DEPARTMENT | Y | VIRGINIA BEACH | VA | U.S.A. | INTERNAL INVESMTENT CONSULTANT |
| 06/1990 | 06/1993 | STUDENT | N | W. SPRINGFIELD | MA | USA | STUDENT |
| 09/1989 | 06/1990 | IMMIGRATION PROCESSING | N | NONE | AL | ITALY | IMMIGRANT |
| 01/1988 | 09/1989 | YASNEY FURNITURE CO. | N | ZHITOMIR | | UKRAINE | SENIOR EXECUTIVE OFFICER |

© 2015 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions

Tw   Lin

# Composite Information

**Individual CRD#:** 4118574          **Individual Name:** KORCHEVSKY CFA, VITALY V

| | |
|---|---|
| **Full Legal Name** | KORCHEVSKY CFA, VITALY VIKTOROVICH |
| **Social Security Number** | xxx-xx-xxxx |
| **Date Of Birth** | ████ 1965 |
| **Residential Address** | 1709 SLITTING MILL ROAD GLEN MILLS, PA 19432 |
| **Reportable Disclosures?** | The specified individual has no disclosure that qualifies under this section (i.e., disclosure required to be reported on Form U4 or Form U5). Regulatory and Broker/Dealer Users: Please note that there are three types of disclosure in Web CRD: Reportable, Legacy and Archive disclosure. An individual with no reportable disclosure may or may not have Legacy or Archive disclosure. Investment Adviser Users: Please note that IARD does not include Legacy disclosure. Information reported on previous form filings through IARD is available under Filing History. |

| Statutory Disqualification Status | Last Updated | |
|---|---|---|
| **Has Material Difference in Disclosure?** | No | |

| **Current CE Status** | No CE Status | | |
|---|---|---|---|

| **Disclosure Counts – Current Disclosures** | Criminal | Regulatory Action | Customer Complaint | Other |
|---|---|---|---|---|
| | 0 | 0 | 0 | 0 |

| **Disclosure Counts – Historical Disclosures** | Criminal | Regulatory Action | Customer Complaint | Other |
|---|---|---|---|---|
| | 0 | 0 | 0 | 0 |

© 2015 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions                                                                      Tw    Lin

# Personal Information

**Individual CRD#:** <u>4118574</u>          **Individual Name: KORCHEVSKY CFA, VITALY V**

| | |
|---|---|
| **Other Names Known by** | KORCHEVSKY CFA, VITALY |
| **Social Security Number** | xxx-xx-xxxx |
| **Date of Birth** | ███1965 |
| **State/Country of Birth** | KAZAKHSTAN USSR |
| **Sex** | M |
| **Height** | 6 ft 0 in |
| **Weight** | 180 lbs |
| **Hair Color** | Black |
| **Eye Color** | Brown |

**Personal Residential History**

| From | To | Street | City | State/Country | Zip |
|---|---|---|---|---|---|
| 05/2002 | Present | 1709 SLITTING MILL ROAD | GLEN MILLS | PA | 19432 |
| 05/2001 | 05/2002 | 654 ROSE TREE ROAD | MEDIA | PA | 19063 |
| 05/2000 | 05/2001 | 17 POST RUN | NEWTOWN SQUARE | PA | 19073 |
| 07/1998 | 05/2001 | 1437 KYNLYN DRIVE | WILMINGTON | DE | 19809 |
| 01/1997 | 07/1998 | 18 WISTIRIA WAY | PALMYRA | VA | |
| 10/1996 | 07/1997 | 20 WILTON PASTURE LANE | CHARLOTTESVILLE | VA | |
| 01/1995 | 10/1996 | ON CAMPUS | RICHMOND | VA | |

© 2015 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions                                                    Tw   Lin

# EXHIBIT 56

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## NTS CAPITAL FUND GP, LLC

This Limited Liability Company Agreement (this "**Agreement**") of NTS Capital Fund GP, LLC (the "**Company**") is entered into as of December 7, 2011 by Vitaly Korchevsky ("**Managing Member**") and Svetlana Korchevsky (who, collectively with any individuals and/or entities who subsequently become members of the Company in the future in accordance with the terms hereof, are referred to herein as "**Members**") pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del.C. § 18-101, et seq.), as amended from time to time (the "**Act**").

**Section 1**     **Name**.  The name of the limited liability company governed hereby is NTS Capital Fund GP, LLC.

**Section 2**     **Certificates**. The certificate of formation of the Company ("**Certificate of Formation**") was duly executed, delivered and filed with the Secretary of State of the State of Delaware on December 7, 2011.  Upon the execution of this Agreement, the Managing Member shall thereafter be designated as an authorized person within the meaning of the Act, and the Managing Member may execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

**Section 3**     **Purpose**.  The Company was formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in all lawful activities for which limited liability companies may be formed under the Act, including, without limitation of the foregoing, serving as the general partner of NTS Capital Fund, LP, a Delaware limited partnership.

**Section 4**     **Powers**.  The Company shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company.

**Section 5**     **Principal Business Office**.  The principal place of business and office of the Company shall be located at, and the Company's business shall be conducted from, 1709 Slitting Mill Rd., Glen Mills, Pennsylvania 19342, and/or such other locations as the Managing Member shall designate from time to time.

**Section 6**     **Registered Office**.  The address of the registered office of the Company in the State of Delaware is:  c/o Stellar Corporate Services LLC, 3500 South DuPont Highway, County of Kent, Dover, Delaware 19901.

**Section 7**     **Registered Agent**.  The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is Stellar Corporate Services LLC, 3500 South DuPont Highway, County of Kent, Dover, Delaware 19901.

SEC-USDOJ-E-0001627

**Section 8**     **Members**.  The names, the mailing addresses, the nature of the interests held, the initial capital contributions and the Percentage Interests (as defined below) of the Members are set forth on **Schedule A** attached hereto.

**Section 9**     **Term**.  The term of the Company commenced on the date of filing of the Certificate of Formation in accordance with the Act and shall continue until dissolution of the Company in accordance with **Section 23** of this Agreement.

**Section 10**     **Limited Liability**.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and none of the Members, any Officer (as hereinafter defined), employee or agent of the Company (including a person having more than one such capacity) shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of acting in such capacity.

**Section 11**     **Initial Capital Contributions**.  Each Member is deemed admitted as a Member of the Company upon his, her or its execution and delivery of this Agreement.  The initial capital contributions of the Members are set forth on **Schedule A** attached hereto.

**Section 12**     **Additional Capital Contributions**.  The Members are not required to make any capital contributions to the Company beyond their initial capital contributions.

**Section 13**     **Capital Accounts**.  Separate capital accounts shall be maintained for each Member on the books of the Company, which accounts shall set forth the capital of such Member in the Company.  Each capital account shall be adjusted to reflect such Member's share of allocations and distributions as provided in **Sections 14 and 15** of this Agreement, and any additional capital contributions to the Company or withdrawals of capital from the Company.  Such capital accounts shall further be adjusted to conform to the Treasury Regs. under Section 704(b) of the Internal Revenue Code of 1986, as amended (the "**Code**"), as interpreted in good faith by the Managing Member.

**Section 14**     **Allocations of Profit and Loss**.  All items of income, gain, loss deduction and credit shall be allocated among the Members in accordance with their percentage interests as set forth on **Schedule A** attached hereto ("**Percentage Interests**").

**Section 15**     **Distributions**.  Distributions shall be made to the Members at such times and in such amounts as may be determined in the sole discretion of the Managing Member.  Distributions shall be allocated among the Members in accordance with their Percentage Interests.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to the Members on account of their interest in the Company if such distribution would violate Section 18-607 of the Act or other applicable law.

**Section 16**     **Management**.

(a)     Subject to the express limitations contained in any provision of this Agreement, the Managing Member shall have complete and absolute control of the affairs and business of the Company, and the Managing Member shall possess all powers necessary, convenient or appropriate to carrying out the purposes and business of the Company, including, without limitation, doing all things and taking all actions necessary to carrying out the terms and provisions of this Agreement.

SEC-USDOJ-E-0001628

(b)     Subject to the rights and powers of the Managing Member and the limitations thereon contained herein, the Managing Member may delegate to any person any or all of his powers, rights and obligations under this Agreement and may appoint, contract or otherwise deal with any person to perform any acts or services for the Company as the Managing Member may reasonably determine.

(c)     No Member (other than the Managing Member) shall participate in the management or control of the business of, or shall have any rights or powers with respect to, the Company except those expressly granted to it by, or pursuant to the terms of, this Agreement, or those conferred on it by law.

(d)     The Managing Member shall hold office until the earliest to occur of its inability to act in such capacity, at which time a successor managing member may be appointed by the Managing Member.

**Section 17     Officers.**  The Managing Member may, from time to time as it deems advisable, appoint officers of the Company (the "**Officers**") and assign in writing titles (including, without limitation, President, Vice President, Secretary and Treasurer) to any such person.  Unless the Managing Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this **Section 17** may be revoked at any time by the Managing Member.

**Section 18     Other Business.**  The Members (including, for the avoidance of doubt, the Managing Member) may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  Neither the Company nor any other Member shall have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

**Section 19     Exculpation and Indemnification.**  The Managing Member shall not be liable to the Company or the other Members for any action taken or omitted to be taken in connection with the business or affairs of the Company, so long as it acted in good faith and is not found to be guilty of gross negligence or willful misconduct with respect thereto, as determined pursuant to a final non-appealable decision of a court of competent jurisdiction.  To the fullest extent permitted by law, the Company agrees to indemnify and hold harmless (i) the Managing Member, (ii) its managers, members, directors, officers, employees, agents and affiliates, and (iii) in the discretion of the Managing Member, the other Members (each, an "**Indemnified Party**") from and against any and all claims, actions, demands, losses, costs, expenses (including attorneys' fees and other expenses of litigation), damages, penalties or interest, as a result of any claim or legal proceeding related to any action taken or omitted to be taken by any of them in connection with the business and affairs of the Company (including the settlement of any such claim or legal proceeding); *provided, however*, that the party against whom the claim is made or legal proceeding is directed is not guilty of gross negligence or willful misconduct, as determined pursuant to a final non-appealable decision of a court of competent jurisdiction.  Any indemnity under this **Section 19** shall be provided out of and to the extent of Company assets only, and no Member (including the Managing Member) shall have personal liability on account thereof.

**Section 20     Admission of Additional Members.**  One (1) or more additional Members of the Company may be admitted to the Company with the written consent of the Managing Member.  The capital contribution required of, and the Percentage Interests assigned

SEC-USDOJ-E-0001629

to, such newly admitted Member shall be determined with the written consent of the Managing Member.

**Section 21      Effect of Bankruptcy, Dissolution, Death or Incompetence of a Member**.  The bankruptcy, dissolution, death or disability of a Member, or an adjudication that such Member is incompetent (a Member experiencing any such event, a "**Disabled Member**"), shall not cause the termination or dissolution of the Company, and the business of the Company shall continue.  If a Member is dissolved or becomes bankrupt, the trustee or receiver of such Disabled Member's estate or, if a Member dies, such Disabled Member's executor, administrator or trustee, or, if such Member is adjudicated incompetent, such Disabled Member's committee, guardian or conservator, or the personal representative of such Disabled Member, as applicable, shall have the rights of such Disabled Member for the purposes of settling or managing such Disabled Member's estate or property and such power as the Disabled Member possessed to dispose of all or any part of such Member's interest in the Company, and to join with any assignee in satisfying conditions precedent to the admission of the assignee as a substitute Member.

**Section 22      Assignments**.     A Member may not transfer, assign, pledge or hypothecate, in whole or in part, his, her or its limited liability company interest without the prior written consent of the Managing Member.

**Section 23      Dissolution**.

(a)      The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Managing Member; (ii) the death, disability, bankruptcy or withdrawal of the Managing Member, in the event no successor managing member is appointed pursuant to **Section 16(d)**; and (iii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)      In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner).

**Section 24      Tax Matters Partner**. The Managing Member shall be the tax matters partner within the meaning of Section 6231(a)(7) of the Code.  All expenses incurred by the tax matters partner in connection with his duties as tax matters partner shall be expenses of the Company.

**Section 25      Elections**.     The Managing Member shall determine the accounting methods and conventions under the tax laws of any and all applicable jurisdictions as to the treatment of income, gain, loss, deduction and credit of the Company or any other method or procedure related to the preparation of such tax returns.  The Managing Member may cause the Company to make or refrain from making any and all elections permitted by such tax laws, and the Managing Member shall not be liable for any consequences to any previously admitted or subsequently admitted Members resulting from making or failing to make any such elections.

**Section 26      Separability of Provisions**.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

{00194498.DOC}                                        4

SEC-USDOJ-E-0001630

Section 27     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement.

Section 28     Entire Agreement.   This Agreement shall constitute the entire agreement and understanding among all the parties hereto with respect to the subject matter hereof.

Section 29     Governing Law, Personal Jurisdiction and Venue.   The parties acknowledge and agree that any claim, controversy, dispute or action relating in any way to this Agreement or the subject matter of this Agreement shall be governed solely by the laws of the State of Delaware, without regard to any conflict of laws doctrines.   The parties irrevocably consent to and submit to being served with legal process issued from the state and federal courts located in the State of New York and irrevocably consent to the exclusive personal jurisdiction of the federal and state courts situated in the State of New York.   The parties irrevocably waive any objections to the personal jurisdiction of these courts.   Said courts shall have sole and exclusive jurisdiction over any and all claims, controversies, disputes and actions which in any way relate to this Agreement or the subject matter of this Agreement.   The parties also irrevocably waive any objections that these courts constitute an oppressive, unfair, or inconvenient forum and agree not to seek to change venue on these grounds or any other grounds.

Section 30     Amendments.   This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Managing Member.

*[remainder of page intentionally left blank]*

SEC-USDOJ-E-0001631

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Limited Liability Company Agreement as of the date first written above.

MANAGING MEMBER:

_____

Vitaly Korchevsky

MEMBER:

_____

Svetlana Korchevsky

SEC-USDOJ-E-0001632

### Schedule A

| NAME | NATURE OF INTEREST | ADDRESS | CAPITAL CONTRIBUTION | PERCENTAGE INTEREST |
|---|---|---|---|---|
| Vitaly Korchevsky | Managing Member | 1709 Slitting Mill Rd., Glen Mills, PA 19342 | $90 | 90% |
| Svetlana Korchevsky | Member | 1709 Slitting Mill Rd., Glen Mills, PA 19342 | $10 | 10% |

SEC-USDOJ-E-0001633

# EXHIBIT 57

## Corporate
## Authority Certificate and Trading Authorization
### For Brokerage Accounts
(For use by Corporations Only)

Page 1 of 2

- Complete all sections, sign and return.

Account Number(s)

Account Title:

Advisor (if applicable):

# SNT CAPITAL FUND LTD

I, VITALY KORCHEVSKY , being the DIRECTOR of SNT CAPITAL FUND LTD a corporation

duly organized and validly existing under the laws of CAYMAN ISLANDS , and having its chief executive office or its only place of

business at INTERTRUST CORPORATE SERVICES (CAYMAN) LIMITED, 190 ELGIN AVENUE, CAYMAN ISLANDS (the "Corporation"), in the name and on behalf of the Corporation, hereby:

(a) represent, and warrant that I am a duly authorized representative of the Corporation and am authorized to execute this Certificate on behalf of the Corporation;

(b) certify that below is a true, complete and correct copy of the resolutions[1] (the "Resolutions") duly adopted by the Board of Directors of the Corporation as of 04-19-2013 , which resolutions have not been amended, modified, revoked or rescinded since their adoption to and including the date hereof;

RESOLVED, that SNT CAPITAL FUND LTD (the "Corporation") is hereby authorized and directed to establish and maintain one or more accounts, including margin accounts (if the Corporation is authorized to open a margin account, the Corporation has checked the box at the end of the Certificate), (each, an "Account"), and to engage in any of the transactions hereinafter described, in each case, with or through J.P. Morgan Securities LLC, J.P. Morgan Clearing Corp., J.P. Morgan Securities plc and/or any of their now or hereafter existing affiliated entities (collectively, "JP Morgan"), through an Account or otherwise, with JP Morgan acting as principal or agent in such transactions;

RESOLVED, that the Corporation is hereby authorized and empowered to purchase (including on a forward or when-issued basis or on margin[*]) hold, finance, pledge, exercise, convert, tender, redeem, exchange, transfer, assign, sell (including on a short, when-issued or forward basis), enter into, write, issue, terminate, amend and otherwise deal and trade, singly or in combination, in the following: any and all forms of securities, evidences of interest, participation, or indebtedness, instruments of any issuer (whether publicly registered or exempt from registration) transactions and investments, including, but not limited to common or preferred stock, scrip, warrants and rights; bills, notes, bonds or debentures of any coupon, (including "zero coupon" or maturity; certificates of deposit, bank notes or deposit notes; commercial paper, money market instruments; listed and/or over-the-counter options, commodities, commodity futures, options on futures (including single stock futures contracts and other securities futures products), transactions in foreign currencies; limited partnership interests and other interests in hedge funds, buyout funds, real estate investment trusts, venture capital funds, private equity funds and private equity investment vehicles; whole mortgage loans, any and all interests and participations in mortgage loans, mortgage-backed and asset backed securities; any kind of derivative investment, including interest rate, currency, credit, equity or other swap transactions; repurchase and reverse[*] repurchase transactions, buy/forward sale transactions, dollar rolls, secured lending transactions and any instrument or interest generally regarded as an investment or hedge, secured or unsecured, or any transaction, that is similar to any of those described above (including an option with respect to any of them) (each of the foregoing, an "Activity");

RESOLVED, that each of the directors, officers, employees and agents of the Corporation listed below ("each, an Authorized Person") is hereby individually authorized for and on behalf of the Corporation by oral, written, electronic or other means to: (1) give to and receive from JP Morgan oral, written or electronic instructions, confirmations, notices or demands with respect to any Account, Activity or transaction; (2) bind the Corporation to enter into and perform any transaction or agreement, amendment or modification thereof, relating to any Account, Activity or transaction involving the Corporation; (3) lend or borrow money or securities and secure the repayment thereof with the property of the Corporation; (4) pay in cash or by check or by credit or debit card or draft drawn upon the funds of the Corporation any sums required to be paid in connection with any Account, Activity or transaction; (5) order the transfer of record of any securities, funds or other property to any name and to accept delivery of any securities, funds or other property; (6) direct the sale or exercise of any rights with respect to any securities or other property; (7) agree to any terms or conditions or execute or otherwise assent to any document or agreement affecting any Account, Activity or transaction; (8) endorse any securities or other property in order to pass title thereto (or any interest therein); (9) direct JP Morgan to surrender any securities or other property for the purpose of effecting any exchange or conversion thereof; (10) appoint any other person or persons to do any and all things which such director, officer, employee or agent of the Corporation is hereby empowered to do; and (11) generally, take all such action as such director, officer, employee or agent of the Corporation may deem necessary or desirable to implement or facilitate the trading activities described herein;

### AUTHORIZED PERSONS

| Name of Director, Officer or Employee of Corporation or Agent | Title / Position | Specimen Signature |
|---|---|---|
| VITALY KORCHEVSKY | DIRECTOR | |
| ARKADIY DUBOVOY | DIRECTOR | |
| | | |
| | | |

---

[1] Please ensure that the resolutions set forth in the certificate are identical to the resolutions adopted by the Corporation.
[*] Unless representation (d) below provides to the contrary.

SEC-USDOJ-E-0003055

RESOLVED, that each of the Authorized Persons listed above is hereby individually authorized, for and on behalf of the Corporation, to execute or otherwise assent to or enter into on behalf of the Corporation all agreements, confirmations, releases, assignments, powers of attorney or other documents in connection with any Account, Activity or transaction, including without limitation, to execute and deliver instructions to JP Morgan to receive or deliver funds or securities, whether free or versus payment, or trade or non-trade related (including to any Authorized Persons);

RESOLVED, that not withstanding the foregoing resolutions, any person with actual or apparent authority is authorized and empowered by the Corporation to undertake any Activity;

RESOLVED, that all actions previously taken by any director, officer, employee, Authorized Person or agent of the Corporation in connection with or related to the matters set forth in or reasonably contemplated or implied by the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Corporation;

RESOLVED, that, JP Morgan may rely on the certifications, representations, warranties, and agreements contained in this Certificate until the close of business on the second business day after JP Morgan receives written notice of the modification or revocation thereof at its offices at Client Services NY1-H051, Three MetroTech Center , Brooklyn, New York 11245-0001 marked to the attention of: (i) Global Clearing Services-New Accounts (if the Corporation's account is maintained by the Global Clearing Services Department and the Corporation engages in equities/prime brokerage), (ii) Fixed Income Clearing Services Managing Director (if the Corporation's account is maintained by the Global Clearing Services Department and the Corporation engages in fixed income trading) and (iii) Documentation Department (if the Corporation's account is maintained by the Private Client Services Department or any other JP Morgan department) or any other address that has been provided by JP Morgan specifically for such purpose and in each case with a copy to the Corporation's account executive or relationship manager(s) at JP Morgan, provided, that JP Morgan may rely on such certifications, representations, warranties, covenants and agreements with respect to any transaction entered into prior to the effectiveness of such modification or revocation;

RESOLVED, that, JP Morgan, their successors and assigns and their respective affiliates, directors, officers, agents and employees (the "Released Parties") are hereby released and forever discharged from, and against, any and all liabilities, responsibilities, obligations, claims, costs, damages, expenses (including attorneys' fees and expenses), penalties judgments or awards incurred or suffered by the Released Parties in connection with their reliance on this Certificate; the Corporation acknowledges that the release and discharge set forth herein are in addition to, and in no way limit or restrict, any rights which any of the Released Parties may have under any other agreement(s) between the Corporation and any of the Released Parties or under any federal or state statutes, laws, rules or regulations; and agree that this release and discharge shall survive the revocation of this Certificate with respect to transactions entered into prior to the effectiveness of such revocation;

(c)  represent and warrant that the Corporation **[check the correct statement or cross out the incorrect statement]**

☑ has more than one officer, director or employee

☐ (i) has only one officer, director and employee and that person is the sole beneficial owner of the Corporation, and
   (ii) the Corporation has provided evidence of such sole ownership to JP Morgan (attached hereto);

(d)  represent and warrant that the Resolutions **[check the correct statement or cross out the incorrect statement]**

☑ authorize the Corporation to engage in margin transactions credited or debited to an account at JP Morgan

☐ do not authorize the Corporation to engage in margin transactions credited or debited to an account at JP Morgan; and

(e)  represent and warrant that the Resolutions **[check the correct statement or cross out the incorrect statement]**

☑ authorize each Authorized Person to order the trade and non-trade related free delivery of funds and securities to
   themselves and third parties.

☐ do not authorize each Authorized Person to order the trade and non-trade related free delivery of funds and securities
   to themselves and third parties.

IN WITNESS WHEREOF the Corporation, through the undersigned, has executed this Certificate and affixed the seal of the Corporation as of the _19_ day of _April, 2013._

BY*:  _____                    [CORPORATE SEAL]
      Signature
      VITALY KORCHEVSKY     DIRECTOR
      (Typed or Printed Name)        (Title)

                                    ☐ Mark here if a corporate seal has not been adopted by the
                                      Corporation and is not required in the applicable jurisdiction.

* This Certificate must be executed by a person or entity duly authorized by the Corporation to do so. The person executing this Certificate shall not be one of the persons authorized to act for the Corporation pursuant to the Resolutions referred to in clause (b) above unless (i) the Corporation has provided evidence that the Corporation has only one officer, director or employee or (ii) the cross certification appearing below is completed.

                              Cross Certification**
I, _Arkadiy Dubovoy_ , the undersigned _Director_ of the Corporation hereby affirm and ratify each of the certifications, representations, warranties, covenants, and agreements contained in this Certificate.

IN WITNESS WHEREOF, the Corporation, through the undersigned, has executed this Certificate as of the _19_ day of _04.13._

                              By: _____

**The Cross-Certification should be completed by a person authorized to act for the Corporation pursuant to the Resolutions set forth in this Certificate.

‾‾ Unless representation (e) below provides to the contrary.

SEC-USDOJ-E-0003056

# EXHIBIT 58

| From: | Vitaly Korchevsky <vkorchevsky@gmail.com> |
| Sent: | Tuesday, March 18, 2014 3:06 PM |
| To: | arkadiy dubovoy <dubovoy01@gmail.com> |
| Subject: | Wire transfer instructions for AWD Technology, Inc |

Arkadiy, here is instructions for wiring money:

Acct Name:    AWD Technology, Inc
Acct Number: ███████9004
ABA Number: ██████2084
Bank Name: Bank of America
Branch Address: 990 Baltimore Pike,
              Glen Mills, PA 19342
Phone Number  ████████-8518

thx
Vitlay

SEC-USDOJ-E-0004324

# EXHIBIT 59

| | |
|---|---|
| **From:** | Vitaly Korchevsky <vkorchevsky@gmail.com> |
| **Sent:** | Friday, February 7, 2014 9:24 PM |
| **To:** | arkadiy dubovoy <dubovoy01@gmail.com> |
| **Subject:** | Expenses: |

2013 Interest expense on $1 mil for Chris - $80,000
Travel to Ukraine on December 25- 28, 2013 - $2,603
Travel to Ukraine On January 27- Feb 1, 2014 - $3,677
Annual filling for AWD Technology Inc., for state of DE - $772
Forming Corp for Cryosurgery  Technology and Filling - $3,200
Deposit to  Banc of America on Cryosurgery Corp account - $1,000

Total amount is $91,252

Vitaly Korchevsky
1709 Slitting Mill Rd.,
Glen Mills, PA 19342

SEC-USAONJ-E-0000496

# EXHIBIT 60

| **From:** | Arkadiy Dubovoy <dubovoy01@gmail.com> |
|---|---|
| **Sent:** | Sunday, January 20, 2013 10:31 AM |
| **To:** | vkorchevsky@hotmail.com |
| **Subject:** | Fwd: proprietary trading business! |
| **Attach:** | traderA reports.JPG; Untitled attachment 00082.htm; traderB reports.JPG; Untitled attachment 00085.htm; One of our trading strategy(Video).rar; Untitled attachment 00088.htm |

Отправлено с iPhone

Начало переадресованного сообщения:

> **От:** "Павел Дубовой." <dubovoyp@gmail.com>
> **Дата:** January 20, 2013, 2:28:55 AM GMT+04:00
> **Кому:** "Аркадий. Дубовой." <dubovoy01@gmail.com>
> **Тема: Перенапр.: proprietary trading business!**

Отправлено с iPhone

Начало переадресованного сообщения:

> **От:** DT CN <cndt168@gmail.com>
> **Дата:** 19 января 2013, 19:38:05 GMT+02:00
> **Кому:** Dubovoyp@gmail.com
> **Тема: proprietary trading business!**

Dear Sir:
　I am Tim, my SKYPE ID is ████, I talk with Viktor about the proprietary trading business few days ago.
　We are prop traders which trade the stock of NYSE, NASDAQ and AMEX. Each of us do large volume perday. In 2012, my trader group make over 3 billions shares volume in NSDAQ and NYSE.At the same time, my three friend's trader group make over 3 billions shares volume in NASDAQ and NYSE also.
　Each of us make stable profit through our special daytrading strategy.(you can see it in the pictrue "traderA reports.JPG" and "traderB reports.JPG") We would not cause sudden losses to your capital, you know we have dozens traders, and each of them do hundreds of traders perday, so the risk will be diversification, we never loss money in the twelve months of 2012.One of our trading strategy show in the video in the attachment. In the example, trader place two 1000shares short orders at $50.81 and $50.82, then he place many buy orders at $50.79 and $50.80,to creates a pressure to cause buying activity, he get 1564shares short position in this example, then he cancel the buy orders in $50.81 and $50.82, place a 1564shares buy order at $50.78,and place many short orders at $$50.80 and $50.79 to creates a pressure to cause short activity.
　I think the clearing firm provide prime broker server.
　You can invest the capital to clearing firm, we do not use the capital, clearing firm manage your capital, and they provide buying power, we open account from your

SEC-USAONJ-E-0000140

company.Our single trader's risk will be controlled by serveral measures:1)The trading platform(sterlingtrader pro)can control the dailyloss of a trader forcedly. 2)We keep back the deposit of traders, if the trader's dailyloss is $1,500, we will keep back $4,500 deposit from him. 3)Trader do not trade the stock which daily volume is too low, we trade the stock which daily volume above 1m. 4)Trader don't take positions overnight, we do all intraday trading.

Considering our big volume, you can find a clearing firm which provide lower commission fee to deal with, if they charge you $0.10/1000shares, you can charge us $0.20/1000shares.And you take profit split from us.The commission fee is a stable income.

In China and Russia there are so many prop traders. I can introduce more and more prop trading group to your company if you can permit me the exclusive agency in China.There is a prop trading company in China make about 1.3 billions volume per month, they have so many traders but each of them do normal strategy like rebate trading.

Why we look for a good broker replace current broker.There are so many reasons.First,whether Chinese prop traders or Russian prop traders, they open account from the broker from Canada(Maybe some is Russian broker), Which sell trader's order flow to HFT company, so much trader's order flow can be used to design a HFT algo to trade against traders.Secondery, so many broker are not "real broker", it maybe a agent of a broker, or a secondery agents, ever a filiale of secondery agents.So there are so many people can monitor our trading activity,they may trade against us or follow us to make profit.Thirdly, some broker limited our open orders, they do not support our trading strategy.

We are sincerely looking forward to cooperatering with you.
Best Wishes!

SEC-USAONJ-E-0000141

# EXHIBIT 61

| | |
|---|---|
| **From:** | SNT Capital SNTCapital <snt.capital.fund@gmail.com> |
| **Sent:** | Thursday, October 24, 2013 1:14 PM |
| **To:** | dekhtyarenkok@mail.ru |
| **Cc:** | dubovoy01@gmail.com |
| **Subject:** | Hedge fund documents |
| **Attach:** | AA - PPM - SNT Capital Fund Ltd - FINAL.pdf; AA - Sub Doc - SNT Capital Fund Ltd - FINAL.pdf |

Good morning Konstantin,
my name is Vitaly Korchevsky and I am the manager for SNT Capital Fund.
I just spoke with Arkadiy and he asked me to send you PPM and Subscription Documents for the fund.
Attached you will find both documents.
PPM is the description of the Fund.
Sub Docs is what you will need to fill out, sign and send back to me..
Process is as follow: 1. you will review both documents
                   2. you need to fill out and sign Sub Docs and e-mail it back to me
                   3. I will forward signed Sub Docs to the Administrator
                   4. Administrator (Harmonic) will review documents and do the background check on money (anti-laundering procedure)
                   5. Once administrator approves the funds you will need to transfer money to the Administrator to HSBC bank.

Only after funds will be transferred to the Administrator we will get permission to manage your funds.

If you would have any questions please call me at ████-1041 (USA)

Thank you very much for your interest.

Best regards

Vitaly Korchevsky

# EXHIBIT 62

| | |
|---|---|
| **From:** | Vitaly Korchevsky <vkorchevsky@gmail.com> |
| **Sent:** | Tuesday, January 14, 2014 9:32 PM |
| **To:** | Tim Rossiter <tim.rossiter@harmonic.ky> |
| **Bcc:** | Vitaly Korchevsky <vkorchevsky@gmail.com> |
| **Subject:** | Signed SubDoc part 2 for Mr Dubovyi attached |
| **Attach:** | SubDoc Vyacheslav Dubovyi-part2.pdf |

SEC-USDOJ-E-0004164

**APPENDIX 2**

**SCHEDULE 3 COUNTRIES AS PUBLISHED IN THE MONEY LAUNDERING REGULATIONS (2010 REVISION) AS AMENDED BY THE MONEY LAUNDERING (AMENDMENT) REGULATIONS 2012**

**Countries /Territories with Equivalent Legislation**

| | |
|---|---|
| Argentina | Israel |
| Australia | Italy |
| Austria | Japan |
| Bahamas | Jersey |
| Bahrain | Liechtenstein |
| Barbados | Luxembourg |
| Belgium | Malta |
| Bermuda | Mexico |
| Brazil | Netherlands |
| British Virgin Islands | New Zealand |
| Canada | Norway |
| Denmark | Panama |
| Finland | People's Republic of China |
| France | Portugal |
| Germany | Singapore |
| Gibraltar | Spain |
| Greece | Sweden |
| Guernsey | Switzerland |
| Hong Kong | Turkey |
| Iceland | United Arab Emirates |
| India | United Kingdom |
| Ireland | United States of America |
| Isle of Man | |

14

SEC-USDOJ-E-0004165

# APPENDIX 3

## APPROVED MARKETS AND EXCHANGES AS OF 27 SEPTEMBER 2012

| | |
|---|---|
| Amman Stock Exchange | Istanbul Stock Exchange |
| Athens Exchange | JASDAQ |
| Australian Securities Exchange | Johannesburg Stock Exchange |
| BATS Exchange | Korea Stock Exchange |
| Bayerische Borse AG | London Stock Exchange |
| Berlin Stock Exchange | Ljubljana Stock Exchange |
| Bermuda Stock Exchange | Luxembourg Stock Exchange |
| BME Spanish Exchanges | Madrid Stock Exchange |
| BM&F Bovespa | Malaysia Stock Exchange |
| BOAG Borsen AG | Malta Stock Exchange |
| Bolsa de Comercio de Buenos Aires | Mexican Stock Exchange |
| Bolsa de Comercio de Santiago | Montreal Exchange |
| Bolsa de Valores de Caracas* | Moscow Interbank Currency Exchange |
| Bolsa de Valores de Colombia | Nagoya Stock Exchange* |
| Bolsa de Valores de Lima | NASDAQ OMX |
| Bolsa de Valores de Lima | NASDAQ OMX BX |
| Bombay Stock Exchange | NASDAQ OMX PHLX |
| Borsa Italiana SPA | NASDAQ Stock Market |
| Bratislava Stock Exchange | National Stock Exchange (U.S.) |
| Bucharest Stock Exchange | National Stock Exchange of India |
| Budapest Stock Exchange | New York Stock Exchange |
| Bulgarian Stock Exchange | New Zealand Exchange |
| Cayman Islands Stock Exchange | NYSE Amex |
| Channel Islands Stock Exchange* | NYSE Arca |
| Chicago Board Options Exchange | NYSE Euronext |
| Chicago Stock Exchange | OMX Nordic Exchanges |
| CME Group | Osaka Securities Exchange |
| Colombo Stock Exchange | Oslo Axess |
| Copenhagen Stock Exchange | Oslo Stock Exchange |
| Cyprus Stock Exchange | Philippine Stock Exchange |
| Czech Stock Exchange | PLUS Markets |
| Deutsche Borse | Prague Stock Exchange |
| Dusseldorf Stock Exchange | RMX Hannover |
| EDX London Eurex Euronext | Saudi Stock Exchange (Tadawul) |
| Fukuoka Stock Exchange* | Shanghai Stock Exchange |
| Hong Kong Exchange and Clearing | Shenzhen Stock Exchange |
| Indonesia Stock Exchange | Singapore Exchange |

15

SEC-USDOJ-E-0004166

Intercontinental Exchange
International Securities Exchange
Irish Stock Exchange
Taiwan Stock Exchange
Tel Aviv Stock Exchange
The Egyptian Exchange
The Stock Exchange of Thailand
TLX s.p.a.
Tokyo Stock Exchange

Stuttgart Stock Exchange
SIX Swiss Exchange
Stock Exchange of Mauritius
Toronto Stock Exchange
Valencia Stock Exchange
Vienna Stock Exchange
Vilnius Stock Exchange
Warsaw Stock Exchange

* indicates discretionary approval

SEC-USDOJ-E-0004167

APPENDIX 4

**Definitions Relating to Senior Foreign Political Figure:**

**Senior Foreign Political Figure** is a current or former senior executive, legislative, administrative, judicial or military official of a foreign government (whether elected or not), a senior official of a major foreign political party, a senior executive of a foreign government-owned commercial enterprise, or a corporation, business or other entity that has been formed by, or for the benefit of, any such individual.

**Immediate Family Member** of a Senior Foreign Political Figure generally includes the individual's parent, sibling, spouse, child or spouse's parent or sibling.

**Close Associate** of a Senior Foreign Political Figure is a person publicly known (or actually known by the Subscriber) to maintain a close personal or professional relationship with such an individual.

17

SEC-USDOJ-E-0004168

APPENDIX 5

**Eligible Introducer's Form**

*(To be completed by the Introducer on Company Letterhead)*

To:     Harmonic Fund Services
        Cayman Corporate Centre
        4th Floor
        27 Hospital Road
        P.O. Box 940 GT
        George Town
        Grand Cayman KY1-1102
        Cayman Islands
        Attention:  Investor Services
        Tel:  + 345 949 0090
        Fax: + 345 945 1335

**Information about the Introducer**

Name of Introducer:                  *Vitaly Korchevsky*

Address of Introducer:               *1709 Slitting Mill Rd.*
                                     *Glen Mills, PA 19342, USA*

Telephone Number:                    ███████ *-1041*      Fax Number:

Email:                               *vkorchevsky@gmail.com*

Name of Applicant for Business
("Introduced Client"):               *Viacheslav Dubovyi / Frelta Business Inc*

Address of Introduced Client:        *10-B 1st Lemannaya St.*
                                     *P. Korsuntzy, Odessa Region, Ukraine, 67583*

I/We confirm that I/We am/are:  - [Please tick as appropriate]

1.   A Financial Services Provider in a Schedule 3 country as defined by the Money Laundering
     Regulations of the Cayman Islands.

2.   An institution which belongs to the same corporate group as the Cayman Islands Financial
     Services Provider.

3.   A Professional Intermediary in a Schedule 3 country as defined by the Money Laundering
     Regulations of the Cayman Islands.

     (Specify which country)              *USA*

SEC-USDOJ-E-0004169

4.  A member of a local association or professional body to which the Money Laundering Regulations of the Cayman Islands apply which is subject to disciplinary procedures for failure to conduct relevant financial business in accordance with equivalent rules and guidelines to the Money Laundering Regulations of the Cayman Islands.

5.  A business which is subject to the Money Laundering Regulations of the Cayman Islands.

Name and address of relevant regulator/professional body:

_____

_____

_____

I confirm that I have satisfactory evidence of the identity of the Introduced Client and will on request provide a copy of that evidence. Satisfactory evidence is such evidence as will satisfy the anti-money laundering regime in the Schedule 3 country from which the introduction is made.

Name: *Vitaly Korchevsky*

Signature: *[signature]*

Job Title: *Director SDT Capital LTD*

Date: *01/03/2014*

**OR**

I confirm that under the law of the Schedule 3 jurisdiction from which the introduction is made, I am not required to have evidence of identity of the Introduced Client since the relationship existed before the implementation of the anti-money laundering regime. I confirm that the Introduced Client has been a client of mine since _____ and I am not aware that the Introduced Client has been found to be or has been suspected of activity that would presently constitute a money laundering offence. I also confirm that I have fully complied with the anti-money laundering regime to which I am subject.

Name: _____

Signature: _____

Job Title: _____

Date: _____

SEC-USDOJ-E-0004170

# ANNEX 2

## ADDITIONAL SUBSCRIBER REPRESENTATIONS, WARRANTIES, ACKNOWLEDGMENTS AND CONFIRMATIONS

**1.    General**

As an inducement to the Fund to sell the Subscriber the Shares, the Subscriber hereby represents, warrants and agrees as follows:

l)    EITHER:

    A.  the Subscriber:

        (i)    is a "Non-United States Person" as defined in Section I of Appendix A, <u>and</u> is not a "U.S. Person", as defined in Section II of Appendix A;

        (ii)    is not purchasing Shares on behalf of or for the account of a U.S. Person, nor with a view to the offer, sale, delivery, directly or indirectly, of Shares in the United States, its territories, possessions and other areas subject to its jurisdiction (the "**United States**");

        (iii)    has not used, to effect the purchase of Shares, any funds obtained from any U.S. Person;

        (iv)    will not transfer or deliver any Shares or any interest therein to a U.S. Person;

        (v)    will notify the Fund if the Subscriber becomes a U.S. Person at any time during which the Subscriber holds any Shares; and

        (vi)    the Shares were offered to the Subscriber outsider the United States and, at the time the buy order for the Shares was originated, the Subscriber was outsider of the United States; OR

    B.  the Subscriber is a U.S. Person which is both an "accredited investor" and a "qualified purchaser", as defined in Appendix B;

m)   the Subscriber has been provided an opportunity to obtain any additional information concerning the offering, the Fund and to verify the accuracy of the information contained in the Memorandum (to the extent the Fund or its authorized representatives possess such information or could acquire it without unreasonable effort or expense) and has been given the opportunity to ask questions of, and receive answers from, the Fund or its authorized representatives concerning the terms and conditions of the offering and other matters pertaining to this investment;

n)    except as otherwise indicated herein, the Subscriber is acquiring Shares for its own account, for investment purposes only and not with a view toward distributing or reselling the Shares in whole or in part.

o)    the Subscriber confirms that none of the Fund, the Investment Manager, any of their respective principals, members and affiliates, officers, agents, directors and other representatives (the "**SNT Parties**") guarantees the success of an investment in the Shares or that substantial losses will not be incurred on such investment;

p)    the Subscriber understands that all redemptions require 45 days' prior written notice to the Administrator;

SEC-USDOJ-E-0004171

q) the Subscriber understands that the Investment Manager or its affiliates receive remuneration from the Fund and that such remuneration is calculated on a basis which includes unrealized as well as realized gains;

r) the Subscriber specifically agrees and consents to the conflicts of interest to which the SNT Parties may be subject in operating the Fund, and covenants not to object to or bring any proceedings against any of the foregoing relating to any such conflicts of interest. The Subscriber acknowledges that the business terms of the Fund have been established without arm's-length negotiations with any representatives of the prospective investors;

s) the Subscriber acknowledges that the Investment Manager participates in the management of other funds in addition to the Fund and will not devote all or substantially all of the Investment Manager's business time to the management of the Fund;

t) the Subscriber acknowledges and agrees that the Fund may execute trades, including securities trades executed on a principal-to-principal basis, with affiliates of the Investment Manager, except as prohibited by law;

u) the Subscriber acknowledges and consents to the Investment Manager consenting, on behalf of the Fund, to soft dollar arrangements, despite the fact that such arrangements may fall outside of the safe harbor established by Section 28(e) of the Securities Exchange Act of 1934, as amended;

v) the Subscriber confirms that the Subscriber is generally exempt from U.S. federal income tax or is a partnership, grantor trust, S corporation or other entity treated as a pass-through entity (a "**Pass-Through Entity**") for U.S. tax purposes all of whose beneficial owners are generally exempt from U.S. federal income tax;

w) if the Subscriber is a Pass Through Entity: (i) at no time will substantially all of any beneficial owner's direct or indirect interest in the Subscriber be attributable to the Subscriber's interest in the Fund; (ii) at no time will substantially all of the Subscriber's value be attributable to the Subscriber's interest in the Fund, and (iii) the Subscriber's beneficial owners are not are not investing in the Fund through a Pass-Through Entity for the principal purpose of permitting the Fund to satisfy the 100-partner limitation set forth in Treasury Regulations section 1.7704-1(h) (regarding the private placement safe harbor from treatment as a publicly traded partnership); and

x) the Subscriber certifies under penalties of perjury that (a) the Subscriber's name, taxpayer identification or social security number and address provide are correct and (b) the information contained in the executed copy of IRS Form W-9 or W-8BEN, as appropriate, submitted herewith is correct. The Subscriber shall promptly inform the Administrator of any change in such information and execute a new IRS Form W-9 or W-8BEN, as appropriate, with the correct information. The Subscriber agrees to provide the Administrator with such additional forms and information as the Administrator may reasonably request for the purpose of establishing the proper or permissible treatment of tax withholding obligations with respect to the Subscriber.

2.    **Trustee, Agent, Representative or Nominee**

If the Subscriber is acting as trustee, agent, representative or nominee for or on behalf of another person (a "**Beneficial Owner**"), the Subscriber understands and acknowledges that the representations, warranties and agreements made herein are made by the Subscriber (A) with respect to the Subscriber and (B) with respect to the Beneficial Owner of the Shares subscribed for hereby. The Subscriber further represents and warrants that (1) it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Form, (2) it has performed appropriate due diligence to determine the identity of the Beneficial Owner(s), if applicable, and will provide the results of such due diligence to the Fund upon request and (3) it believes that entering into a financial relationship with the Fund will not cause the Fund to contravene any applicable laws and regulations relating to

- 22 -

prevention of money laundering. The Subscriber also agrees to indemnify the SNT Parties and the Administrator for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Subscriber's or the Beneficial Owner's misrepresentation or misstatement contained herein, or the assertion of the Subscriber's lack of proper authorization from the Beneficial Owner of the Shares subscribed for hereby to enter into this Subscription Form or perform the obligations hereof.

3.     **ERISA Information**

    A.   Is the Subscriber (answer each question in (A)(i)-(A)(vii)):

        (i)   subject to the fiduciary provisions under Part 4 of Title I of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**")?

            _____Yes             ✓ No

        (ii)   an entity that is subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "**Code**"), including a trust which is exempt from tax under Section 501(a) of the Code because it meets the requirements described in Section 401(a) of the Code, an individual retirement account (an "**IRA**"), or any other trust, plan, account or annuity that is subject to Section 4975 of the Code?

            _____Yes             ✓ No

        (iii)   a governmental plan within the meaning of Section 3(32) of ERISA?

            _____Yes             ✓ No

        (iv)   a church plan within the meaning of Section 3(33) of ERISA?

            _____Yes             ✓ No

            I.   If the Subscriber answered "Yes" to (A)(iv), has such church plan elected to be subject to ERISA?

                _____Yes             ✓ No

        (v)   a plan which is established and maintained outside of the United States primarily for the benefit of individuals substantially all of whom are neither residents nor citizens of the United States?

            _____Yes             ✓ No

        (vi)   a group trust, bank collective investment trust or insurance company separate account?

            _____Yes             ✓ No

        (vii)   a partnership, limited liability company, trust or other entity not described in (A)(vi)?

            _____Yes             ✓ No

    B.   If the Subscriber answered "Yes" to either (A)(vi) or (A)(vii), is it (answer both (B)(i) and (B)(ii) below):

SEC-USDOJ-E-0004173

- 23 -

    (i)    subject to the fiduciary provisions under Part 4 of Title I of ERISA?

        \_\_\_\_\_ Yes        \_\_\_\_\_ No

    (ii)    subject to the prohibited transaction provisions of Section 4975 of the Code?

        \_\_\_\_\_ Yes        \_\_\_\_\_ No

C.  If the Subscriber answered "Yes" to either (B)(i) or (B)(ii), please complete the following representation by filling in the correct percentage:

Throughout the period the Subscriber holds Shares, less than \_\_\_\_\_% of the total value of the equity interests in the Subscriber will at any time be held by Benefit Plan Investors (as defined below).

D.  Is the Subscriber an insurance company that is purchasing Shares with assets of its general account?

        \_\_\_\_\_ Yes        \_\_\_\_\_ No

If the Subscriber answered "Yes" to (D), please complete the following representation by filling in the correct percentage:

Throughout the period the Subscriber holds Shares, less than \_\_\_\_\_% of the general account as a whole will constitute plan assets of Benefit Plan Investors (as defined below).

For purposes of the foregoing, a "Benefit Plan Investor" as defined in Section 3(42) of ERISA includes employee benefit plans that are subject to the fiduciary provisions of Part 4 of Title I of ERISA (including, without limitation, pension and profit-sharing plans), plans that are subject to the prohibited transaction provisions of Section 4975 of the Code (including, without limitation, IRAs and Keogh plans), and entities whose underlying assets include plan assets of either of the foregoing.  The term Benefit Plan Investor does not include government plans, non-U.S. plans and church plans that have not elected to be subject to ERISA.

E.  Is the Subscriber a person who has discretionary authority or control with respect to the assets of the Fund or provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person (a "**Management Affiliate**")?

        \_\_\_\_\_ Yes        \_\_\_\_\_ No

For purposes of the foregoing, an "affiliate" of a person includes any person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with such person.  "Control," with respect to a person other than an individual, means the power to exercise a controlling influence over the management or policies of such person.

F.  Is the Subscriber investing assets of a pension plan, IRA or other tax-exempt entity that is subject to federal income tax on any unrelated business taxable income ("**UBTI**")?

        \_\_\_\_\_ Yes        \_\_\_\_\_ No

G.  If the Subscriber is a Benefit Plan Investor, the Subscriber has so indicated above.  If the Subscriber is a Benefit Plan Investor, a governmental plan, a foreign plan or other employee benefit plan, account or arrangement whether or not subject to the fiduciary provisions of

SEC-USDOJ-E-0004174

- 24 -

ERISA or Section 4975 of the Code (collectively, with Benefit Plan Investors, referred to as "**Plans**"), the Subscriber makes the following representations, warranties and covenants:

(i)     The decision to commit assets of the Plan for investment in the Fund was made by fiduciaries independent of the Fund, the Investment Manager and any of their respective agents, representatives or affiliates, which fiduciaries (a) are duly authorized to make such investment decision and have not relied on any advice or recommendations of the Fund, the Investment Manager or any of their respective agents, representatives or affiliates and (b) in consultation with their advisers, have carefully considered the impact of ERISA, the Code and the regulations, rules, procedures and judicial decisions thereunder, to the extent applicable, or any applicable state or local law similar to ERISA or Section 4975 of the Code, on an investment in the Fund;

(ii)    None of the Fund, the Investment Manager or any of their respective agents, representatives or affiliates has exercised any discretionary authority or control with respect to the Plan's investment in the Fund, nor has the Fund, the Investment Manager or any of their respective agents, representatives or affiliates rendered individualized investment advice to the Plan based upon the Plan's investment policies or strategies, overall portfolio composition or diversification with respect to its commitment to invest in the Fund and the investment program thereunder;

(iii)    It acknowledges and agrees that it is intended that the Fund will not hold plan assets of the Plan and that none of the Fund, the Investment Manager or any of their respective agents, representatives or affiliates will be acting as a fiduciary to the Plan under ERISA, the Code or any applicable federal, state or local law governing the Plan, with respect to either (a) the Plan's purchase or retention of its investment in the Fund or (b) the management or operation of the business or assets of the Fund. It also confirms that, assuming the Fund does not hold "plan assets" (within the meaning of 29 C.F.R. 2510.3-101, as modified by Section 3(42) of ERISA) ("**Plan Assets**") there is no rule, regulation, or requirement applicable to such Subscriber that is inconsistent with the foregoing description of the Fund and the Investment Manager;

(iv)    Assuming the assets of the Fund are not deemed to be Plan Assets, the execution and delivery by the Plan, and compliance by the Plan with this Subscription Form (including all appendices, attachments or exhibits hereto or thereto) and each other document required to be executed and delivered by the Plan in connection with this subscription for Shares, and the contemplated investment program and operations of the Fund, do not conflict with, or constitute a default under, any instruments or applicable guidelines governing the Plan, any applicable law, regulation or order, or any agreement to which the Plan is a party or by which the Plan is bound. The Subscriber shall promptly advise the Fund in writing of any changes of which it becomes aware in any governing law or any regulations thereunder or interpretations thereof affecting the duties, responsibilities, liabilities or obligations of the Fund, the Investment Manager or any of their respective agents, representatives or affiliates with respect to the Plan. This Subscription Form has been duly executed by the Plan and constitutes, and when the Plan is admitted as an investor, will constitute, a valid and legally binding agreement of the Plan;

(v)    Assuming the assets of the Fund are not deemed to be Plan Assets, it represents and warrants that its acquisition and holding of Shares will not result in or give rise to a non-exempt "prohibited transaction" under ERISA or Section 4975 of the Code;

SEC-USDOJ-E-0004175

- 25 -

(vi)   It (a) represents and warrants that the information provided above in (A) through (F) is true and accurate as of the date hereof, (b) covenants that such information will remain true and accurate for so long as the Subscriber holds Shares in the Fund and (c) agrees to immediately notify the Fund if it has any reason to believe that it is or may be in breach of the foregoing representation and covenant; and

(vii)   It agrees that it will provide additional information reasonably requested by the Fund, or the Investment Manager for purposes of compliance with applicable law.

SEC-USDOJ-E-0004176

- 26 -

4.    **New Issue Status**

Please refer to Appendix C of this Annex 2 for instructions on completing this Section.

The Subscriber elects to be treated as a "Restricted Person" for purposes of FINRA Rule 5130 and FINRA Rule 5131:

      (a) ❑

The Subscriber is a "Pure Non-Restricted Person" for purposes of FINRA Rule 5130 and FINRA Rule 5131:

      (b) ☑

The Subscriber is an "Exempt Person" and treated as "Non-Restricted" for purposes of FINRA Rule 5130 and FINRA Rule 5131:

      (c) ❑   (d) ❑   (e) ❑   (f) ❑   (g) ❑   (h) ❑   (i) ❑   (j) ❑   (k) ❑   (l) ❑

The Subscriber is a "Restricted Person" under FINRA Rule 5130:

      (m) ❑   (n) ❑   (o) ❑   (p) ❑   (q) ❑   (r) ❑   (s) ❑   (t) ❑   (u) ❑   (v) ❑   (w) ❑

      (x) ❑   (y) ❑   (z) ❑

The Subscriber is a "Restricted Person" under FINRA Rule 5131:

      (aa) ❑  (bb) ❑  (cc) ❑

*If the Subscriber has checked any box above, please identify each relevant Public Company or Covered Non-Public Company below:*

      _____

      _____

      _____

The Subscriber is a collective investment vehicle or other account in which 5130 Restricted Persons have a beneficial interest:

      (dd) ❑

*If the Subscriber has checked (dd) above, then please complete the following:*

           The beneficial interests of all such 5130 Restricted Persons in any profits or losses attributable to new issues and allocable to the Subscriber by the Partnership will at all times be less than _____%.

The Subscriber is a collective investment vehicle or other account in which 5131 Restricted Persons have a beneficial interest:

      (ee) ❑

SEC-USDOJ-E-0004177

*If the Subscriber has checked (ee) above, then please complete the following:*

> The Subscriber hereby represents and warrants by initialling here that the beneficial interests of its 5131 Restricted Participants with respect to a particular Public Company or Covered Non-Public Company do not, and will not, exceed in the aggregate 25% of the Subscriber: _____

*If the Subscriber does not check any box (a – ee) above, the Subscriber shall be deemed to have elected to be treated as a "Restricted Person" for purposes of FINRA Rule 5130 and FINRA Rule 5131*

SEC-USDOJ-E-0004178

APPENDIX A

THE SUBSCRIBER — OTHER THAN A QUALIFIED U.S. TAX-EXEMPT
INVESTOR — MUST BE A "NON-UNITED STATES PERSON" AND MUST
NOT BE A "U.S. PERSON" UNDER THE DEFINITIONS SET FORTH BELOW.

I.      U.S. COMMODITY FUTURES TRADING COMMISSION DEFINITION OF "NON-UNITED
        STATES PERSON"

**Non-United States person means:**

(A)     A natural person who is not a resident of the United States;

(B)     A partnership, corporation or other entity, other than an entity organized principally for passive
        investment, organized under the laws of a foreign jurisdiction and which has its principal place of
        business in a foreign jurisdiction;

(C)     An estate or trust, the income of which is not subject to United States income tax regardless of
        source;

(D)     An entity organized principally for passive investment such as a pool, investment company or
        other similar entity; provided that units of participation in the entity held by persons who do not
        qualify as Non-United States persons or otherwise as qualified eligible persons (as defined in
        CFTC Rule 4.7) represent in the aggregate less than 10% of the beneficial interest in the entity,
        and that such entity was not formed principally for the purpose of facilitating investment by
        persons who do not qualify as Non-United States persons in a pool with respect to which the
        operator is exempt from certain requirements of Part 4 of the Commission's regulations by virtue
        of its participants being Non-United States persons; and

(E)     A pension plan for the employees, officers or principals of an entity organized and with its
        principal place of business outside the United States.

II.     REGULATION S DEFINITION OF "U.S. PERSON"

        The definition of "U.S. Person" under Regulation S promulgated under the Securities Act is set
forth below.

(A)     "U.S. Person" means:

        (i)      any natural person resident in the United States;

        (ii)     any partnership or corporation organized or incorporated under the laws of the
                 United States;

        (iii)    any estate of which any executor or administrator is a U.S. Person;

        (iv)     any trust of which any trustee is a U.S. Person;

        (v)      any agency or branch of a foreign entity located in the United States;

        (vi)     any non-discretionary account or similar account (other than an estate or trust)
                 held by a dealer or other fiduciary for the benefit or account of a U.S. Person;

**Error! Unknown document property
name.**

SEC-USDOJ-E-0004179

- 29 -

(vii)  any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; or

(viii)  any partnership or corporation if:

(A)  organized or incorporated under the laws of any foreign jurisdiction; and

(B)  formed by a U.S. Person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) under the Securities Act) who are not natural persons, estates or trusts.

(B)  Notwithstanding (A) above, any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. Person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the U.S. shall not be deemed a "U.S. Person."

(C)  Notwithstanding (A) above, any estate of which any professional fiduciary acting as executor or administrator is a U.S. Person shall not be deemed a U.S. Person if:

(i)  an executor or administrator of the estate who is not a U.S. Person has sole or shared investment discretion with respect to the assets of the estate; and

(ii)  the estate is governed by foreign law.

(D)  Notwithstanding (A) above, any trust of which any professional fiduciary acting as trustee is a U.S. Person shall not be deemed a U.S. Person if a trustee who is not a U.S. Person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. Person.

(E)  Notwithstanding (A) above, an employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country shall not be deemed a U.S. Person.

(F)  Notwithstanding (A) above, any agency or branch or a U.S. Person located outside the United States shall not be deemed a "U.S. Person" if:

(i)  the agency or branch operates for valid business reasons; and

(ii)  the agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located.

(G)  The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans shall not be deemed "U.S. Persons."

**Error! Unknown document property name.**

SEC-USDOJ-E-0004180

- 30 -

## APPENDIX B

## DEFINITION OF "QUALIFIED PURCHASER" AND "ACCREDITED INVESTOR"

**I. "Qualified Purchaser"**

(a)  A natural person who owns not less than $5,000,000 in Qualified Purchaser Investments (as hereinafter defined).

(b)  A company that was not formed for the specific purpose of investing in the Fund and that owns not less than $5,000,000 in Qualified Purchaser Investments and that is owned directly or indirectly by or for two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, spouses of such persons, the estates of such persons, or foundations, charitable organizations, or trusts established by or for the benefit of such persons (a **"Family Company"**).

(c)  A trust that is not covered by the immediately preceding paragraph and that was not formed for the specific purpose of investing in the Fund and as to which the trustee or other person authorized to make decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust, is a Qualified Purchaser.

(d)  A person, acting for its own account or the accounts of other Qualified Purchasers, that was not formed for the specific purpose of investing in the Fund and that in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in Qualified Purchaser Investments.

(e)  A "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) acting for its own account or the account of another qualified institutional buyer or the account of a qualified purchaser, provided that:

(i)  a dealer described in paragraph (a)(1)(ii) of Rule 144A must own and invest on a discretionary basis at least $25 million in securities of issuers that are not affiliated persons of the dealer; and

(ii)  a plan referred to in paragraph (a)(1)(i)(D) or (a)(1)(i)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(i)(F) of Rule 144A that holds the assets of such a plan, will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of such plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan.

(f)  An entity, all of the outstanding securities of which are beneficially owned by Qualified Purchasers.

If the Subscriber is a company formed on or before April 30, 1996 that, but for the exceptions provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act, would be an investment company (an "excepted investment company"), that all beneficial owners of the Subscriber's outstanding securities (other than short-term paper), determined in accordance with Section 3(c)(1)(A) of the Investment Company Act, that acquired such securities on or before April 30, 1996 ("pre-amendment beneficial owners") and all pre-amendment beneficial owners of the outstanding securities (other than short-term paper) of any other excepted investment company that, directly or indirectly, owns any outstanding securities of such excepted investment company, have consented to its treatment as a qualified purchaser.

SEC-USDOJ-E-0004181

- 31 -

The term "**Qualified Purchaser Investments**" means:

(1)     Securities (as defined by section 2(a)(1) of the Securities Act), other than securities of an issuer that controls, is controlled by, or is under common control with, the Prospective Qualified Purchaser[1] that owns such securities, unless the issuer of such securities is:

(i)     An Investment Vehicle[2];

(ii)     A Public Company[3]; or

(iii)     A company with shareholders' equity of not less than $50 million (determined in accordance with generally accepted accounting principles) as reflected on the company's most recent financial statements, provided that such financial statements present the information as of a date within 16 months preceding the date on which the Prospective Qualified Purchaser acquires the securities of a Section 3(c)(7) Company[4];

(2)     Real estate held for investment purposes.  Real estate is not considered to be held for investment purposes if it is used as a place of business or in connection with the conduct of a trade or business by the owner or a Related Person (provided that real estate owned by a person engaged primarily in the business of investing, trading or developing real estate in connection with such business may be deemed to be held for investment purposes), or if it is used for personal or residential purposes by the owner or a Related Person unless deductions with respect to such property are allowed under section 280A of the Internal Revenue Code.  "Related Person" means a person who is related to another person as a sibling, spouse or former spouse, or is a direct lineal descendant or ancestor by birth or adoption of such person, or is a spouse of such descendant or ancestor, provided that in the case of a Family Company, a Related Person includes any owner of the Family Company and any person who is a Related Person of such owner.

(3)     Commodity Interests[5] held for investment purposes;

(4)     Physical Commodities[6] held for investment purposes;

(5)     To the extent not securities, financial contracts entered into for investment purposes, being any arrangement that:

---

[1]     The term "Prospective Qualified Purchaser" means a person seeking to purchase a security of a Section 3(c)(7) Company.

[2]     The term "Investment Vehicle" means an investment company, a company that would be an investment company but for the exclusions provided by sections 3(c)(1) through 3(c)(9) of the Investment Company Act or the exemptions provided by Rule 3a-6 or Rule 3a-7 under the Investment Company Act or a commodity pool.

[3]     The term "Public Company" means a company that (i) files reports pursuant to section 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended (the "Exchange Act"); or (ii) has a class of securities that are listed on a "designated offshore securities market" as such term is defined by Regulation S under the Securities Act.

[4]     The term "Section 3(c)(7) Company" means a company that would be an investment company but for the exclusion provided by section 3(c)(7) of the Investment Company Act.

[5]     The term "Commodity Interests" means commodity futures contracts, options on commodity futures contracts, and options on physical commodities traded on or subject to the rules of (i) any contract market designated for trading such transactions under the Commodity Exchange Act and the rules thereunder; or (ii) any board of trade or exchange outside the United States, as contemplated in Part 30 of the rules under the Commodity Exchange Act.

[6]     The term "Physical Commodity" means any physical commodity with respect to which a Commodity Interest is traded on a market specified in the preceding footnote.

SEC-USDOJ-E-0004182

- 32 -

(i) takes the form of an individually negotiated contract, agreement, or option to buy, sell, lend, swap or repurchase, or other similar individually negotiated transaction commonly entered into by participants in financial markets;

(ii) is in respect of securities, commodities, currencies, interest or other rates, other measures of value, or any other financial or economic interest similar in purpose or function to any of the foregoing; and

(iii) is entered into in response to a request from a counter party for a quotation, or is otherwise entered into and structured to accommodate the objectives of the counter party to such arrangement.

(6) In the case of a Prospective Qualified Purchaser that is a Section 3(c)(7) Company, a company that would be an investment company but for the exclusion provided by section 3(c)(1) of the Investment Company Act, or a commodity pool, any amounts payable to such Prospective Qualified Purchaser pursuant to a firm agreement or similar binding commitment pursuant to which a person has agreed to acquire an interest in, or make capital contributions to, the Prospective Qualified Purchaser upon the demand of the Prospective Qualified Purchaser; and

(7) Cash and cash equivalents (including foreign currencies) held for investment purposes. For purposes of this section, cash and cash equivalents include:

(i) Bank deposits, certificates of deposit, bankers acceptances and similar bank instruments held for investment purposes; and

(ii) The net cash surrender value of an insurance policy.

"Investments" do not include other assets which do not reflect experience in the financial markets, such as jewellery, art work, antiques and other collectibles.

For purposes of determining the amount of "investments" owned by a company, "investments" of a parent company and its majority-owned subsidiaries may be aggregated to meet the minimum "investment" amount requirements, regardless of which company is the Prospective Qualified Purchaser.

For purposes of determining the amount of "investments" owned by a natural person, there may be included any "investment" held jointly or as community property with such person's spouse.  In determining whether spouses who are making a joint investment in the Partnership are Qualified Purchasers, there may be included in the amount of each spouse's "investment" any "investments" owned by the other spouse (whether or not such "investments" are held jointly).

In determining whether a natural person is a Qualified Purchaser, there may be included in the amount of such person's "investments" any "investments" held in an individual retirement account or similar account the investments of which are directed by and held for the benefit of such person.

**Valuation of Investments**

In determining the value of "investments" in order to ascertain Qualified Purchaser status, the aggregate amount of "investments" owned and invested on a discretionary basis by such person can be either their fair market value on the most recent practicable date or the cost of such "investments", provided that the same method must be used for all "investments".  However,

(1) in the case of "commodity interests", the amount of "investments" is the value of the initial margin or option premium deposited in connection with such "commodity interests"; and

SEC-USDOJ-E-0004183

- 33 -

(2)   in each case, there must be deducted from the amount of such "investments" the following amounts:

(i)   the amount of any outstanding indebtedness incurred by the Prospective Qualified Purchaser to acquire such "investments"; and

(ii)   in the case of a Family Company, in addition to the amounts specified in paragraph (2)(i) above, any outstanding indebtedness incurred by an owner of the Family Company to acquire the Family Company's "investments".

## II. "Accredited Investor"

(a)   Individual with a net worth (or joint net worth together with his or her spouse) in excess of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home furnishings and automobiles (but excluding the value of the primary residence of the Subscriber), over total liabilities (excluding the indebtedness secured by the primary residence of the Subscriber up to its fair market value) except that if the amount of such indebtedness outstanding at the time of the sale of the Shares exceeds the amount of the indebtedness outstanding 60 days before such time, other than as a result of the acquisition of the residence, the amount of such excess is included as a liability.

(b)   Individual with an annual adjusted gross income during the last two full calendar years of in excess of $200,000 (or joint income together with his or her spouse in excess of $300,000) and reasonably expects to have an annual income in excess of $200,000 (or joint income together with his or her spouse of in excess of $300,000) during the current calendar year.

(c)   Any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act.

(d)   An investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) thereof.

(e)   A bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity.

(f)   An insurance company as defined in Section 2(13) of the Securities Act.

(g)   A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

(h)   An organization described in Section 501(c)(3) of the Code, a corporation, Massachusetts or similar business trust, or partnership not formed for the specific purpose of investing in the Fund, which has total assets in excess of $5,000,000.

(i)   A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

(j)   An entity in which all of the equity owners are accredited investors.  The Investment Manager may, in its sole discretion, request information regarding the basis on which such equity owners have been determined to be accredited investors.

(k)   An employee benefit plan within the meaning of ERISA and the decision to invest in the Fund was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either

SEC-USDOJ-E-0004184

- 34 -

a bank, savings and loan association, insurance company or registered investment adviser.

(l)      An employee benefit plan within the meaning of ERISA that has total assets in excess of $5,000,000.

(m)    An employee benefit plan within the meaning of ERISA that is a self-directed plan with all investment decisions made solely by persons that are accredited investors.

(n)     A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees and has total assets in excess of $5,000,000.

SEC-USDOJ-E-0004185

- 35 -

## APPENDIX C

### THE FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.
### RESTRICTIONS ON THE PURCHASE AND SALE OF "NEW ISSUES"

The Financial Industry Regulatory Authority, Inc. ("**FINRA**") restricts which persons can participate in "new issues" (initial public offerings of equity securities).  The Subscriber should indicate in the designated space in Section 4 of Annex 2 which of the following categories apply to the Subscriber.

**I.**     <u>Election of Restricted Status</u>:

  a.     The Subscriber wishes to be treated as a "Restricted Person" for purposes of FINRA Rule 5130 and FINRA Rule 5131.

*If the Subscriber elects (a) above, the Subscriber is ineligible to participate in new issues offerings and need not make any other election.*

**II.**    <u>Pure Non-Restricted Persons</u>:

  b.     None of the paragraphs of sections I, III, IV, V or VI apply to the Subscriber.

*If the Subscriber checks (b) above, the Subscriber is eligible to participate in new issues offerings and need not make any other election.*

**III.**   <u>Exempt Persons (treated as Non-Restricted)</u>:

  c.     The Subscriber is an investment company registered under the U.S. Investment Company Act of 1940, as amended.

  d.     The Subscriber is a common trust fund or similar fund as described in Section 3(a)(12)(A)(iii) of the U.S. Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), and the fund (a) has investments from 1,000 or more accounts and (b) does not limit beneficial interests in the fund principally to trust accounts of persons listed in section IV below ("**Restricted Persons**").

  e.     The Subscriber is an insurance company general, separate, or investment account, and (a) the account is funded by premiums from 1,000 or more policyholders, or, if a general account, the insurance company has 1,000 or more policyholders; and (b) the insurance company does not limit the policyholders whose premiums are used to fund the account principally to Restricted Persons, or, if a general account, the insurance company does not limit its policyholders principally to Restricted Persons.

  f.     The Subscriber is a publicly traded entity (other than a broker-dealer or an affiliate of a broker-dealer where such broker-dealer is authorized to engage in the public offering of new issues either as a selling group member or underwriter) that: (a) is listed on a national securities exchange or (b) is a foreign issuer whose securities meet the quantitative designation criteria for listing on a national securities exchange.

  g.     The Subscriber is an investment company organized under the laws of a foreign jurisdiction whose shares or units are either (a) listed on a foreign exchange and authorized for sale to the public or (b) authorized for sale to the public by a foreign regulatory authority (and, in each case, not limited for sale only to high net-worth individuals and other select investors) and where no person who owns more than 5% of the shares or units of such investment company is a Restricted Person.

SEC-USDOJ-E-0004186

- 36 -

h.   The Subscriber is an Employee Retirement Income Security Act benefits plan that is qualified under Section 401(a) of the U.S. Internal Revenue Code of 1986, as amended (the "Code") and such plan is not sponsored solely by a broker-dealer.

i.   The Subscriber is a state or municipal government benefits plan that is subject to state and/or municipal regulation.

j.   The Subscriber is a tax exempt charitable organization under Section 501(c)(3) of the Code.

k.   The Subscriber is a church plan under Section 414(e) of the Code.

l.   The Subscriber is a domestic or foreign broker-dealer, or owner of a broker-dealer, investment adviser, or other conduit acting for the account of a person who is not a Restricted Person.

*If any of the Subscriber elects any of items (c) through (l) in Section III above, the Subscriber is eligible to participate in new issues offerings and need not make any other election.  If the Subscriber did not elect any of such items, the Subscriber should proceed to sections IV, V, and VI below.*

**IV.   Restricted Persons Under FINRA Rule 5130**:

m.   The Subscriber is a member of FINRA, or a domestic or foreign broker-dealer, acting for its own account.

n.   The Subscriber is a domestic or foreign bank, broker-dealer, investment adviser or other conduit acting for the account of any person included in item (m) above or (o)-(z) below.

o.   The Subscriber is an officer, director, general partner, associated person,[7] or employee of any member of FINRA or any other broker-dealer (other than a limited business broker-dealer).[8]

p.   The Subscriber is an agent of a member of FINRA or any other broker-dealer (other than a limited business broker-dealer) that is engaged in the investment banking or securities business.

q.   The Subscriber is an immediate family member[9] of a person described in item (o) or (p) above and such person (i) materially supports,[10] or receives material support from the immediate family member; (ii) is employed by or associated with the FINRA member, or

---

[7]   The FINRA By-Laws define a person "associated with a member" as a natural person who is registered or has applied for registration under the rules of FINRA as well as every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any person is registered or exempt from registration with the FINRA.

[8]   A "limited business broker-dealer" is a broker-dealer authorized to engage solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

[9]   The term "immediate family member" means (i) parents, mother-in-law or father-in-law, husband or wife, brother or sister, brother-in-law or sister-in-law, son-in-law or daughter-in-law, and children and (ii) any other person to whom the person provides "material support" as defined in footnote 10 below.

[10]   The term "material support" means the direct or indirect provision of more than 25% of a person's income in the prior calendar year.  Members of the immediate family living in the same household are deemed to be providing each other with material support.

SEC-USDOJ-E-0004187

- 37 -

an affiliate of the FINRA member, that is selling the new issue to the immediate family member; or (iii) has an ability to control the allocation of the new issue.

r.    The Subscriber acts as a finder or acts in a fiduciary capacity (including, among others, attorneys, accountants, and financial consultants) to the managing underwriter in new issue offerings.

s.    The Subscriber has the authority to buy or sell securities for a bank, savings and loan institution, insurance company, investment adviser, or collective investment account.[11]

t.    The Subscriber is an immediate family member of a person described in item (r) or (s) above and such person materially supports, or receives material support from such person.

u.    The Subscriber[12] is a person listed, or required to be listed, in Schedule A of a Form BD (other than with respect to a limited business broker-dealer), except persons identified by an ownership code of less than 10%.

v.    The Subscriber[12] is a person listed, or required to be listed, in Schedule B of a Form BD (other than with respect to a limited business broker-dealer), except persons whose listing on Schedule B of a Form BD relates to an ownership interest in a person listed on Schedule A of a Form BD identified by an ownership code of less than 10%.

w.    The Subscriber[12] is a person listed, or required to be listed, in Schedule C of a Form BD that meets the criteria of items (u) and (v) above.

x.    The Subscriber[12] is a person that (a) directly or indirectly owns 10% or more of a public reporting company listed, or required to be listed, in Schedule A of a Form BD, or (b) directly or indirectly owns 25% or more of a public reporting company listed, or required to be listed, in Schedule B of a Form BD, (in each case, other than a reporting company that is listed on a national securities exchange, and other than with respect to a limited business broker-dealer).

y.    The Subscriber is an immediate family member of a person specified in items (u)-(x), above, provided that the Subscriber should not check this item (y) if the person owning the broker-dealer (specified in item (u)-(x)):

    (1)    does not materially support, or receive material support from such person;

    (2)    is not an owner of the FINRA member, or an affiliate of the FINRA member, selling the new issue to the immediate family member; and

    (3)    has no ability to control the allocation of the new issue.

---

[11]   The term "collective investment account" means any hedge fund, investment partnership, investment corporation, or any other collective investment vehicle that is engaged primarily in the purchase and/or sale of securities. The term does not include an investment club where a group of individuals pool their money and are collectively responsible for investment decisions, or a family investment vehicle owned solely by immediate family members.

[12]   Items (u)-(x) pertain to "owners" of broker-dealers. FINRA has stated that an owner of a broker-dealer will be viewed as having "beneficial interest" in an account held by a subsidiary. Accordingly, an affiliate of a broker-dealer will be a Restricted Person.

SEC-USDOJ-E-0004188

z.      The Subscriber is an employee benefit plan sponsored by a domestic or foreign broker-dealer (other than an ERISA benefit plan, qualified under Section 401(a) of the Code, not sponsored solely by a broker-dealer).

*If the Subscriber elects any of items (m)-(z) in Section IV above, the Subscriber is ineligible to participate in new issues offerings and should complete Section V below.*

**V.      Restricted Persons Under FINRA Rule 5131:**

aa.     The Subscriber is an executive officer or director of a Public Company.  A "Public Company" is any company that is registered under Section 12 of the Exchange Act or any company that files periodic reports pursuant to Section 15(d) of the Exchange Act.

bb.     The Subscriber is an executive officer or director of a Covered Non-Public Company.  A "Covered Non-Public Company" means any company (other than a Public Company) satisfying any of the following three criteria:

(1)     income of at least $1 million in the last fiscal year or in two of the last three fiscal years and shareholders' equity of at least $15 million; or

(2)     shareholders' equity of at least $30 million and a two-year operating history; or

(3)     total assets and total revenue of at least $75 million in the latest fiscal year or in two of the last three fiscal years.

cc.     The Subscriber is a person materially supported[13] by an executive officer or director of a Public Company or a Covered Non-Public Company.

*If the Subscriber elects any of items (aa)-(cc) in Section V above, the Subscriber may or may not be eligible to participate in new issues offerings.*

**VI.     Certain Collective Investment Vehicles and Other Entities:**

dd.     The Subscriber is a foreign or domestic account or investment fund (including a foreign or domestic employee benefit plan) in which persons included in any of paragraphs (m)-(z) of section IV above ("**5130 Restricted Persons**") have a beneficial interest.[14]

ee.     The Subscriber is a foreign or domestic account or investment fund (including a foreign or domestic employee benefit plan) in which persons included in any of paragraphs (aa)-(cc) of section V above (each a "**5131 Restricted Participant**") have a beneficial interest.

*If the Subscriber checks either item (dd) or (ee) in Section VI above, the Subscriber may or may not be eligible to participate in new issues offerings.*

---

[13]   The term "material support" means the direct or indirect provision of more than 25% of a person's income in the prior calendar year.  Persons living in the same household are deemed to be providing each other with material support.

[14]   The term "beneficial interest" means any economic interest such as the right to share in gains or losses.  The receipt of a management or performance based fee for operating a collective investment account, or other fees for acting in a fiduciary capacity, is <u>not</u> considered a beneficial interest in the account.  However, deferred fees that are subsequently invested in or by reference to a collective investment account constitute a beneficial interest in such account.

SEC-USDOJ-E-0004189

- 39 -

**ANNEX 3**

COPY NUMBER*:    ___*1001*___

* Obtain copy number from front cover of

Offering Memorandum.

**SNT CAPITAL FUND LTD**

**REDEMPTION NOTICE**

**FOR PARTICIPATING SHARES**

Please fax and mail the original to:

SNT CAPITAL FUND LTD

c/o Harmonic Fund Services
Cayman Corporate Centre
4th Floor, 27 Hospital Road
P.O. Box 940 GT
George Town
Grand Cayman KY1-1102
Cayman Islands

Attention: Investor Services

Telephone: 345-949-0090
Facsimile:  345-945-1335

I/We   *Viacheslav Dubovyi*_____

of   _____

give notice that I/we wish to redeem my/our following Participating Shares in

**SNT CAPITAL FUND LTD:**

_____ Number and Class of Participating Shares or United States Dollar amount to
be redeemed

REDEMPTION INSTRUCTIONS

Please wire transfer funds to:

Bank name   _____

SEC-USDOJ-E-0004190

- 40 -

Bank address _____

ABA#/Sort Code _____

Account name _____

Account number _____

*Sub-account name _____

*Sub-account number _____

* if required

PLEASE SIGN HERE

Please ensure that all the registered shareholders or authorised signatories sign this Redemption Notice.

Name of signatory/signatories          Signature

*Viacheslav Dubovyi*          _____

_____          _____

Date: _01 / 03 / 2014_

NOTE:

1.  All Investors except those which are natural persons must submit certified resolutions or other evidence of authorisation to the satisfaction of the Administrator authorising the redemption and identifying the corporate officer or authorised signatory empowered to sign this Redemption Notice.

2.  If this Redemption Notice is signed under a power of attorney, such power of attorney or a duly certified copy thereof must accompany this Redemption Notice.

3.  If this Redemption Notice is not fully completed to the satisfaction of the Administrator, the Redemption Notice may not be accepted.

SEC-USDOJ-E-0004191

**Name of the Company:**
Freatta Business Inc.
**Country of Registration:**
Seychelles
**Date of Registration:**
06/12/2013
**Registration Number:**
126477
**Legal Address:**
Suite1, Second Floor. Sound & Vision House
Francis Rachel Str.,
Victoria, Mahe, Seychelles.
**Director of the Company**
Vyacheslav Dubivoy
Passport Info: Ukraine # ███9758
Personal # ████3051
**Bank Information:**
AO "NORVIK BANKA"
E Birznieka-Upisa 21
LV-1011, Riga
Latvija
Phone # (+371) 67041100
Fax # (+371) 6704111
SWIFT # LATBLV22
Account # ████9.331
USD Account # ████████4722
CIF Code C72785
**Correspondent Bank:**
Raiffeisen Bank International AG,
Vienna, Austria
SWIFT: RZBAATWW

SEC-USDOJ-E-0004192

# EXHIBIT 63



**Online Account Application**

**Status:** Account Opened

# This section is for E*TRADE Securities use only

**Type of account:**
joint account - Joint Tenancy

**Account features:**
Cash account

**Between-investment fund:**
E*TRADE Financial Extended
Insurance Sweep Deposit Account

**Investment Objective:**
Speculation

**Annual Income:**
$200,000+

**Liquid Net Worth:**
$1,000,000+

**Total Net Worth:**
$1,000,000+

**Investment Experience:**
Excellent

**How often do you trade?**
10+ trades per month

**What is the purpose and expected
use of the account?**
Investment account with transfers for
expenses

**Does anyone other than the
account holder(s) have trading
authorization over the account?**
No

**Primary Applicant:**

**Prefix:**
Mr.

**Name:**
Vitaly Korchevsky

**Suffix:**

**Citizenship:**
US Citizen

**Country of legal residence:**
United States

**Social Security:**
████8681

**Date of Birth:**
███/1965

**Employer:**

**Occupation:**
Unemployed

**Employer a broker/dealer?**
No

**Director, or policy-making office of
publicly-owned company?**
No

**10% shareholder of publicly-owned
company?**
No

**Co-applicant:**

**Prefix:**
Mrs.

**Name:**
Svetlana Korchevsky

**Suffix:**

**Citizenship:**
US Citizen

**Country of legal residence:**

**Application ID:** ███7403

**Account:** ███623

**User Name:** ███9342

**Source:**

United States

**Social Security:**
████4927

**Date of Birth:**
████1971

**Employer:**

**Occupation:**
Unemployed

**Employer a broker/dealer?**
No

**Director, or policy-making office of publicly-owned company?**
No

**10% shareholder of publicly-owned company?**
No

**Mailing Address:**
1709 Slitting Mill Rd.
Glen Mills PA 19342
United States

This tax information will be used for IRS reporting.

## Account Agreement.

I am of legal age to contract. I acknowledge that I have received, read, and agree to be bound by the terms and conditions as currently set forth in the E*TRADE Securities Customer Agreement as amended from time to time. I acknowledge that I have had the opportunity to read the **Privacy Statement/Business Continuity**. I ACKNOWLEDGE THAT E*TRADE SECURITIES LLC DOES NOT PROVIDE INVESTMENT, TAX, OR LEGAL ADVICE OR RECOMMENDATIONS.

**Under penalty of perjury, I certify that (1) My Social Security (or taxpayer ID) number shown on this form is my correct number and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return), and (3) I am a U.S. person (including a U.S. resident alien).**

I understand that my name will be supplied to issuers of any securities held in my account so that I might receive any important information from them, unless I notify you in writing not to do so.

I acknowledge that securities held in my Margin account may be pledged, re-pledged, hypothecated, or rehypothecated for any amount due E*TRADE Securities LLC in my account(s) or for a greater amount. I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION CLAUSE CONTAINED IN SECTION 7 OF THE E*TRADE SECURITIES CUSTOMER AGREEMENT.

Account Agreement: **AGREED   Nov/23/2011**

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**



# EXHIBIT 64

**Fidelity.com** FOIA Confidential Treatment Request **Rollover IRA**

✓ About You : ✓ About Your Account | ✎ Review & Confirm   Fund Your Account ⚲ This is a Secure Application

# Review and Confirm

Is everything correct? If so, click "Next". If not, you may click "Edit" to make changes.

[ Next > ]

**Need help?**

🖳 Instant Message a Rep

📞 Call 800-544-6666

## Account Information

Registration **Rollover IRA**

Eligible non-Fidelity mutual funds that are transferred in kind will not be available for trading in this account until the transfer process has completed. The final determination of which non-Fidelity funds are eligible for in-kind distribution will be made as of the date the distribution is processed, and not as of the date the transaction is initiated. Over time, Fidelity may be changing the non-Fidelity funds eligible for in-kind transfer. Learn how assets transfer to Fidelity.

## Personal Information | Edit

| | |
|---|---|
| Name | **VITALY KORCHEVSKY** |
| Social Security Number | █████ 8681 |
| Date of Birth | ████/1965 |
| Country of Citizenship | **U.S.** |
| Country of Tax Residence | **U.S.** |
| Legal / Residential Address | **1709 Slitting Mill Rd.** **Glen Mills, PA 19342** |
| Mailing Address | **1709 Slitting Mill Rd.** **Glen Mills, PA 19342** |
| Daytime Phone | █████-2023 |
| Evening Phone | **917-701-1041** |
| E-Mail Address | **VKORCHEVSKY@HOTMAIL.COM** |

## Employment Information | Edit

| | |
|---|---|
| Employment Status | **Not Currently Employed** |
| Associated with Stock Exchange, Broker/Dealer, or FINRA | **No** |
| Company director, 10% shareholder or policymaker | **No** |

## Account Settings | Edit

| | |
|---|---|
| Core Position | **FDIC INSURED DEPOSIT AT WELLS FARGO IRA** |
| Documents Delivered Electronically | **Account statements** **Trade Confirmations and related Prospectuses** **Prospectuses, Shareholder Reports and other** **Documents** |

## Beneficiary Designation | Edit

Primary Beneficiaries

| | |
|---|---|
| Beneficiary Type | **Spouse** |
| First Name | **Svetlana** |
| Middle Initial | **Not Provided** |
| Last Name | **Korchevsky** |
| Date of Birth | **08/01/1971** |
| Social Security Number | **225534927** |
| Legal Heir | **Not Provided** |
| Percentage Assigned | **100.0%** |

Contingent Beneficiaries

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

| | |
|---|---|
| Beneficiary Type | **All My Children** |
| Name | **All My Children** |

FIMS_RETAIL:857804741



FOIA Confidential Treatment Request

Percentage Assigned **100.0%**

< Previous    Next >

 Exit Account Opening    Save & Complete Later

© 1998 - 2011 FMR LLC.
All rights reserved.
Terms of Use | Privacy | Security

**Fidelity**

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804741

**Fidelity**.com | FOIA Confidential Treatment Request | Rollover IRA

✓ About You : ✓ About Your Account : ◼ Review & Confirm : Fund Your Account | 🔒 This is a Secure Application

# Agree to Terms

### ① Open the Customer Agreement and review the Terms & Conditions

◎ Open, read, and print the following document: Customer Agreement (PDF)

🖨 Format for Printing

Please scroll through for important information related to your account.

**TABLE OF CONTENTS**

Terms & Conditions
Electronic Delivery Terms of Agreement

**Terms & Conditions**

To retain these documents, open the Customer Agreement (PDF) or click the links and print the document. If you are unable to view or access any of these documents, please exit this application. You may obtain paper copies of this application or any of these documents listed above at no charge by calling 800-544-6666.

### ② Check the box to confirm the statement, then click "I Agree"

☑ You acknowledge that you are the person named in this account application, and you have been provided with, have read and understood, and agree to be bound by all the terms and conditions set forth in this application in step 1 as they are currently in effect and as they may be amended in the future, including but not limited to the Fidelity IRA Custodial Agreement and Disclosure Statement, Fidelity Brokerage Retirement Customer Account Agreement, Electronic Delivery Terms of Agreement and other documents in electronic format provided in step 1 above. This acknowledgment applies only to this new account application process and delivery of the documents provided above.

**This account is governed by a pre-dispute arbitration clause ☐ which is part of the Fidelity Brokerage Retirement Customer Account Agreement and which is accessible by clicking on the preceding underlined link. I acknowledge receipt of the pre-dispute arbitration clause.**

Click "I Agree" to sign this electronic application, to acknowledge and agree to all of the foregoing, to submit your information to Fidelity and to open your account.

[ < Previous ]   [ I Agree > ]

▣ Exit Account Opening   ▣ Save & Complete Later

### Need help?

💬 Instant Message a Rep

☎ Call 800-544-6666

Fidelity Investments is a registered trademark owned by FMR LLC. Accounts are carried with our affiliate, National Financial Services LLC, Member SIPC, the New York Stock Exchange and other principal exchanges.
Fidelity Investments, P.O. Box 5000, Cincinnati, OH 45273-8694

PDFs require Adobe® Reader®

11/24/2011 00:02:07 AM 395704

**Fidelity** INVESTMENTS

© 1998 - 2011 FMR LLC.
All rights reserved.
Terms of Use | Privacy | Security

⚙ About You | 💱 About Your Account | Review & Confirm | Fund Your Account | 🔒 This is a Secure Application

# Beneficiary Designation

Add your primary and contingent beneficiary information, and then assign the percentage of your account that you want each beneficiary to receive.

## Copy Beneficiaries From an Existing Fidelity Account?

For your convenience, you may copy primary and contingent beneficiaries from one of your current accounts.
Yes, I would like to copy beneficiaries to this account.

## Add New Beneficiaries

### Primary Beneficiaries

| | |
|---|---|
| ⚙ Beneficiary Type | Spouse |
| First Name | Svetlana |
| Middle Initial | (Optional) |
| Last Name | Korchevsky |
| Date of Birth | ████ 1971 |
| Social Security Number | █ ██ - 4927 (Optional) |
| ⚙ *Legal Heir | None |

Percentage Assigned: 100 %

Delete this beneficiary | Move to Contingent

| | | |
|---|---|---|
| Add a Primary Beneficiary (e.g., Your Spouse) | Select beneficiary type ▾ | **Primary Total: 100%** (Total must equal 100%) |

### Contingent Beneficiaries (Optional)

| | |
|---|---|
| ⚙ Beneficiary Type | All my children |
| Name of Beneficiary | All My Children |
| ⚙ *Legal Heir | None |

Percentage Assigned: 100 %

Delete this beneficiary | Move to Primary

| | | |
|---|---|---|
| Add a Contingent Beneficiary (e.g., Your Children) | Select beneficiary type ▾ | **Contingent Total: 100%** (Total must equal 100%) |

This beneficiary designation applies to this account only and will not impact other Fidelity account beneficiary designations. (Any beneficiary designations you have named for any other Fidelity accounts will not apply to this account).

Be sure you have filled out all beneficiary designation sections completely. Leaving these sections blank will indicate no beneficiary is named by you for this account and upon your death you agree to have payment of the value of this IRA made according to the rules of succession as outlined in the applicable Custodial Agreement and Disclosure Statement.
Ensure that your percentages total 100% for primary beneficiaries and 100% for contingent beneficiaries (if you have chosen contingent beneficiaries). A contingent beneficiary is defined as any one or more persons, trusts or entities that may be chosen to receive your account assets if there are no surviving primary beneficiary(ies).

¹ Please consult with an estate planning attorney before using Per Stirpes. If Per Stirpes stipulation is chosen, if any primary or contingent beneficiary, as applicable, does not survive the account owner, but leaves surviving descendants, any share otherwise payable to such beneficiary shall instead be paid to such beneficiary's surviving descendants, by right of representation

[ < Previous ]  [ Next > ]

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

🚪 Exit Account Opening | 💾 Save & Complete Later

## Need help?

💬 Instant Message a Rep

☎ Call 800-544-6666

**What is a contingent beneficiary?**

A primary beneficiary (e.g., a spouse) receives your assets upon your death. Contingent beneficiaries (e.g., children) receive the assets if there is no living primary beneficiary.

FIMS_RETAIL:857804741



© 1998 - 2011 FMR LLC
All rights reserved
Terms of Use | Privacy | Security

FOIA Confidential Treatment Request

**Approved via Batch**
**DAVID WIEDERHOLD, A251089, 11/25/2011**

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804741

FOIA Confidential Treatment Request

*Fidelity.com*      *The Fidelity Account*

✓ About You    : ✓ About Your Account    ¦ ≡ Review & Confirm    Fund Your Account      🔒 This is a Secure Application

# Review and Confirm

Is everything correct? If so, click "Next". If not, you may click "Edit" to make changes.

[ Next > ]

**Need help?**

💬 Instant Message a Rep

📞 Call 1-800-FIDELITY

## Account Information

| | |
|---|---|
| Registration | **Brokerage - The Fidelity Account Individual** |

## Personal Information

| | |
|---|---|
| Name | **Vitaly Korchevsky** |
| Social Security Number | **████8681** |
| Date of Birth | **████1965** |
| Country of Citizenship | **U.S.** |
| Country of Tax Residence | **U.S.** |
| Legal / Residential Address | **1709 Slitting Mill Rd.**<br>**Glen Mills, PA 19342** |
| Mailing Address | **1709 Slitting Mill Rd.**<br>**Glen Mills, PA 19342** |
| Daytime Phone | **████-2023** |
| Evening Phone | **917-701-1041** |
| E-Mail Address | **vkorchevsky@hotmail.com** |
| Expected Yearly Trades | **36-71 times per year** |

## Employment Information ¦ Edit

| | |
|---|---|
| Employment Status | **Not Currently Employed** |
| Associated with Stock Exchange, Broker/Dealer, or FINRA | **No** |
| Company director, 10% shareholder or policymaker | **No** |

## Account Settings ¦ Edit

| | |
|---|---|
| Core Position | **Taxable, Interest-Bearing Cash Account** |
| Documents Delivered Electronically | **Account statements**<br>**Trade Confirmations and related Prospectuses**<br>**Prospectuses, Shareholder Reports and other**<br>**Documents** |

## Beneficiary Designation ¦ Edit

Primary Beneficiaries

| | |
|---|---|
| Beneficiary Type | **Spouse** |
| First Name | **Svetlana** |
| Middle Initial | **Not Provided** |
| Last Name | **Korchevsky** |
| Date of Birth | **████/1971** |
| Social Security Number | **████4927** |
| Legal Heir | **Not Provided** |
| Percentage Assigned | **100.0%** |

Contingent Beneficiaries

| | |
|---|---|
| Beneficiary Type | **All my children** |
| Name | **All My Children** |
| Legal Heir | **Not Provided** |
| Percentage Assigned | **100.0%** |

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

< Previous    Next >    FOIA Confidential Treatment Request

☒ Exit Account Opening    ☒ Save & Complete Later



© 1998 - 2011 FMR LLC.
All rights reserved
Terms of use | Privacy | Security

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804829

Case 2:16-cv-00076-MCA-MAH Document 3-3 Filed 08/10/16 Page 70 of 95 PageID: 935

**Fidelity.com**

FOIA Confidential Treatment Request

**The Fidelity Account**

✓ About You | ✓ About Your Account | ▪ Review & Confirm | Fund Your Account                 ⌗ This is a Secure Application

# Agree to Terms

### ① Open the Customer Agreement and review the Terms & Conditions

**Need help?**

▢ Instant Message a Rep

▢ Call 1-800-FIDELITY

② Open, read, and print the following document: Customer Agreement (PDF)

🖨 Format for Printing

Please scroll through for important information related to your account.

**TABLE OF CONTENTS**

Terms & Conditions
Electronic Delivery Terms of Agreement

**Terms & Conditions**

To retain these documents, open the Customer Agreement (PDF) or click the links and print the document. If you are unable to view or access any of these documents, please exit this application. You may obtain paper copies of this application or any of these documents listed above at no charge by calling 800-544-6666.

### ② Review the taxpayer certifications

You certify under penalties of perjury that:

a. The Social Security number or taxpayer identification number you have provided is correct; and

b. You are a U.S. citizen or other U.S. person (as defined in the IRS form W-9, including a U.S. resident alien); and

c. Unless you have checked the box immediately below these certifications, you are not subject to backup withholding because

  ▪ you are exempt from backup withholding, or

  ▪ you have not been notified by the Internal Revenue Service (IRS) that you are subject to backup withholding as a result of a failure to report all interest or dividends; or

  ▪ the IRS has notified you that you are no longer subject to backup withholding.

▢ Check this box only if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

### ③ Check the box to confirm the statement, then click "I Agree"

☑ You acknowledge that you are the person named in this account application, and you have been provided with, have read and understood, and agree to be bound by all the terms and conditions set forth in this application in step 1 as they are currently in effect and as they may be amended in the future, including but not limited to the Fidelity Account® Customer Agreement, Electronic Delivery Terms of Agreement and other documents in electronic format provided in step 1 above. This acknowledgment applies only to this new account application process and delivery of the documents provided above.

**This account is governed by a pre-dispute arbitration clause 🗗 which is part of the Fidelity Customer Agreement and which is accessible by clicking on the preceding underlined link. I acknowledge receipt of the pre-dispute arbitration clause.**

*The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.*

Click "I Agree" to sign this electronic application to acknowledge and agree to all of the foregoing, to submit your information to Fidelity, and to open your account.



[ < Previous ]    [ I Agree > ]

Exit Account Opening Process/Continue Later

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804829

Fidelity Investments... ...Services LLC, Member SIPC, the New York Stock Exchange and other principal exchanges...
Fidelity Investments, P.O. Box 6500, Cincinnati, OH 45270-0003

PDFs require Adobe® Reader®.

11/23/2011 23:52:55 PM 395706



© 1998 - 2011 FMR LLC.
All rights reserved.
Terms of Use | Privacy | Security

Case 2:16-cv-00046-MCA-MAN Document 3-8 Filed 08/10/16 Page 78 of 97 PageID: 937

**Fidelity**.com    FOIA Confidential Treatment Request    **The Fidelity Account**

About You | About Your Account | Review & Confirm | Fund Your Account      This is a Secure Application

# Beneficiary Designation

Add your primary and contingent beneficiary information, and then assign the percentage of your account that you want each beneficiary to receive.

## Add New Beneficiaries

### Primary Beneficiaries

○ **Give all your Descendents[1] an equal percentage.**
  » Your account assets are automatically divided equally among your living, legal descendants,
    (e.g. children and/or grandchildren)

  » No need to enter specific information for each individual as Fidelity defaults to your will or legal designation

○ **Assign specific beneficiaries and percentages**
  » You have more control over how and to whom your assets transfer
  » Only a name and birth date is required for individuals

| | |
|---|---|
| Beneficiary Type | Spouse |
| First Name | Svetlana |
| Middle Initial | (Optional) |
| Last Name | Korchevsky |
| Date of Birth | ███ 1971 |
| Social Security Number | ███ - 4927 (Optional) |
| *Legal Heir | None |

**Percentage Assigned** 100.0 %

Add a Primary Beneficiary
(e.g., Your Spouse)    Select beneficiary type

**Primary Total: 100%**
(Total must equal 100%)

## Contingent Beneficiaries (Optional)

| | |
|---|---|
| Beneficiary Type | All my children |
| Name of Beneficiary | All My Children |
| *Legal Heir | None |

**Percentage Assigned** 100.0 %

Add a Contingent
Beneficiary
(e.g., Your Children)    Select beneficiary type

**Contingent Total: 100%**
(Total must equal 100%)

Fidelity Investments Designated Beneficiary Agreement.
I certify that I have received and read a copy of the Fidelity Investments Designated Beneficiary Agreement. I agree to be bound by the terms and conditions set forth in the Agreement, of which this Form is a part, as may be amended from time to time. The designation of beneficiary I am making, and any future changes to those designations, will be effective only when accepted by Fidelity in accordance with the terms of the Agreement. When accepted by Fidelity, the designation in this Form will replace any earlier designation I have made.

I hereby consent to the Agreement and to the beneficiary(ies) I have designated on this Form. I understand that the Agreement shall be construed, administered, and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute.

[*] Please consult with an estate planning attorney before using Per Stirpes. If Per Stirpes stipulation is chosen, if any primary or contingent beneficiary, as applicable, does not survive the account owner, but leaves surviving descendants, any share otherwise payable to such beneficiary shall instead be paid to such beneficiary's surviving descendants, by right of representation.

### Need help?

 Instant Message a Rep

Call **1-800-FIDELITY**

**What is a contingent beneficiary?**

A primary beneficiary (e.g., a spouse) receives your assets upon your death. Contingent beneficiaries (e.g., children) receive the assets if there is no living primary beneficiary.

< Previous    Next >

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804829

Case 2:16-cv-00075-MCA-MAH Document 3-5 Filed 08/10/16 Page 79 of 97 PageID: 938

FOIA Confidential Treatment Request

⊠ Exit Account Opening       💾 Save & Complete Later

When you add beneficiaries on a non-retirement account, you establish a transfer on death (TOD) registration on the account. This registration is governed by the Fidelity Investments Designated Beneficiary Agreement. TOD registration allows your account to be distributed directly to the beneficiaries you designate.

1 Upon your death, Fidelity may rely on certification of the identity of the beneficiaries entitled to receive the account from your personal representative, any beneficiary or representative of any beneficiary, or any other person deemed appropriate by Fidelity.



© 1998 - 2011 FMR LLC
All rights reserved
Terms of Use | Privacy | Security

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804829

Case 2:15-cv-00076-MCA-MAH   Document 3-3   Filed 08/10/16   Page 80 of 97 PageID: 939

**Fidelity.com**
FOIA Confidential Treatment Request
The Fidelity Account

✓ About You   ✓ About Your Account   ✓ Review & Confirm   ✱ Fund Your Account          ⊕ This is a Secure Application

## Your account is ready to fund

Your Fidelity Account Number is
██████5452

Click the Continue button to set up a PIN and deposit money into your account.

[ Continue > ]

**Need help?**

📠 Instant Message a Rep

☎ Call 1-800-FIDELITY

**Fidelity**

© 1998-2011 FMR LLC.
All rights reserved.
Terms of Use | Privacy | Security

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804829

**Approved via Batch**
**DAVID WIEDERHOLD, A251089, 11/25/2011**

CONFIDENTIAL TREATMENT REQUESTED BY FMR LLC AND ITS SUBSIDIARIES PURSUANT TO 17 C.F.R. § 200.83

FIMS_RETAIL:857804829

# EXHIBIT 65

# WATERHOUSE COMPLETED

## ACCOUNT APPLICATION

**INDIVIDUAL • JOINT • CUSTODIAN**

**TD WATERHOUSE INVESTOR SERVICES, INC.**
100 Wall Street • New York, NY 10005
www.tdwaterhouse.com

- **PLEASE PRINT** your information in blue/black ink. Do not use white-out.
- Complete both sides of this form and all applicable signatures to avoid delays in processing your application. If you need assistance, call us anytime at 1-800-934-4448 and press option 4.
- Remember to make all checks payable to: TD Waterhouse.

- **PLEASE DO NOT** use this form for Corporate, Partnership, Retirement Trust or Estate Accounts. To request these forms, please call **1-800-934-4448** and press option 4.
- Once your account is opened, you will receive a letter with instructions to login to TD Waterhouse.

## ① ACCOUNT TYPE: PLEASE CHECK THE APPROPRIATE BOX.

☐ Individual   ☐ Joint Tenants with Right of Survivorship
*If one joint owner dies, his/her interest passes to the surviving owner(s).*

☐ Custodian for a Minor**

☐ Tenants in Common
*If one joint owner dies, his/her interest passes to his/her estate. (50/50, unless otherwise noted.)*

☐ Community/Separate Property*
*For AZ, CA, ID, LA, NV, TX, WA, and WI only. Laws vary by state.*

*Additional information required, please contact TD Waterhouse. **Provide minor's information in section 3 below.*

## ② ACCOUNT HOLDER: COMPLETE ALL THE INFORMATION BELOW FOR THE PRIMARY OR MINOR ACCOUNT HOLDER.

Name: (Mr. / Mrs. / Ms. / Dr.)
First **Vitaly**  M.I.  Last **Korchevsky**

Date of Birth: mm/dd/yyyy **/65**

Citizen of **U.S.A.**
*(Additional documents will be sent to non-US citizens)*

Where would you like your mail sent? ☐ Home ☐ Business ☒ P.O. Box
Home Address: Street **1709 Slitting Mill Rd.**

Social Security Number **-8681**

Bank Reference **PNC bank**

City/State/Zip **Glen Mills, PA 19342**

Employer (If not employed, indicate if retired, student, etc.) **Victus Capital**

Broker Reference **Herns direct**

P.O. Box Address **P.O. Box**
*(Also provide home address if it differs from the P.O. Box (Broker's Address))*

City/State/Zip **Gradyville, PA 19039**

Occupation **Portfolio Manager**

Employer Address: Street **25 E. 78th Street**

Are you a director, 10% shareholder or a policy-making officer of a publicly traded company?
☐ Yes (If yes, specify company)  ☒ No

Where should we contact you? Daytime Phone Number.
☐ Home  ☒ Business  (  ) -2470 -1041

Employer Address: City, State, Zip **New York, NY 10021**

Are you employed by a broker/dealer?
☐ Yes (If yes, specify company)  ☒ No

Here is my e-mail address:
*(Must provide to trade online)*

Access to services and your account may be affected by market conditions, system performance or for other reasons.

## ③ JOINT ACCOUNT HOLDER: COMPLETE ALL THE INFORMATION BELOW FOR JOINT OR CUSTODIAN ACCOUNT HOLDER.

Joint Account Holder Name: Mr. / Mrs. / Ms. / Dr.
First **Svetlana**  M.I. **P.**  Last **Korchevsky**

Social Security Number **-4927**

Date of Birth: mm/dd/yyyy **/71**

Where should we contact you? Daytime Phone Number:
☒ Home  ☐ Business  -2470 (  )

Citizen of **U.S.A**
*(Additional documents will be sent to non-US citizens)*

Are you a director, 10% shareholder or a policy-making officer of a publicly traded company?
☐ Yes (If yes, specify company)  ☒ No

Employer (If not employed, indicate if retired, student, etc.) **house wife**

Occupation **house wife**

Are you employed by a broker/dealer?
☐ Yes (If yes, specify company)  ☒ No

## ④ ACCOUNT FEATURES.

**A. Margin.**
Margin allows you to use the equity in your account as collateral for a loan that may be used for the purchase of additional securities or for overdraft protection if you have check writing privileges. Please read the Agreement to Terms on the reverse, the Account Agreement Booklet and the Margin Risk Disclosure for more information on margin.
Margin borrowing privileges are automatically included unless you check here: ☐
*(Margin is not allowed in Custodial Accounts.)*

**B. Options.**
☐ Please check if you want to trade options.
(An agreement and a disclosure booklet will be forwarded to you.)

**C.** Would you like to enroll in the FREE Dividend Reinvestment Program?
☐ Yes   ☒ No

**D.** We also offer you the choice to conduct business in:
☐ Chinese   ☐ Spanish

*PLEASE SEE REVERSE*

3/13/03

RECEIVED MAR 11 2003

RECEIVED MAR 11 2003

| TD WATERHOUSE USE ONLY | | | | |
|---|---|---|---|---|
| Sem | Deposit Value: **31,298.01** | New Accounts | TDW Acct # **280-17** | |
| Stock | # of shares | LOA | Other | |
| Check | ACAT | DRIP | ACH | Branch Manager |

## 8 ACCOUNT FEATURES. CONTINUED

**E. Free Asset Management Account Features.**
*Easy access to your money via check writing and an ATM/VISA Check Card.*

☑ YES, I want free check writing.

(You will receive a free introductory package of checks.)

☑ YES, I want a free ATM/VISA Check Card.

(You must have check writing to receive the ATM/VISA Check Card. Custodial Accounts do not receive an ATM/VISA Check Card.)

## 9 FUNDING YOUR ACCOUNT.

A $1,000 initial minimum balance in any combination of cash and/or securities is required to open your account. (Make check payable to TD Waterhouse.) All securities, proceeds, and dividends will be held in your account, free of charge.

☐ Check enclosed is for $ _____

☐ Security Certificates enclosed – *Please endorse exactly as they are registered on the front.*

☐ Account Transfer Form enclosed

☐ Please send me forms to initiate ____ Direct Deposit ____ Money Transfer

Note: All credit balances will automatically be swept daily into the TD Waterhouse Bank FDIC-insured Money Market Account. If you prefer a different cash/money market vehicle, please call us once your account is opened.

## 10 REFERRAL

*IF YOU WERE REFERRED BY AN EXISTING TD WATERHOUSE CUSTOMER, PLEASE PROVIDE THE FOLLOWING INFORMATION SO THAT WE MAY THANK THEM:*

*Individual's Name:*

*Address and Telephone Number:*

*OTHER Television, Newspaper, Magazine or Stadium Event:*

## 11 AGREEMENT TO TERMS.

I hereby request that TD Waterhouse Investor Services, Inc. (TD Waterhouse) open a brokerage account in the names listed as account holders on this Account Application. I agree to read and be bound by the terms of the TD Waterhouse Account Agreement Booklet (which includes information on the Cash Account and, if applicable, Margin Account, Truth-In-Lending Disclosure, TD Waterhouse Investors Money Management Account, TD Waterhouse Online Services Account, and other written agreements between me and TD Waterhouse that apply to my brokerage account), as currently in effect and as amended from time to time, which will be provided to me when the account is opened. If, in the future, I add features to this account governed by the foregoing agreements, I agree to be bound by the additional terms and conditions. If I do not receive or understand the Account Agreement Booklet, I will notify TD Waterhouse. I acknowledge that TD Waterhouse does not provide legal or tax advice, and will not advise me concerning the nature, potential value, or suitability for me of any unsolicited security transaction or investment strategy. In accordance with Section 11 of the Customer Account Agreement, I agree that all debts and other obligations owed to TD Waterhouse by any party to the Customer Agreement will be secured by a lien on all securities and other property now or hereafter acquired, carried, or maintained in any of my present or future brokerage accounts with TD Waterhouse, whether individually or jointly held with others, or in any brokerage account at TD Waterhouse in which I have an interest. If this is a joint account, each of us agrees that transactions and instructions may be authorized or signed by any one of the joint account holders. I acknowledge and understand that when I trade on margin, including short sales or options, I am borrowing from TD Waterhouse. I agree to pledge all assets in my TD Waterhouse account(s) as collateral to secure this loan. I acknowledge that margin transactions are riskier and can involve greater loss than cash transactions. I agree to read and be bound by the sections of the Customer Account Agreement relating to margin transactions and to contact TD Waterhouse before trading on margin if I do not receive or understand that Agreement. All assets now or hereafter held in my margin account may be pledged, repledged or otherwise used as collateral, separately or together with securities of other customers, to secure the amount(s) owed TD Waterhouse by any owner of this account. Interest on debit balances will be charged and compounded in accordance with the Customer Agreement and as permitted under the laws of the State of New York. I authorize TD Waterhouse to make inquiries for the purpose of verifying my creditworthiness and to provide information regarding my performance under these agreements to credit reporting agencies and to its affiliates. I further understand that TD Waterhouse may share this information with its affiliates to determine my eligibility for other products and services they may offer. I may opt out of such information sharing by providing TD Waterhouse with written notification. I understand that, upon my request, TD Waterhouse will tell me whether a credit report was requested and provide the name and address of the agency that furnished it. BY SIGNING THIS AGREEMENT, HOLDERS OF MARGIN ACCOUNTS ACKNOWLEDGE THAT CERTAIN OF THEIR SECURITIES MAY BE LENT TO TD WATERHOUSE AS PRINCIPAL OR LENT OUT TO OTHERS. AGREEMENT TO ARBITRATE CONTROVERSIES: 1. Arbitration is final and binding on the parties. 2. The parties are waiving their right to seek remedies in court, including the right to jury trial. 3. Pre-arbitration discovery is generally more limited than and different from court proceedings. 4. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. 5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry. I agree that any controversy relating to any of my accounts or any agreement that I have with you will be submitted to arbitration conducted only under the provisions of the Constitution and Rules of the New York Stock Exchange, Inc. or pursuant to the code of the Arbitration of the National Association of Securities Dealers, Inc. Arbitration must be initiated by service upon the other party of a written demand for arbitration or notice of intention to arbitrate. Judgment, upon any award rendered by the arbitrator, may be entered in any court having jurisdiction. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

Under the penalty of perjury, I certify (1) that the Social Security Number/Taxpayer Identification Number shown on this form is correct, (2) that I am not subject to backup withholding under the provisions of the Internal Revenue Code, and (3) that I/We are U.S. person(s) (including a U.S. resident alien). (If you have been notified that you are subject to backup withholding and have not been notified that this backup withholding has been terminated, you must strike out (2) in the preceding sentence.) This certification is required by U.S. Government regulation.

PLEASE COMPLETE REVERSE BEFORE SIGNING

X _____ 03/11/03
Account Holder Signature        Date
Minor Signature Not Required

If you have an offer code*, enter it here: _____

PLEASE COMPLETE REVERSE BEFORE SIGNING

X _____ 03/11/03
Joint or Custodian Account Holder Signature        Date

*Not all accounts are eligible for certain offers and conditions apply.

©2002 TD Waterhouse Investor Services, Inc. Established 1979. Member NYSE/SIPC. Access to services and your account may be affected by market conditions, system performance, or for other reasons.

# EXHIBIT 66

# TD WATERHOUSE

100 Wall Street
New York, NY 10005
www.tdwaterhouse.com **NORTHEAST OPERATIONS RECEIVED**

**2003 MAR 12 P 12:00**

- **PLEASE PRINT** your information in blue/black ink and do not use white-out.
- Complete both sides of this form and include applicable signatures to avoid delays in processing your application. If you need assistance, call us anytime at 1-800-934-4448, press option 4, then option 4 again.



# *ROLLOVER IRA ACCOUNT APPLICATION*

**18 -1- 6**

- Remember to make all checks payable to: TD Waterhouse
- **PLEASE** use this form only for Rollover IRAs  If you want to open another type of account, please call **1-800-934-4448** to request a package, or visit www.tdwaterhouse.com for the forms available online.

---

**❶ ACCOUNT HOLDER: COMPLETE ALL THE INFORMATION BELOW AS IT SHOULD APPEAR ON YOUR ACCOUNT.**

| | | |
|---|---|---|
| Name: (Mr.) / Mrs. / Ms. / Dr. | Date of Birth | Citizen of |
| First *Vitaly* M.I.  Last *Korchevsky* | mm/0d/yyyy /65 | *U.S.* |
| Where would you like your mail sent? ☒ Home ☐ Business ☐ P.O. Box | Social Security Number -8681 | Bank Reference *PNC Bank* |
| Home Address: Street *1709 Slitting Mill Rd* | | |
| (Must provide home address even if you use a P.O. Box or Business Address) | Employer (If not employed, indicate if retired, student, etc.) | Broker Reference |
| City/State/Zip *Glen Mills, PA 19342* | *Victus Capital* | *Harris direct* |
| P.O. Box Address: | Occupation *Portfolio Manager* | Are you a director, 10% shareholder or a policy-making officer of a publicly traded company? |
| City/State/Zip | Employer Address: Street *25 E 78 th St* | ☐ Yes (If yes, specify company) ☒ No |
| Where should we contact you? Daytime Phone Number: ☒ Home ☐ Business 470 ( ) | Employer Address: City, State, Zip *New York, NY 10020* | Are you employed by a broker/dealer? ☐ Yes ☒ No |

As a TD Waterhouse customer you'll enjoy our flat-fee commission schedule: online trades as low as $9.95, via touch-tone phone at $35, or via an Account Officer at $45.

Yes, I want to conduct business online. Here is my e-mail address:

*(Must provide to invest and bank online)*

Access to services and your account may be limited during periods of peak volume, volatility or for other reasons.

**❷ ACCOUNT ACTIVITIES.**

**A. Would you like to enroll in the Dividend Reinvestment Program?**
☐ Yes    ☒ No

**B. We also offer you the choice to conduct business in:**
☐ Chinese    ☐ Spanish

**❸ PLEASE CHOOSE A SWEEP VEHICLE FOR YOUR UNINVESTED CASH BALANCES. (SELECT ONLY ONE.)**

**TD Waterhouse Cash –**
Pays interest on credit balances.

**TD Waterhouse Bank, N.A. –**
FDIC-Insured Money Market Account.

If neither is specified, you will automatically receive TD Waterhouse Cash as your sweep choice. If you prefer one of our money market funds, please call 1-800-934-4448 once the account is opened.

**TD WATERHOUSE USE ONLY**

**RECEIVED MAR 11 2003**




*3/12/03*

## 4. PLEASE SELECT THE SOURCE OF THE ROLLOVER.

☑ **DIRECT ROLLOVER.** To fund your Rollover IRA with assets from an employer-sponsored retirement plan, such as a 401(k) or pension plan. Also, complete the Direct Rollover Authorization form and attach to this form.

If you're opening a Rollover IRA and wish to preserve your ability to transfer funds from this account to another qualified retirement plan in the future, you may not make additional annual contributions to the Rollover IRA. Please consult with your tax advisor before making additional contributions to a Rollover IRA.

Complete any forms from your employer and provide them with your TD Waterhouse Rollover IRA account information.

_____  _____  _____  _____
Name of employer sponsoring the plan   Approximate total value of distribution   Expected distribution date (mm/dd/yy)   Employer telephone number

By signing this application, I elect that my IRA assets identified above be considered a rollover. This election is required by the IRS to qualify my contribution as a rollover contribution.

☐ **Transfer of existing Rollover IRA** from another financial institution. Also complete the Account Transfer Form.

☑ **Funds you have withdrawn from another institution.** Rollover assets you have withdrawn from an IRA within the past 60 days.

**PLEASE NOTE:** You cannot directly roll over from a qualified plan to a Roth IRA. You must roll over to a Traditional IRA first.

## 5. DESIGNATE YOUR BENEFICIARY(IES).*

| Name and address | Birth date | Social Security # | Relationship | Type of beneficiary | Share % |
|---|---|---|---|---|---|
| Svetlana Korchevsky | /7/ | -4921 | Wife | ☑ Primary ☐ Contingent | 100 % |
| | | | | ☐ Primary ☐ Contingent | |
| | | | | ☐ Primary ☐ Contingent | |
| | | | | ☐ Primary ☐ Contingent | |

*PLEASE NOTE: Type of beneficiary is required. The total percentages for primary beneficiaries must equal 100%. The total percentages for contingent beneficiaries must equal 100%. If additional space is required, please attach a separate sheet with additional beneficiaries.

☐ I have attached a separate sheet with additional beneficiaries.

## 6. REFERRAL.

*IF YOU WERE REFERRED BY AN EXISTING TD WATERHOUSE CUSTOMER, PLEASE PROVIDE THE FOLLOWING INFORMATION SO THAT WE MAY THANK THEM:*

*Individual's Name:* _____

*Address and Telephone Number:* _____

*OTHER* Television, Newspaper, Magazine or Stadium Event: _____

## 7. AGREEMENT TO TERMS.

By signing this Agreement, I acknowledge that: (1) I agree to read and to be bound by the terms of the TD Waterhouse Account Agreement Booklet containing the IRA Custodial Agreement and Disclosure Statement as currently in effect and as amended from time to time. I also understand that I have the right to cancel my IRA within seven days from the date I receive the TD Waterhouse Account Agreement Booklet containing the IRA Custodial Agreement and Disclosure Statement. (If I do not receive or understand the TD Waterhouse Account Agreement Booklet, I will notify TD Waterhouse.) (2) TD Waterhouse does not provide legal or tax advice and will not advise me concerning the nature, potential value, or suitability for me of any unsolicited security transaction or investment strategy. I understand that I have the right to direct the investment and reinvestment of the contributions to my Account and hereby appoint TD Waterhouse as my agent to execute directions - as Broker, under the terms of the IRA Custodial Agreement. (3) I hereby establish a TD Waterhouse Bank Self-Directed Individual Retirement Custodian Account, and certify the accuracy of all information provided, in each case effective upon acceptance by TD Waterhouse Bank. (4) In the case of a rollover contribution, I irrevocably elect to treat this as such, as stated in the Rollover IRAs section of the IRA Disclosure Statement. (5) I authorize TD Waterhouse to make inquiries for the purpose of verifying my creditworthiness and to provide information regarding my performance under these agreements to credit reporting agencies and to its affiliates. I further understand that TD Waterhouse may share this information with its affiliates to determine my eligibility for other products and services they may offer. I may opt out of such information sharing by providing TD Waterhouse with written notification. I understand that, upon my request, TD Waterhouse will tell me whether a credit report was requested and provide the name and address of the agency that furnished it. (6) AGREEMENT TO ARBITRATE CONTROVERSIES: 1. Arbitration is final and binding on the parties. 2. The parties are waiving their right to seek remedies in court, including the right to jury trial. 3. Pre-arbitration discovery is generally more limited than and different from court proceedings. 4. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. 5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry. I agree that any controversy relating to any of my accounts or any agreement that I have with you will be submitted to arbitration conducted only under the provisions of the Constitution and Rules of the New York Stock Exchange, Inc. or pursuant to the code of the Arbitration of the National Association of Securities Dealers, Inc. Arbitration must be initiated by service upon the other party of a written demand for arbitration or notice of intention to arbitrate. Judgment, upon any award rendered by the arbitrator, may be entered in any court having jurisdiction. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

Under the penalties of perjury, I certify that the Social Security Number/Taxpayer Identification Number shown on this form is correct, and that I am not subject to backup withholding under the provisions of the Internal Revenue Code. This certification is required by U.S. Government regulations.

**PLEASE COMPLETE REVERSE BEFORE SIGNING**

X Account Holder Signature _____  Date 03/11/03

**FOR INTERNAL USE ONLY**
**CUSTODIAN ACCEPTANCE: TD WATERHOUSE BANK BY:**

X Signature _____  Date _____

## PLAN ADMINISTRATOR DELIVERY INSTRUCTIONS.

**For Physical Delivery of Certificates:**
National Investor Services Corp.
Attn: Cashiers Dept.
55 Water Street, 32nd Floor
New York, NY 10041

**Fed Wire Monies:**
Wire to: Bankers Trust Co. of NY
1 Bankers Trust Plaza
New York, NY 10006
ABA#021001033
F.B.O. National Investor Services Corp.
A/C#00853820
For the Account of _____
TD Waterhouse Investor Services, Inc. A/C#
All wires MUST include client name and TD Waterhouse, Inc. account number.

**Forward Checks To:**
National Investor Services Corp.
Attn:
ACATS Department
55 Water Street, 32nd Floor
New York, NY 10041
All checks MUST include client name and TD Waterhouse, Inc. account number.

Custodian for Retirement Plan Accounts: TD Waterhouse Bank, N.A., an affiliate of TD Waterhouse Investor Services, Inc. ©2001 TD Waterhouse Investor Services, Inc. Established 1979. Member NYSE/SIPC. Access to services and your account may be affected by market conditions, system performance or for other reasons. $9.95 rate applies to market orders for TD Waterhouse Select customers (36 trades or more per calendar quarter). Otherwise market orders are $12. Limit orders just $3 more. Visit Web site for details on TD Waterhouse Select. All rates apply up to 5,000 shares. Accounts are carried by National Investor Services Corp., an affiliate of TD Waterhouse Investor Services, Inc.

# EXHIBIT 67

# Jefferies Compliance

*Your partner for good business*

**Jefferies ✖**

HOME      TOOLS      POLICIES      EMPLOYEE

COMPLIANCE      CONTACTS
Quick Links: Restricted List   C.I.P.   Jefferies Intranet

CIP

Current User: JEFFERIES\arubin

**New Client Info**
Submitter:       JEFFERIES\arubin
Business Unit: Prime Brokerage
Client Type:    Entity

[ Edit this form ]

### JEFFERIES & COMPANY, INC.
### CIP/AML ADDENDUM FOR ENTITIES
### WITH BROKERAGE ACCOUNTS

Created on 12/28/2011 3:37:29 PM
by JEFFERIES\arubin

Date: 12/28/2011          mm/dd/yyyy *

Please enter associated Monikers/Masters and Sub-Accounts: *
A Sub-Account should be entered only if CIP is being performed at the Sub-Account level. If a
Moniker/Master or Sub-Account is unknown at the time of entry, please leave the relevant field blank. The
CIP Group will update the form with this information once it is available.

| Moniker/Master | Sub-Account | AE No | AE Name | Business Unit | Action |
|---|---|---|---|---|---|
| P0614 | ███336 | PB2 | CHRIS BIANCHI | Prime Brokerage | Edit Delete |
| [ ] | [ ] | [ ] | [ ] | SELECT ONE | Insert |

This CIP/AML Addendum must be completed for an entity before a Moniker/Master or Sub-Account is
opened for their benefit.[1]

The completed form should be printed out. The form should be signed by the preparer and initialed by the
AE. The AE should also initial the client notice in Section F. The signed and initialized form should be
promptly provided to the CIP Group in Jersey City either through inter-office mail or by scanning and
emailing the form and documents to CIP_Documentation. Please refer to the CIP Risk Matrix[2] for the
time-frame in which the identifying documents must be provided to the CIP Group.

███0336

Confidential Treatment Requested by Jefferies

JEFF-SEC000028

NOTE: If client is located or organized in a Medium or High Risk Country, the relationship must
be approved by Senior Management and the AML Compliance Officer, and all required
documents and information must be obtained before the relationship may be established.

Any questions should be directed to the AML Compliance Officer.

Search for Legal Entity

Search Entity in Client Central

## I. CLIENT BACKGROUND INFORMATION

| | |
|---|---|
| 1. NAME: | NTS Capital Fund LP |
| 2. Identify the capacity of Entity* | ● Client<br>○ Associated Person of a Client (i.e. Non-Individual Trustee)<br>○ Both |
| 3. ADDRESS - PRINCIPAL PLACE OF BUSINESS (Provide physical address - Not a PO Box): | Note: Please select country prior to entering address<br>Street Address:<br>1709 Slitting Mill Road<br><br>City: Glen Mills<br><br>State/Province: PENNSYLVANIA<br><br>Zip/Postal Code: 19342<br>Country: |

Confidential Treatment Requested by Jefferies

JEFF-SEC000029

Jefferies New Account AML Addendum (Entities)                    Page 3 of 7

United States

Country Status: Low Risk

| 4. REGISTERED ADDRESS (if different than above): | *Note: Please select country prior to entering address* |
| --- | --- |
| | Street Address: |
| | City: |
| | State/Province: |
| | Zip/Postal Code: |
| | Country: |
| | SELECT ONE |
| | Country Status: |
| 5. Client's Legal Formation: | Limited Liability Company (LLC)    * |
| 6. Country of Organization / | * |

Confidential Treatment Requested by Jefferies

JEFF-SEC000030

Jefferies New Account AML Addendum (Entities)                    Page 4 of 7



Incorporation /
Registration:

United States

Country Status: Low Risk

State of Org/Inc:  DELAWARE

7. U.S. TAX ID Number or
Other Government-Issued
ID[3]:

ID Number:        ███████0370

ID Type:

Taxpayer ID Number:

Issuing Country:

United States

Country Status: Low Risk

Confidential Treatment Requested by Jefferies

JEFF-SEC000031

Jefferies New Account AML Addendum (Entities)                    Page 5 of 7

| 8. Business Telephone Number: | 917-701-1041          * |
|---|---|
| 9. Website: | |
| 10. Is the client owned or controlled by a Foreign Government?* | ○ Yes<br>◉ No |

## A. SECTION TO BE COMPLETED FOR CLIENTS WHO ARE U.S. PERSONS/ENTITIES

| 1. Is this client one of the following regulated financial institutions?* | ○ Bank<br>○ Broker-Dealer<br>○ Futures Commission Merchant<br>○ Open-end Mutual Fund<br>○ Credit Union<br>◉ Not Regulated | ○ Registered Investment Advisor<br>○ Introducing Broker in Commodities<br>○ Commodity Trading Advisor<br>○ Commodity Pool Operator<br>○ Other Regulated Financial Institution Not Listed Above |
|---|---|---|
| 2. Is this client publicly traded or a majority owned subsidiary (>50%) of a publicly traded company?* | ○ Yes<br>◉ No<br>A Publicly Traded Company is a company whose shares are traded on exchange or an over the counter market that is regulated by a securities authority (excluding Companies listed on the Over the-Counter Pink Sheets and OTC Bulletin Board). | |
| 3. Is this client a Government Entity or Agency?[6]* | ○ Yes<br>◉ No | |
| 4. Is this client an Employee Benefit Plan/Pension Plan established under E.R.I.S.A? [7]* | ○ Yes<br>◉ No | |
| 5. If you answered "no" to questions 1-4, please indicate the type of company which best describes the client. If you answered one of questions 1-4 "yes", proceed to Section C.* | ○ Insurance Company<br>◉ Hedge Fund<br>○ Private Equity Fund<br>○ Educational Institution<br>○ Special Purpose Vehicle ("SPV")[8]<br>○ Personal Investment Vehicle ("PIV")[9] | ○ Unregistered Investment Advisor<br>○ Charity/Foundation<br>○ Non-ERISA Employee Benefit Plan<br>○ Estate<br>○ Trust<br>○ Venture Capital Fund |

Confidential Treatment Requested by Jefferies

JEFF-SEC000032

○ Other

**B. SECTION TO BE COMPLETED FOR CLIENTS WHO ARE NON-U.S. PERSONS/ENTITIES**

This section is not applicable based on your answers.

**C. SECTION TO BE COMPLETED FOR CLIENTS WHO ARE NON-FINANCIAL PRIVATE ENTITIES**

This section is not applicable based on your answers.

**D. SECTION TO BE COMPLETED FOR ALL SOLE PROPRIETORSHIPS, UNINCORPORATED ASSOCIATIONS, PERSONAL INVESTMENT VEHICLES, TRUSTS AND ESTATES**

This section is not applicable based on your answers.

**E. ADDITIONAL REQUIREMENTS FOR MEDIUM, HIGH RISK CUSTOMERS AND SANCTIONED/PROHIBITED COUNTRIES**

This section is not applicable based on your answers.

**F. CLIENT NOTICE REQUIREMENT AND ATTESTATION:**

Individual Establishing Relationship affirms that he or she has notified the client of the following:

To help the government fight terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. Jefferies is asking you for identification information that will allow us to verify your identity. We may also request documents or other information, and run your name against databases as necessary to verify your identity in compliance with these regulations.

Please indicate how the client was provided with the above notice.*

○ Orally

○ By Email

○ AML Questionnaire

◉ Other (please describe)

Describe if Other selected: [New Account Packet]    *

_____ Individual Establishing Relationship Initials

The Individual Establishing Relationship also affirms that the CIP/AML Addendum for Entities has been completed in full and that the information contained in the Addendum is, to the best of his/her knowledge, accurate.

_____ Individual Establishing Relationship Initials

Confidential Treatment Requested by Jefferies

JEFF-SEC000033

Jefferies New Account AML Addendum (Entities)                    Page 7 of 7

Prepared By
Name:            Chris Bianchi
Title/Position:      SVP
Date:            12/28/11
Signature:

## Jefferies Compliance

*Your partner for good business*



**HOME   TOOLS   POLICIES   EMPLOYEE**

**COMPLIANCE   CONTACTS**
Quick Links: Restricted List  C.I.P.  Jefferies Intranet

CIP

Current User: JEFFERIES\arubin

### APPENDIX D – ASSOCIATED PERSONS

**Note : Any changes made by hitting the Add party button will be saved. You will not be able to add or delete parties, once you hit the Submit button at the bottom of the page.**

**NAME OF ENTITY:** NTS Capital Fund LP

### Directions for Completing the Appendix

Please list the names of all the Persons associated with your Client as specified in the CIP Risk Matrix based on the Client Type and Country Risk Category.

**Add Party :**

Fields marked with an asterisk ✱ are required.

✱ Individual :        ⦿ Yes   ○ No

✱ First Name :

Middle Name :

✱ Last Name :

✱ Relationship to Client :   ⦿ Managing Member

○ Authorized Trader/Principal

[ Add Party ]

**Managing Members**

| None. |
| --- |

**Authorized Traders/Principals**

| Name | |
| --- | --- |

Confidential Treatment Requested by Jefferies

JEFF-SEC000035

Appendix D                                                  Page 2 of 2

| Vitaly Korchevsky | Delete |
|---|---|
| Svetlana Korchevsky | Delete |

Submit

Confidential Treatment Requested by Jefferies

JEFF-SEC000036