EXHIBIT 151

| From: | Lopatina Maria <ml@copperstone.ru> |
|---|---|
| Sent: | Friday, December 23, 2011 11:53 AM |
| To: | newaccounts@interactivebrokers.com; archive@interactivebrokers.com; barchive@interactivebrokers.com |
| Cc: | da@copperstone.ru |
| Subject: | RE: RE: RE: RE: Your Interactive Brokers Account: ▇▇8284 |
| Attach: | Register of Members & Direetors and Officers CC.pdf |

Dear Colleen,

I think there may be a misunderstanding as to this matter,

Copperstone Capital is not a 100% owner of Intertrade Pacific S.A., but vice versa: the Company Copperstone Capital is fully owned by Intertrade Pacific S.A.. Register of Members of Copperstone Capital has been sent before in previous correspondence and it illustrates the ownership. I attach you this document once again, just to be on the safe side.

Please let me know if that explanation assists?

We really hope that we could settle everything and close this question by the end of this year and we look forward to start trading with you.

Many thanks and kind regards,

Maria

---

**From:** newaccounts@interactivebrokers.com [mailto:newaccounts@interactivebrokers.com]
**Sent:** Thursday, December 22, 2011 10:30 PM
**To:** ml@copperstone.ru
**Cc:** da@copperstone.ru
**Subject:** Re: RE: RE: RE: Your Interactive Brokers Account: ▇▇8284

Hi Maria.

Based on the submitted organization chart, we will ask that Copperstone Capital be listed as 100% owner of Intertrade Pacific S.A on this account application. Please instruct the authorized individual to login to "Finish an Application" and update the owners information. Please also submit a letter which can explain the ownership of Copperstone Capital as this was not indicated on the corporate chart.

All issues and documents need to be addressed and received before the account can be considered for approval. For your convenience, you may attach scanned images to the reply of this e-mail or fax them to 312-984-0035 with your account number referenced on the top of the fax. Only the following attachment types are accepted: .gif .tiff .tif .jpeg .jpg .png .bmp .pdf.

If you would like to speak with me regarding the above matter, you can reach me toll free at 877.442.2757, or you may dial our US office direct at 1.312.542.6856.

We look forward to having you as an approved client!

Kind Regards,

Colleen Fitzgerald

SEC-IB-E-0223922

New Accounts Department
Interactive Brokers, LLC-US
----- Original Message -----
> Dear Colleen,
>
>
>
> Please find enclosed lease agreement with translation. This document shows
> full terms. Russian version in PDF also contains the Act of Acceptance the
> translation of which I forwarded you in previous e-mail.
>
>
>
> I hope this will meet your requirements.
>
>
>
> Look forward to hearing from you.
>
>
>
> With kind regards,
>
>
>
> Maria
>
>
>
> From: newaccounts@interactivebrokers.com
> [mailto:newaccounts@interactivebrokers.com]
> Sent: Wednesday, December 14, 2011 12:15 AM
> To: ml@copperstone.ru
> Subject: Re: RE: RE: Your Interactive Brokers Account: ███8284
>
>
>
> Описание: Рисунок удален отправителем.
>
> Hi Maria.
>
> Thank you for your reply, as well as the documentation submission. As the
> sub lease agreement does not list an end date, we cannot accept this as
> verification. Would it be possible to submit an acceptable document in the
> name of Intertrade Pacific S.A to satisfy this pending task, such as a bank
> statement?
>
> If not, we will need a valid document submitted for Copperstone Capital in
> order to proceed. Should the lease show the full terms (start/end dates)
> please submit this for review. The full list of acceptable documentation has
> been included at the end of this email.
>
> All issues and documents need to be addressed and received before the
> account can be considered for approval. For your convenience, you may attach

SEC-IB-E-0223923

> scanned images to the reply of this e-mail or fax them to 312-984-0035 with
> your account number referenced on the top of the fax. Only the following
> attachment types are accepted: .gif .tiff .tif .jpeg .jpg .png .bmp .pdf.
>
> If you would like to speak with me regarding the above matter, you can reach
> me toll free at 877.442.2757, or you may dial our US office direct at
> 1.312.542.6856.
>
> We look forward to having you as an approved client!
>
> Kind Regards,
>
> Colleen Fitzgerald
>
> *Acceptable Documents
>
> Proof of Principal Business Address
>
> 1. EVIDENCE OF PROPERTY: A mortgage statement, deed, title or lease.
> Document must clearly state the full business name and current business
> address.
>
> 2. UTILITY BILL: For example, a bill for electricity, water, telephone or
> gas service (mobile phone bills are not acceptable). The bill must clearly
> show the full business name and address and must be less than 12 months old.
>
> 3. INSURANCE POLICY DOCUMENTS: Current businessБ-? insurance policy
> documents or riders. A Bill for the business insurance policy less than 12
> months old is acceptable.
>
> 4. SECURITY SYSTEM STATEMENTS: Current businessБ-? security system bill or
> statement less than 12 months old.
>
> 5. GOVERNMENT ISSUED LETTERS/STATEMENTS: Must establish current business
> address and be less than 12 months old. Any of the following acceptable:
>
> -Tax letters and notices
> -Letters/notices from government housing authorities
> -Other official government letters/notices showing business name & address
>
> 6. CREDIT CARD STATEMENTS: Bank issued credit cards only. Credit card must
> be in the name of the business and not the CEO/owner/authorized user only.
> Statement must clearly show the bank backing the credit card. (Business &
> Bank backing the credit card must be from a country that is a full member of
> the Financial Action Task Force on Money Laundering: www.fatf-gafi.org).
>
> 7. BANK STATEMENT: Must be less than 12 months old and show full business
> name and current address. (Business & Bank must be from a country that is a
> full member of the Financial Action Task Force on Money Laundering:
> www.fatf-gafi.org)
>
> 8. BROKERAGE STATEMENT: Brokerage firm must be a U.S. registered
> broker-dealer or foreign affiliate of a U.S. registered broker-dealer.

SEC-IB-E-0223924

> (Business & Brokerage firm must be from a country that is a full member of
> the Financial Action Task Force on Money Laundering: www.fatf-gafi.org).
>
> IMPORTANT: All screen shots submitted are subject to review
>
>
> New Accounts Department
> Interactive Brokers, LLC-US
> ----- Original Message -----
>> Dear Colleen,
>>
>>
>>
>> Please find in attachment Delivery-Acceptance Act on transfer of the
>> premises to the sublessee. This document states full business name and
>> current business address of the Representative Office of the Company
>> Copperstone Capital (Cayman Islands) - the affiliated entity of Intertrade
>
>> Pacific S.A. The original is presented in Russian; translation follows in
>> scan.
>>
>>
>>
>> Kindly advise if this document is acceptable.
>>
>> We can also provide you with lease agreement. Let me know if you need it
> and
>> we will prepare its translation.
>>
>>
>>
>> Look forward to hearing from you.
>>
>>
>>
>> With kind regards,
>>
>> Maria
>>
>>
>>
>> From: newaccounts@interactivebrokers.com
>> [mailto:newaccounts@interactivebrokers.com]
>> Sent: Friday, December 09, 2011 7:00 PM
>> To: ml@copperstone.ru
>> Cc: da@copperstone.ru
>> Subject: Re: RE: Your Interactive Brokers Account: ██58284
>>
>>
>>
>> Описание: Рисунок удален отправителем.
>>
>> Hi Maria.
>>

SEC-IB-E-0223925

>> Thank you for your reply. The submitted rent payment receipt does not
> appear
>> to contain an address. Please submit an acceptable document (and
> translation
>> if applicable) to verify the stated business address. I have included the
>> full list of acceptable documentation at the end of this email.
>>
>> All issues and documents need to be addressed and received before the
>> account can be considered for approval. For your convenience, you may
> attach
>> scanned images to the reply of this e-mail or fax them to 312-984-0035
> with
>> your account number referenced on the top of the fax. Only the following
>> attachment types are accepted: .gif .tiff .tif .jpeg .jpg .png .bmp .pdf.
>>
>> If you would like to speak with me regarding the above matter, you can
> reach
>> me toll free at 877.442.2757, or you may dial our US office direct at
>> 1.312.542.6856.
>>
>> We look forward to having you as an approved client!
>>
>> Kind Regards,
>>
>> Colleen Fitzgerald
>>
>> *Acceptable Documents
>>
>> Proof of Principal Business Address
>>
>> 1. EVIDENCE OF PROPERTY: A mortgage statement, deed, title or lease.
>> Document must clearly state the full business name and current business
>> address.
>>
>> 2. UTILITY BILL: For example, a bill for electricity, water, telephone or
>> gas service (mobile phone bills are not acceptable). The bill must clearly
>
>> show the full business name and address and must be less than 12 months
> old.
>>
>>
>> 3. INSURANCE POLICY DOCUMENTS: Current businessБ-? insurance policy
>> documents or riders. A Bill for the business insurance policy less than 12
>
>> months old is acceptable.
>>
>> 4. SECURITY SYSTEM STATEMENTS: Current businessБ-? security system bill or
>
>> statement less than 12 months old.
>>
>> 5. GOVERNMENT ISSUED LETTERS/STATEMENTS: Must establish current business
>> address and be less than 12 months old. Any of the following acceptable:
>>
>> -Tax letters and notices

SEC-IB-E-0223926

>> -Letters/notices from government housing authorities
>> -Other official government letters/notices showing business name & address
>
>>
>> 6. CREDIT CARD STATEMENTS: Bank issued credit cards only. Credit card must
>
>> be in the name of the business and not the CEO/owner/authorized user only.
>
>> Statement must clearly show the bank backing the credit card. (Business &
>> Bank backing the credit card must be from a country that is a full member
> of
>> the Financial Action Task Force on Money Laundering: www.fatf-gafi.org).
>>
>> 7. BANK STATEMENT: Must be less than 12 months old and show full business
>> name and current address. (Business & Bank must be from a country that is
> a
>> full member of the Financial Action Task Force on Money Laundering:
>> www.fatf-gafi.org)
>>
>> 8. BROKERAGE STATEMENT: Brokerage firm must be a U.S. registered
>> broker-dealer or foreign affiliate of a U.S. registered broker-dealer.
>> (Business & Brokerage firm must be from a country that is a full member of
>
>> the Financial Action Task Force on Money Laundering: www.fatf-gafi.org).
>>
>> IMPORTANT: All screen shots submitted are subject to review
>>
>>
>> New Accounts Department
>> Interactive Brokers, LLC-US
>> ----- Original Message -----
>>> Dear Colleen,
>>>
>>>
>>>
>>> Thank you for your e-mail. You will find our comments on pending issues
>> regarding Intertrade Pacific account in the body of your e-mail below, in
>> blue.
>>>
>>>
>>>
>>> I also enclose rent payment bill by the Representative Office of the
>> Company Copperstone Capital (Cayman Islands) in Moscow and its notarized
>> translation into English.
>>>
>>>
>>>
>>> The scheme on the attached will visually demonstrate the affiliation of
>> all companies.
>>>
>>>
>>>
>>> Please, do not hesitate to contact me in case of any further inquiry.
>>>

SEC-IB-E-0223927

>>>
>>>
>>> With kind regards,
>>>
>>>
>>>
>>> Maria Lopatina
>>>
>>>
>>>
>>> Copperstone Capital
>>>
>>> 16 Sadovnicheskaya Street, bld.1
>>>
>>> Moscow, 115035 Russia
>>>
>>> Tel.: +7 495 988 0010
>>>
>>> Fax: +7 495 951 1410
>>>
>>> ml@copperstone.ru
>>>
>>>
>>>
>>>
>>>
>>>
>>> _____
>>>
>>>
>>>
>>> п·п©пТя│п│п+пТп│: п·п©пТя│п│п+пТп│: п=пТя│я┐п+п+п│ я┐п│п│п│п│п+
>> п+я-п©я-п│п│пТя-п│п│п│п+. Interactive Brokers - The Professional's Gateway
>
>> to the World's Markets
>>>
>>>
>>>
>>> Dec 06, 2011
>>>
>>>
>>>
>>>
>>> п·п©пТя│п│п+пТп│: п·п©пТя│п│п+пТп│: п=пТя│я┐п+п+п│ я┐п│п│п│п│п+
>> п+я-п©я-п│п│пТя-п│п│п│п+.
>>>
>>> Dear Intertrade Pacific S.A,
>>>
>>> Thank you for your patience while reviewing this account application.
>> Please be aware that we are unable to verify the business address of
>> Intertrade Pacific S.A based on the submitted information. In order to
>> proceed, please address the below inquiries in a reply to this email.

SEC-IB-E-0223928

>>>
>>> 1) It was stated that "The Representative Office of the Company
>> Copperstone Capit

SEC-IB-E-0223929

**REGISTER OF MEMBERS OF:** Copperstone Capital
**SHARE CLASS:** Ordinary Shares

**DATE: May 12, 2011**

| Name & Address | Cert # | Date of Entry | Shares Acquired | Shares Disposed | Date of Cessation | Amount paid or agreed to be paid | Nature of Acquisition | Transfer Details |
|---|---|---|---|---|---|---|---|---|
| Tamil Limited<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands<br>*Total shares held: 0.00 shares* | - | 24-Mar-2010 | 100.00 | 100.00 | 24-Mar-2010 | USD 100.00 | Original Issue | 100 shares tfr'd to Intertrade Pacific S.A. |
| Intertrade Pacific S.A.<br>Geneva Place, Waterfront Drive<br>PO Box 3469, Road Town<br>Tortola, BVI<br>*Total shares held: 100.00 shares* | 1 | 24-Mar-2010 | 100.00 | | | USD 100.00 | 100 shares tfr'd from Tamil Limited | |

SEC-IB-E-0223930

REGISTER OF DIRECTORS & OFFICERS OF:    Copperstone Capital

DATE: May 12, 2011

| Name & Address | Office Held | Date of Appointment | Date of Resignation |
|---|---|---|---|
| G.P. Limited<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands | Director | 24-Mar-2010 | 24-Mar-2010 |
| Cayman Directors Limited<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands | Director | 24-Mar-2010 | 24-Mar-2010 |
| David Amaryan<br>Bolshaya Akademicheskaya Street 15<br>Building 1, Apartment 255<br>Moscow 125130<br>Russia | Director | 24-Mar-2010 | |
| Cayman Management Services Ltd.<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands | Secretary | 24-Mar-2010 | |

SEC-IB-E-0223931

# EXHIBIT 152

### *A P O S T I L L E*

### (Convention de la Haye du 5 Octobre 1961)

1. Country:  **Tortola, British Virgin Islands**

   This public document

2. has been signed by:  **Lewis S. Hunte**

3. acting in the capacity of: **Notary Public**

4. bears the seal/stamp of: **Lewis S. Hunte**

### *C E R T I F I E D*

5. at Road Town, Tortola

6. the 9th March 2010

7. by:  "REGISTRAR-GENERAL"

8. No ................................... **RG-41985**

9. Seal/stamp:



10. Signature ....................................
    *(for)* "REGISTRAR-GENERAL"

SEC-IB-E-0220317

## CERTIFICATE OF COLLATION

I, Lewis S. Hunte Notary Public in Road Town, Tortola, British Virgin Islands, DO HEREBY CERTIFY:

1.  THAT annexed hereto is a copy of the Certificate of Incorporation for **INTERTRADE PACIFIC S.A.** certified by the Registrar of Corporate Affairs.

2.  THAT annexed hereto is a copy of the Register of Directors for **INTERTRADE PACIFIC S.A.** certified by the Registered Agent.

3.  THAT annexed hereto is a copy of the Register of Members for **INTERTRADE PACIFIC S.A.** certified by the Registered Agent.

4.  THAT annexed hereto is a copy of the Certificate of Incumbency for **INTERTRADE PACIFIC S.A.** certified by the Registered Agent.

4.  THAT annexed hereto is a copy of the Memorandum and Articles of Association for **INTERTRADE PACIFIC S.A.** certified by the Registered Agent.

Dated: 9 March 2010



_____
**Lewis S. Hunte**
**Notary Public**

[B.CER05(06)]

SEC-IB-E-0220318

TERRITORY OF THE BRITISH VIRGIN ISLANDS
BVI BUSINESS COMPANIES ACT, 2004

A Certified True Copy

CERTIFICATE OF INCORPORATION
(SECTION 7)

The REGISTRAR of CORPORATE AFFAIRS, of the British Virgin Islands HEREBY CERTIFIES, that pursuant to the BVI Business Companies Act, 2004, all the requirements of the Act in respect of incorporation having been complied with,

INTERTRADE PACIFIC S.A.

BVI COMPANY NUMBER: 1550899

is incorporated in the BRITISH VIRGIN ISLANDS as a BVI BUSINESS COMPANY, this 8th day of October, 2009.

Jordans (Caribbean) Limited
Registered Agent

_for_ REGISTRAR OF CORPORATE AFFAIRS
8th day of October, 2009

SEC-IB-E-0220319

**REGISTER OF DIRECTORS AND OFFICERS OF INTERTRADE PACIFIC S.A. (BVI)**

| DIRECTOR'S NAME | ALTERNATE DIRECTOR'S NAME | ADDRESS | OCCUPATION | APPOINTED | RESIGNED | REGISTRAR NOTIFIED APPOINTMENT | RESIGNATION |
|---|---|---|---|---|---|---|---|
| ABS INTERNATIONAL SERVICES LTD. | — | 103 Shun Peng Tong Plaza, Victoria, Mahe, Seychelles | Management Services | 08 Oct 2009 | 08 Oct 2009 | | |
| Mr. David Amaryan | — | Mr. David Amaryan, flat 49, bld. 1, Moscow, Andreevskaya nab. | Management Services | 08 Oct 2009 | | | |

| OFFICER'S NAME | OFFICE HELD | ADDRESS | OCCUPATION | APPOINTED | RESIGNED | REGISTRAR NOTIFIED APPOINTMENT | RESIGNATION |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

DATED: 03 March 2010

Director ................. Mr. David Amaryan

A Certified True Copy
Jordans (Caribbean) Limited
Registered Agent
.................

*(stamp: INTERTRADE PACIFIC S.A. BVI 2009)*

SEC-IB-E-0220320

REGISTER OF MEMBERS OF

INTERTRADE PACIFIC S.A. (BVI)

| MEMBER'S NAME AND ADDRESS | NUMBER OF SHARES | CLASS AND SERIES OF SHARES (IF ANY) | CERTIFICATE NUMBER | SHARE NUMBER(ED) | DATE OF ACQUISITION | DATE OF TRANSFER | TRANSFER OF SHARES | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | NUMBER OF SHARES | TRANSFEREE |
| Mr. David Amaryan, flat 49, bld. 1, Moscow, Andreevskaya nab. | 50000 | Registered, with no par-value | 1 | 00001-50000 | 8-Oct-2009 | | | |

DATED: 03-March-2010

Mr. David Amaryan

DIRECTOR

A Certified True Copy

.......................................
Jordans (Caribbean) Limited
Registered Agent

SEC-IB-E-0220321



# J O R D A N S
### INTERNATIONAL

## CERTIFICATE OF INCUMBENCY

We, Jordans (Caribbean) Limited, being the duly appointed Registered Agent of INTERTRADE PACIFIC S.A. (hereinafter the "Company"), do hereby confirm that as of the date of this Certificate:

1. The Company is in good legal standing.

2. The Company was incorporated in British Virgin Islands on 8th October 2009 under BVI Business Companies Act, registration number 1550899.

3. The Registered Office address of the Company is: P.O. Box 3469, Road Town, Tortola, British Virgin Islands.

4. The Sole Director of the Company is:

    Mr. David Amaryan

5. The Sole Member of the Company is:

    Mr. David Amaryan

6. No formal notice has been served at the Registered Office of the Company, that the Company is in default under any laws, statute, regulation, indenture, mortgage, trust deed, agreement or other instrument, arrangement, obligation or duty, to which it is a party or by which it is bound.

7. No formal notice has been served at the registered Office of the Company, that litigation or administration or arbitration proceedings before or of any court or tribunal, arbitrator, administrative or governmental authority are presently in process or pending or threatened against the Company.

8. There exists no Register of: mortgage, charge, pledge, lien, encumbrance or other security interest whatsoever over the whole or any part of the undertaking or assets present or future (including the uncalled capital) of the Company, on file at the Registered Office of the Company.

9. No action has been taken to wind up the affairs of the Company.

Dated this day 5 March 2010       **A Certified True Copy**

Nicola Jane Metcalf               Jordans (Caribbean) Limited
Registered Agent                Registered Agent

## NOTARIAL CERTIFICATE

This Certificate of Incumbency was signed before I, Lewis Hunte, this 5th March 2010 by Nicola Jane Metcalf, a person known to me, representing Jordans (Caribbean) Limited.

v.jordans-international.com

s (Caribbean) Limited  Geneva Place  Waterfront Drive  PO Box 3469  Road Town  Tortola  British Virgin Islands
84 494 6643  F +1 284 494 6615  E info@jordans-bvi.com
ed in British Virgin Islands No. 9389  Registered Office: As above

SEC-IB-E-0220322

A Certified True Copy

Jordans (Caribbean) Limited
Registered Agent

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE BVI BUSINESS COMPANIES ACT, 2004

# MEMORANDUM AND ARTICLES OF ASSOCIATION



INTERTRADE PACIFIC S.A.

Incorporated 8 October 2009

**Jordans (Caribbean) Limited**
**Geneva Place**
**Waterfront Drive**
**PO Box 3469, Road Town**
**Tortola**
**British Virgin Islands**

**Tel: +1 284 494 6643   Fax: +1 284 494 6615**

R-MN02a(06)

SEC-IB-E-0220323



"This page has been left blank intentionally"

B-MS02a(06)

SEC-IB-E-0220324

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE BVI BUSINESS COMPANIES ACT, 2004

A COMPANY LIMITED BY SHARES


MEMORANDUM OF ASSOCIATION OF


INTERTRADE PACIFIC S.A.


1.  **DEFINITIONS AND INTERPRETATION**

1.1  In this Memorandum of Association and the attached Articles of Association, if
     not inconsistent with the subject or context:

     "**Act**" means the BVI Business Companies Act (No. 16 of 2004) and includes
     the regulations made under the Act;

     "**Articles**" means the attached Articles of Association of the Company;

     "**Chairman of the Board**" has the meaning specified in Regulation 12;

     "**Distribution**" in relation to a distribution by the Company means the direct or
     indirect transfer of an asset, other than Shares, to or for the benefit of the
     Shareholder in relation to Shares held by a Shareholder, and whether by
     means of a purchase of an asset, the redemption or other acquisition of
     Shares, a distribution of indebtedness or otherwise, and includes a dividend;

     "**Eligible Person**" means individuals, corporations, trusts, the estates of
     deceased individuals, partnerships and unincorporated associations of
     persons;

     "**Memorandum**" means this Memorandum of Association of the Company;

     "**Registrar**" means the Registrar of Corporate Affairs appointed under section
     229 of the Act;

     "**Resolution of Directors**" means either:

     (a)   a resolution approved at a duly convened and constituted meeting of
           directors of the Company or of a committee of directors of the Company
           by the affirmative vote of a majority of the directors present at the
           meeting who voted except that where a director is given more than one

1

B-MJ02x(06)

SEC-IB-E-0220325

vote, he shall be counted by the number of votes he casts for the purpose of establishing a majority; or

(b)    a resolution consented to in writing by all directors or by all members of a committee of directors of the Company, as the case may be;

**"Resolution of Shareholders"** means either:

(a)    a resolution approved at a duly convened and constituted meeting of the Shareholders of the Company by the affirmative vote of a majority of the votes of the Shares entitled to vote thereon which were present at the meeting and were voted; or

(b)    a resolution consented to in writing by a majority of the votes of Shares entitled to vote thereon;

**"Seal"** means any seal which has been duly adopted as the common seal of the Company.

**"Securities"** means Shares and debt obligations of every kind of the Company, and including without limitation options, warrants and rights to acquire shares or debt obligations;

**"Share"** means a share issued or to be issued by the Company;

**"Shareholder"** means an Eligible Person whose name is entered in the register of members of the Company as the holder of one or more Shares or fractional Shares;

**"Treasury Share"** means a Share that was previously issued but was repurchased, redeemed or otherwise acquired by the Company and not cancelled; and

**"written"** or any term of like import includes information generated, sent, received or stored by electronic, electrical, digital, magnetic, optical, electromagnetic, biometric or photonic means including electronic data interchange, electronic mail, telegram, telex or telecopy, and **"in writing"** shall be construed accordingly.

1.2    In the Memorandum and the Articles, unless the context otherwise requires a reference to:

(a)    a **"Regulation"** is a reference to a regulation of the Articles;

(b)    a **"Clause"** is a reference to a clause of the Memorandum;

(c)    voting by Shareholders is a reference to the casting of the votes attached to the Shares held by the Shareholder voting;

2

B.MN02w.063

SEC-IB-E-0220326

(d)     the Act, the Memorandum or the Articles is a reference to the Act or those documents as amended; and

(e)     the singular includes the plural and vice versa.

1.3     Any words or expressions defined in the Act unless the context otherwise requires bear the same meaning in the Memorandum and Articles unless otherwise defined herein.

1.4     Headings are inserted for convenience only and shall be disregarded in interpreting the Memorandum and Articles.

## 2.     NAME

The name of the Company is INTERTRADE PACIFIC S.A.

## 3.     STATUS

The Company is a company limited by shares.

## 4.     REGISTERED OFFICE AND REGISTERED AGENT

4.1     The first registered office of the Company at Geneva Place, Waterfront Drive, P.O. Box 3469, Road Town, Tortola, British Virgin Islands, the office of the first registered agent.

4.2     The first registered agent of the Company is Jordans (Caribbean) Limited of Geneva Place, Waterfront Drive, P.O. Box 3469, Road Town, Tortola, British Virgin Islands.

4.3     The Company may by Resolution of Shareholders or by Resolution of Directors change the location of its registered office or change its registered agent.

4.4     Any change of registered office or registered agent will take effect on the registration by the Registrar of a notice of the change filed by the existing registered agent or a legal practitioner in the British Virgin Islands acting on behalf of the Company.

## 5.     CAPACITY AND POWERS

5.1     Subject to the Act and any other British Virgin Islands legislation, the Company has, irrespective of corporate benefit:

(a)     full capacity to carry on or undertake any business or activity, do any act or enter into any transaction; and

(b)     for the purposes of paragraph (a), full rights, powers and privileges.

3

BVIN028065

SEC-IB-E-0220327

5.2 For the purposes of section 9(4) of the Act, there are no limitations on the business that the Company may carry on.

6. **NUMBER AND CLASSES OF SHARES**

6.1 The Company is authorised to issue a maximum of 50,000 no par value Shares of a single class.

6.2 The Company may issue fractional Shares and a fractional Share shall have the corresponding fractional rights, obligations and liabilities of a whole share of the same class or series of shares.

7. **DESIGNATIONS, POWERS, PREFERENCES, ETC. OF SHARES**

7.1 Each Share in the Company confers upon the Shareholder:

   (a) the right to one vote at a meeting of the Shareholders of the Company or on any Resolution of Shareholders;

   (b) the right to an equal share in any dividend paid by the Company; and

   (c) the right to an equal share in the distribution of the surplus assets of the Company on its liquidation.

7.2 The directors may at their discretion by Resolution of Directors redeem, purchase or otherwise acquire all or any of the Shares in the Company subject to Regulation 3 of the Articles.

8. **VARIATION OF RIGHTS**

The rights attached to Shares as specified in Clause 7 may only, whether or not the Company is being wound up, be varied with the consent in writing of or by a resolution passed at a meeting by the holders of not less than 50 per cent of the issued Shares of that class.

9. **RIGHTS NOT VARIED BY THE ISSUE OF SHARES PARI PASSU**

The rights conferred upon the holders of the Shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the Shares of that class, be deemed to be varied by the creation or issue of further Shares ranking *pari passu* therewith.

10. **REGISTERED SHARES**

10.1 The Company shall issue registered shares only.

10.2 The Company is not authorised to issue bearer shares, convert registered shares to bearer shares or exchange registered shares for bearer shares.

4

B.M.002n(06)

SEC-IB-E-0220328

11. **TRANSFER OF SHARES**

11.1 The Company shall, on receipt of an instrument of transfer complying with Sub-Regulation 6.1 of the Articles, enter the name of the transferee of a Share in the register of members unless the directors resolve to refuse or delay the registration of the transfer for reasons that shall be specified in a Resolution of Directors.

11.2 The directors may not resolve to refuse or delay the transfer of a Share unless the Shareholder has failed to pay an amount due in respect of the Share.

12. **AMENDMENT OF MEMORANDUM AND ARTICLES**

12.1 Subject to Clause 8, the Company may amend its Memorandum or Articles by a Resolution of Shareholders or by a Resolution of Directors, save that no amendment may be made by a Resolution of Directors:

    (a)    to restrict the rights or powers of the Shareholders to amend the Memorandum or Articles;

    (b)    to change the percentage of Shareholders required to pass a Resolution of Shareholders to amend the Memorandum or Articles;

    (c)    in circumstances where the Memorandum or Articles cannot be amended by the Shareholders; or

    (d)    to Clauses 7, 8 or 9 or this Clause 12.

12.2 Any amendment of the Memorandum or Articles will take effect on the registration by the Registrar of a notice of amendment, or restated Memorandum and Articles, filed by the registered agent.

B.3450/2a(06)

SEC-IB-E-0220329

We, Jordans (Caribbean) Limited of Geneva Place, Waterfront Drive, P.O. Box 3469, Road Town, Tortola, British Virgin Islands for the purpose of incorporating a BVI Business Company under the laws of the British Virgin Islands hereby sign this Memorandum of Association on 8 October 2009.

Incorporator

...............................
Amy Roost
Authorised Signatory
Jordans (Caribbean) Limited



6

B.MN02a(06)

SEC-IB-E-0220330

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE BVI BUSINESS COMPANIES ACT, 2004

A COMPANY LIMITED BY SHARES


ARTICLES OF ASSOCIATION OF


INTERTRADE PACIFIC S.A.


## 1. REGISTERED SHARES

1.1    Every Shareholder is entitled to a certificate signed by a director of the Company or under the Seal specifying the number of Shares held by him and the signature of the director and the Seal may be facsimiles.

1.2    Any Shareholder receiving a certificate shall indemnify and hold the Company and its directors and officers harmless from any loss or liability which it or they may incur by reason of any wrongful or fraudulent use or representation made by any person by virtue of the possession thereof. If a certificate for Shares is worn out or lost it may be renewed on production of the worn out certificate or on satisfactory proof of its loss together with such indemnity as may be required by a Resolution of Directors.

1.3    If several Eligible Persons are registered as joint holders of any Shares, any one of such Eligible Persons may give an effectual receipt for any Distribution.

## 2. SHARES

2.1    Shares and other Securities may be issued at such times, to such Eligible Persons, for such consideration and on such terms as the directors may by Resolution of Directors determine.

2.2    Section 46 of the Act (Pre-emptive rights) does not apply to the Company.

2.3    A Share may be issued for consideration in any form, including money, a promissory note, real property, personal property (including goodwill and know-how) or a contract for future services.

2.4    No Shares may be issued for a consideration other than money, unless a Resolution of Directors has been passed stating:

(a)    the amount to be credited for the issue of the Shares;

1

B.342022(006)

SEC-IB-E-0220331

(b) their determination of the reasonable present cash value of the non-money consideration for the issue; and

(c) that, in their opinion, the present cash value of the non-money consideration for the issue is not less than the amount to be credited for the issue of the Shares.

2.5 The Company shall keep a register (the "register of members") containing:

(a) the names and addresses of the Eligible Persons who hold Shares;

(b) the number of each class and series of Shares held by each Shareholder;

(c) the date on which the name of each Shareholder was entered in the register of members; and

(d) the date on which any Eligible Person ceased to be a Shareholder.

2.6 The register of members may be in any such form as the directors may approve, but if it is in magnetic, electronic or other data storage form, the Company must be able to produce legible evidence of its contents. Until the directors otherwise determine, the magnetic, electronic or other data storage form shall be the original register of members.

2.7 A Share is deemed to be issued when the name of the Shareholder is entered in the register of members.

3. **REDEMPTION OF SHARES AND TREASURY SHARES**

3.1 The Company may purchase, redeem or otherwise acquire and hold its own Shares save that the Company may not purchase, redeem or otherwise acquire its own Shares without the consent of Shareholders whose Shares are to be purchased, redeemed or otherwise acquired unless the Company is permitted by the Act or any other provision in the Memorandum or Articles to purchase, redeem or otherwise acquire the Shares without their consent.

3.2 The Company may only offer to acquire Shares if at the relevant time the directors determine by Resolution of Directors that immediately after the acquisition the value of the Company's assets will exceed its liabilities and the Company will be able to pay its debts as they fall due.

3.3 Sections 60 (Process for acquisition of own shares), 61 (Offer to one or more shareholders) and 62 (Shares redeemed otherwise than at the option of company) of the Act shall not apply to the Company.

3.4 Shares that the Company purchases, redeems or otherwise acquires pursuant to this Regulation may be cancelled or held as Treasury Shares except to the extent that such Shares are in excess of 50 percent of the issued Shares in which case they shall be cancelled but they shall be available for reissue.

2

R3IN02zx066

SEC-IB-E-0220332

3.5 All rights and obligations attaching to a Treasury Share are suspended and shall not be exercised by the Company while it holds the Share as a Treasury Share.

3.6 Treasury Shares may be disposed of by the Company on such terms and conditions (not otherwise inconsistent with the Memorandum and Articles) as the Company may by Resolution of Directors determine.

3.7 Where Shares are held by another body corporate of which the Company holds, directly or indirectly, shares having more than 50 per cent of the votes in the election of directors of the other body corporate, all rights and obligations attaching to the Shares held by the other body corporate are suspended and shall not be exercised by the other body corporate.

4. MORTGAGES AND CHARGES OF SHARES

4.1 Shareholders may mortgage or charge their Shares.

4.2 There shall be entered in the register of members at the written request of the Shareholder:

(a) a statement that the Shares held by him are mortgaged or charged;

(b) the name of the mortgagee or chargee; and

(c) the date on which the particulars specified in subparagraphs (a) and (b) are entered in the register of members.

4.3 Where particulars of a mortgage or charge are entered in the register of members, such particulars may be cancelled:

(a) with the written consent of the named mortgagee or chargee or anyone authorised to act on his behalf; or

(b) upon evidence satisfactory to the directors of the discharge of the liability secured by the mortgage or charge and the issue of such indemnities as the directors shall consider necessary or desirable.

4.4 Whilst particulars of a mortgage or charge over Shares are entered in the register of members pursuant to this Regulation:

(a) no transfer of any Share the subject of those particulars shall be effected;

(b) the Company may not purchase, redeem or otherwise acquire any such Share; and

(c) no replacement certificate shall be issued in respect of such Shares,

without the written consent of the named mortgagee or chargee.

3

BVI M2602x00G

SEC-IB-E-0220333

EXHIBIT 153

Intertrade Pacific S.A.

Director – David Amaryan

↓

100% (full owner)

↓

Copperstone Capital (Cayman Islands)

Director – David Amaryan

↓

Representative Office, Moscow

Head of the Representative Office – Vardan Amaryan

SEC-IB-E-0224134

EXHIBIT 154

REGISTER OF MEMBERS OF:

**Copperstone Capital**

SHARE CLASS: **Ordinary Shares**

DATE: May 12, 2011

| Name & Address | Cert # | Date of Entry | Shares Acquired | Shares Disposed | Date of Cessation | Amount paid or agreed to be paid | Nature of Acquisition | Transfer Details |
|---|---|---|---|---|---|---|---|---|
| Tamil Limited<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands<br>*Total shares held: 0.00 shares* | - | 24-Mar-2010 | 100.00 | 100.00 | 24-Mar-2010 | USD 100.00 | Original Issue | 100 shares tfr'd to Intertrade Pacific S.A. |
| Intertrade Pacific S.A.<br>Geneva Place, Waterfront Drive<br>PO Box 3469, Roar Town<br>Tortola, BVI<br>*Total shares held: 100.00 shares* | 1 | 24-Mar-2010 | 100.00 | | | USD 100.00 | 100 shares tfr'd from Tamil Limited | |

REGISTER OF DIRECTORS & OFFICERS OF:  Copperstone Capital

DATE: May 12, 2011

| Name & Address | Office Held | Date of Appointment | Date of Resignation |
|---|---|---|---|
| **G.P. Limited**<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands | Director | 24-Mar-2010 | 24-Mar-2010 |
| **Cayman Directors Limited**<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands | Director | 24-Mar-2010 | |
| **David Amaryan**<br>Bolshaya Akademicheskaya Street 15<br>Building 1, Apartment 255<br>Moscow 125130<br>Russia | Director | 24-Mar-2010 | |
| **Cayman Management Services Ltd.**<br>Harbour Centre, Ground Floor<br>42 North Church Street<br>PO Box 1569<br>Grand Cayman KY1-1110<br>Cayman Islands | Secretary | 24-Mar-2010 | |

# COPPERSTONE CAPITAL

To: Bank of America Merrill Lynch

I, David Amaryan, being a sole Director of the company "Copperstone Capital", hereby declare that the following documentation provided to BoAML earlier by Maria Lopatina is correct as of today's date:

Certificate of Incumbency for Copperstone Capital

Certificate of Incumbency for Intertrade Pacific S.A.

CC's Register of Directors and Members

ID of David Amaryan

Dated this: 20th day of September, 2013

Director

David Amaryan

### *N O T A R I Z A T I O N*

I, **Lewis S. Hunte**, **Notary Public** in Road Town, Tortola, British Virgin Islands do hereby certify that the signature which appears on the foregoing document is the true and correct signature of **Nicola Jane Metcalf**, acting in the capacity of **Authorized Signatory** of Jordans (Caribbean) Limited.

Dated: 21ˢᵗ March 2012



POLYDAMUS SWALLOWTAIL
*Battus Polydamus*
British **25ᶜ**
Virgin Islands

Lewis S. Hunte
Notary Public

### *A P O S T I L L E*

### **(Convention de la Haye du 5 Octobre 1961)**

1.  Country:  **Tortola, British Virgin Islands**

    This public document

2.  has been signed by:      **Lewis S. Hunte**

3.  acting in the capacity of: **Notary Public**

4.  bears the seal/stamp of:  **Lewis S. Hunte**

### *C E R T I F I E D*

5.  at Road Town, Tortola

6.  the 21ˢᵗ day of March, 2012

7.  by:    "REGISTRAR-GENERAL"

8.  No ........R.G...0.4356

9.  Seal/stamp:



10. Signature ..........................................................



# JORDANS
### INTERNATIONAL

## *CERTIFICATE OF INCUMBENCY*

| | |
|---|---|
| **NAME OF COMPANY:** | INTERTRADE PACIFIC S.A. |
| **INCORPORATION DATE:** | 8 October 2009 |
| **COMPANY REGISTRATION NUMBER:** | 1550899 |
| **AUTHORIZED NUMBER OF SHARES:** | A maximum of 50,000 shares of no par value |
| **REGISTERED ADDRESS:** | PO Box 3469, Geneva Place, Waterfront Drive, Road Town, Tortola, British Virgin Islands |

| Names | Addresses | Titles | No. of Shares | Certificate Number | Dates of Appointment |
|---|---|---|---|---|---|
| Mr. David Amaryan | Flat 49, bld. 1, Moscow, Andreevskaya nab. | Director | | | 8 October 2009 |
| Mr. David Amaryan | Flat 49, bld. 1, Moscow, Andreevskaya nab. | Shareholder | 50000 | 1 | 8 October 2009 |

We, **JORDANS (CARIBBEAN) LIMITED** of Geneva Place, Waterfront Drive, P.O. Box 3469, Road Town, Tortola, in the British Virgin Islands as Registered Agent of **INTERTRADE PACIFIC S.A.**, a BVI Business Company organized and existing under the laws of the British Virgin Islands (the "Company"), **DO HEREBY CERTIFY** that, to the best of our knowledge and belief, the above information is correct and **the Company is in good legal standing until 7 October 2012.**

Dated: 20 March 2012



_____
Nicola Jane Metcalf
**Authorized Signatory**
**JORDANS (CARIBBEAN) LIMITED**
**Registered Agent**

www.jordans-international.com

**Jordans (Caribbean) Limited**   Geneva Place   Waterfront Drive   PO Box 3469   Road Town   Tortola   British Virgin Islands
**T** +1 284 494 6643   **F** +1 284 494 6615   **E** info@jordans-bvi.com                1
Registered in British Virgin Islands No. 1448724   Registered Office: Craigmuir Chambers   Road Town   Tortola   British Virgin Islands

[B.CER03(06)]

# COPPERSTONE CAPITAL

To: Bank of America Merrill Lynch

I, David Amaryan, being a sole Director of the company "Copperstone Capital", hereby declare that the following documentation provided to BoAML earlier by Maria Lopatina is correct as of today's date:

Certificate of Incumbency for Copperstone Capital

Certificate of Incumbency for Intertrade Pacific S.A.

CC's Register of Directors and Members

ID of David Amaryan

Dated this: 20th day of September, 2013

Director

David Amaryan

EXHIBIT 155

**Bank of America**
**Merrill Lynch** 🦅

Online at: **www.mymerrill.com**

Account Number: ███████ X05

COPPERSTONE ALPHA FUND
GRAUND FLOOR HARBOUR CENTRE
PO BOX 1569
GRAND CAYMAN KY1-1110
CAYMAN ISLANDS

24-Hour Assistance: **(800) MERRILL**
Access Code: 45-556-02905

**Net Portfolio Value:** **$0.00**

Your Financial Advisor:

**Introduced by:** MERRILL LYNCH INTERNATIONAL LONDON
**Account Carried by:** MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED

## ▉ INDIVIDUAL INVESTOR ACCOUNT

February 28, 2015 - March 31, 2015

| ASSETS | March 31 | February 27 |
|---|---|---|
| Cash/Money Accounts | · | · |
| Fixed Income | · | · |
| Equities | · | · |
| Mutual Funds | · | · |
| Options | · | · |
| Other | · | · |
| Subtotal (Long Portfolio) | · | · |
| **TOTAL ASSETS** | · | |
| LIABILITIES | | |
| Debit Balance | · | · |
| Short Market Value | · | · |
| **TOTAL LIABILITIES** | · | · |
| **NET PORTFOLIO VALUE** | · | · |

| CASH FLOW | This Statement | Year to Date |
|---|---|---|
| **Opening Cash/Money Accounts** | · | |
| **CREDITS** | | |
| Funds Received | · | · |
| Electronic Transfers | · | · |
| Other Credits | · | · |
| Subtotal | · | · |
| **DEBITS** | | |
| Electronic Transfers | · | (226,677.33) |
| Margin Interest Charged | · | · |
| Other Debits | · | · |
| Visa Purchases (debits) | · | · |
| ATM/Cash Advances | · | · |
| Checks Written/Bill Payment | · | · |
| Subtotal | · | (226,677.33) |
| **Net Cash Flow** | · | (\$226,677.33) |
| Dividends/Interest Income | · | · |
| Security Purchases/Debits | (8,907,949.87) | (117,649,949.10) |
| Security Sales/Credits | 8,907,949.87 | 117,876,626.43 |
| **Closing Cash/Money Accounts** | | |
| Securities You Transferred In/Out | · | · |

*Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S) is a registered broker-dealer, Member Securities Investor Protection Corporation (SIPC) and a wholly owned subsidiary of Bank of America Corporation. Investment products:* [ Are Not FDIC Insured ] [ Are Not Bank Guaranteed ] [ May Lose Value ]

5000

025

+

COPPERSTONE ALPHA FUND

Account Number ▮▮▮-02X05

## YOUR INDIVIDUAL INVESTOR ACCOUNT TRANSACTIONS

### SECURITY TRANSACTIONS

| Settlement Date | Description | Transaction Type | Quantity | Unit Price | Debit | Credit | Accrued Interest Earned/(Paid) |
|---|---|---|---|---|---|---|---|
| 03/02 | DYNEGY INC NEW DEL CUS NO 26817R108 | Purchase | 35,000 | 29.5001 | 1,032,766.00 | | |
| 03/03 | AUTODESK INC DEL PVS0.01 CUS NO 052769106 | Purchase | 17,000 | 61.0406 | 1,037,817.70 | | |
| 03/06 | VEEVA SYS INC CL A CUS NO 92247S108 | Purchase | 32,000 | 32.4774 | 1,039,516.80 | | |
| 03/16 | INTERCEPT PHARMACEUTICAL INC CUS NO 45845P108 | Purchase | 4,000 | 287.9350 | 1,151,770.00 | | |
| 03/19 | TRINITY INDUS INC DEL CUS NO 896522109 | Purchase | 14,800 | 33.7433 | 499,511.84 | | |
| 03/23 | MECHEL OAO ADR CUS NO 583840103 | Purchase | 400,000 | 1.2678 | 510,120.00 | | |
| 03/24 | KB HOME CUS NO 48666K109 | Purchase | 15,000 | 14.1095 | 211,755.00 | | |
| | *Subtotal (Purchases)* | | | | 5,483,257.34 | | |
| 03/04 | AUTODESK INC DEL PVS0.01 CUS NO 052769106 | Sale | -17,000 | 64.2705 | | 1,092,450.90 | |
| 03/09 | VEEVA SYS INC CL A CUS NO 92247S108 | Sale | -16,000 | 25.4746 | | 407,466.10 | |
| 03/19 | YANDEX N V CL A CUS NO 97284108 | Sale | -31,000 | 14.0576 | | 435,545.08 | |
| 03/31 | GAMESTOP CORP NEW CL A CUS NO 36467W109 | Sale | -38,440 | 38.7499 | | 1,489,230.45 | |
| | *Subtotal (Sales)* | | | | | 3,424,692.53 | |
| 03/02 | DYNEGY INC NEW DEL | Delivered | -35,000 | | | 1,032,766.00 | |
| 03/03 | AUTODESK INC DEL PVS0.01 | Delivered | -17,000 | | | 1,037,817.70 | |
| 03/04 | AUTODESK INC DEL PVS0.01 | Received | 17,000 | | 1,092,450.90 | | |
| 03/06 | VEEVA SYS INC CL A | Delivered | -32,000 | | | 1,039,516.80 | |
| 03/09 | VEEVA SYS INC CL A | Received | 16,000 | | 407,466.10 | | |
| 03/16 | INTERCEPT PHARMACEUTICAL INC | Delivered | -4,000 | | | 1,151,770.00 | |

5000

025



## Bank of America
## Merrill Lynch

COPPERSTONE ALPHA FUND

Account Number: ▮▮▮2X05

February 28, 2015 - March 31, 2015

# YOUR INDIVIDUAL INVESTOR ACCOUNT TRANSACTIONS

## SECURITY TRANSACTIONS (continued)

| Settlement Date | Description | Transaction Type | Quantity | Unit Price | Debit | Credit | Accrued Interest Earned/(Paid) |
|---|---|---|---|---|---|---|---|
| 03/19 | TRINITY INDUS INC   DEL | Delivered | -14,800 | | | 499,511.84 | |
| 03/19 | YANDEX N V CL A | Received | 31,000 | | 435,545.08 | | |
| 03/23 | MECHEL OAO ADR | Delivered | -400,000 | | | 510,120.00 | |
| 03/24 | KB HOME | Delivered | -15,000 | | 1,489,230.45 | 211,755.00 | |
| 03/31 | GAMESTOP CORP NEW  CL A | Received | 38,440 | | | | |
| | Subtotal (Other Security Transactions) | | | | 3,424,692.53 | 5,483,257.34 | |
| | **TOTAL** | | | | **8,907,949.87** | **8,907,949.87** | |

5000

025

3 of 5

This page intentionally left blank

**Bank of America**
**Merrill Lynch**

## Customer Service

Please promptly report any inaccuracy, discrepancy, error or concern to your Merrill Lynch Wealth Management Client Associate or call 1.800 MERRILL within ten (10) business days after delivery of or communication within ten (10) business days statement. You should reconfirm any oral communications in writing to protect your rights.

## About Us

You may review our financial statement at our offices: Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), One Bryant Park, New York, New York 10036. If you request a copy of our financial statement, we will mail it to you.

We are associated with a NYSE Designated Market Maker (DMM) that may make a market in the securities you hold or buy or sell through us. At any time, the DMM may have a "long" or "short" inventory position in such security(ies) and may be on the opposite side of transactions in the security(ies) executed on the floor of the NYSE. We also act as a market maker, dealer, block positioner or arbitrageur in certain securities. These activities may put us or one of our affiliates on the opposite side of transactions you execute for you or your affiliates, and potentially result in trading profits for us or our affiliates.

BofA Merrill Lynch Research is research produced by one or more of its affiliates. Third party research is also available to you. Third party research is provided, if available, for your information. MLPF&S are providing these research ratings is not a solicitation or recommendation of any particular security. MLPF&S and its affiliates are not responsible for any third party research, and have no liability for such research. You are responsible for any trading decision you make based upon third party research ratings and reports.

MLPF&S may make available to you certain securities and other investment products that are sponsored, managed, distributed or provided by companies that are affiliates of Bank of America Corporation (BAC) or in which BAC has a substantial economic interest, including BofA™ Global Capital Management.

Merrill Edge is the marketing name for two businesses: Merrill Edge Advisory Center™ which offers team-based advice and guidance brokerage services; and a self-directed online investing platform. Both are made available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S).

Bank of America Merrill Lynch is the marketing name for the global banking and global markets businesses of BAC. Lending, derivatives, and other commercial banking activities are performed globally by banking affiliates of Bank of America, N.A., member Federal Deposit Insurance Corporation (FDIC). Securities, strategic advisory, and other investment banking activities are performed globally

by investment banking affiliates of BAC ("Investment Banking Affiliates"), including, in the United States, MLPF&S, and Merrill Lynch Professional Clearing Corp., all of which are registered broker dealers and members of Financial Industry Regulatory Authority (FINRA), and in other jurisdictions, locally registered entities.

Investment products offered by Investment Banking Affiliates including MLPF&S: ARE NOT FDIC INSURED, ARE NOT BANK GUARANTEED AND MAY LOSE VALUE.

## Additional Information

We will route your equity and option orders to market centers consistent with our duty of best execution. Except for certain custodial accounts, we hold bonds and preferred stocks in bulk segregation. If there is a partial call for those securities, securities will be randomly selected from those held in bulk, in the probability of your holdings being selected is proportional to the total number of customer holdings of that particular security that we hold.

This statement serves as a confirmation of certain transactions during the period permitted to be reported periodically. Additional information is available upon written request.

In accordance with applicable law, rules and regulations, your free credit balance is not segregated and we can use these funds in our business. Your free credit balance is the amount of funds payable upon your demand, which is generally, but not in the normal course of business, any free credit in the any fully paid securities to which you are entitled, subject to any obligations you owe in any of your accounts.

For clients enrolled in a sweep program, the balance in any bank deposit account or any money market mutual fund in which you have a beneficial interest can be withdrawn or liquidated on your order and the proceeds returned to your securities account or remitted to you.

You will have the right to vote full shares and we may solicit voting instructions in your account. When your account will be governed by the then current rules and policies of FINRA and the Securities Exchange Commission or other applicable exchanges or regulatory bodies.

All transactions are subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its interpretations of the exchange or market, and its clearinghouse, if any, where the transactions are executed, and if not executed on any exchange, FINRA. You may obtain an investor brochure that includes information describing the FINRA Regulation Public Disclosure Program ("Program"). To obtain information about the Program or your broker or more information about the Program or your broker

contact the FINRA Regulation Public Disclosure Program Hotline at (800) 289-9999 or access the FINRA website at www.finra.org.

We receive a fee from ISA® banks of up to 2% per annum of the average daily balances. We receive a fee from our affiliated banks of up to $100 per annum for each account that sweeps balances to the banks under the RASP and Merrill Lynch Bank Deposit Program.

Investment products offered by Investment Banking Affiliates, including MLPF&S: ARE NOT FDIC INSURED, ARE NOT BANK GUARANTEED AND MAY LOSE VALUE.

Preferred Deposit® and Preferred Deposit for Business balances.

## Options Customers

For all customers, including those who own options, please invariably advise us of any material change in your investment objective or financial condition. Individual options commission charges have been included in your confirmation. You may request a summary of this information.

## Margin Customers

If this statement is for a margin account, it is a combined statement of your margin account and special memorandum account. The maintained for you pursuant to applicable regulations. The annual rate of interest on separate account, as required by Regulation T, is available for your inspection upon request. You should retain this statement for use with your next statement to calculate interest charges, if any, for the period covered by this statement. If there is any interest charge due during the statement period, except that interest due on the final day of the statement period will be carried over and appear on your next statement.

## Coverage for your Account

The Securities Investor Protection Corporation (SIPC) and full excess-SIPC insurance policy do not cover commodities futures contracts, index options, fixed annuities, hedge funds, private equity funds, commodity contracts, certain other investment contracts (such as limited partnerships) that are not registered with the US Securities Exchange Commission, precious metals, other assets that are not securities, as defined by SIPC, and assets that are not held at MLPF&S, such as cash on NFA, Merrill Lynch, Pierce, Fenner & Smith, or America California, N.A. (Merrill), any affiliated banks or other depository institutions. Those bank deposits are protected by the FDIC up to applicable limits. MLPF&S is not a bank. Unless otherwise disclosed, INVESTMENTS THROUGH MLPF&S ARE NOT FDIC INSURED, ARE NOT BANK GUARANTEED AND MAY LOSE VALUE. For more information about SIPC, including the SIPC Brochure, contact SIPC at http://www.sipc.org or (202) 371-8300.

025

5000

## Fixed Income Securities

Values on your statement generally are based on estimates obtained from various sources. Pricing values assume standard market conditions, are not firm bids or offers and may vary from prices achieved in actual transactions, especially for thinly traded securities. These values are generally for transactions of $1 million or more, which often reflect more favorable pricing than transactions in smaller amounts. You may pay more than transactions if you purchase smaller amounts of securities, or receive less if you sell smaller amounts of securities.

### Prices and Valuations

While we believe our pricing information to be reliable, we cannot guarantee its accuracy. Pricing information provided for certain thinly traded securities may be stale.

Investments such as direct participation program securities (e.g., partnerships, limited liability companies, and real estate trusts which are not listed on any exchange), and alternative investments (e.g. commodity pools, private equity funds, private debit funds, and hedge funds) are generally illiquid investments. No formal trading market exists for these securities and their current values will likely be different from the purchase price. Unless otherwise indicated, and except for certain alternative investment funds sponsored by affiliates of MLPF&S, the value shown on this statement for an investment in these securities has been provided by the management, administrator or sponsor of each program or a third-party vendor, in each case without independent verification by MLPF&S. This value represents their estimate of the value of the investor's interest in the net assets of the program, as of a date no more than 18 months from the date of this statement. Therefore, the values shown may not reflect actual market value or be realized upon a sale. If an estimated value is not provided, accurate valuation information is not available.

### Cost Data/Realized Capital Gains & Losses

Cost Data and Realized Capital Gains/Losses are provided in this statement for informational purposes only. Please review for accuracy, Merrill Lynch is not responsible for omitted or restated data. Please consult your tax advisor to determine the tax consequences of your securities transactions. Your statement is not an official accounting of gains/losses. Please refer to your records, trade confirmations, and

your Consolidated Tax Reporting Statement (Form 1099).

### Insurance Policies and Annuity Contracts

Information is based on data from the issuing insurer. We are not responsible for the calculation of policy/contract values. Insurance policies and annuity contracts are generally not held in your MLPF&S account. If we, as custodian or trustee, hold an annuity contract that is a security, SIPC and excess-SIPC coverage apply.

### Estimated Annual Income and Current Yield

Estimated Annual Income and Current Yield for certain types of securities could include a return of principal or capital gains in which case the Estimated Annual Income and Current Yield would be overstated. Estimated Annual Income and Current Yield are estimates and the actual income and yield might be lower or higher than the estimated amounts. Current Yield is based upon Estimated Annual Income and the current price of the security and will fluctuate.

### Symbols and Abbreviations

|  | |
|---|---|
| * | Interest reported to the IRS |
|  | Gross Proceeds reported to the IRS |
| : | Dividends reported to the IRS |
| OCC | Transactions reported to the IRS |
|  | Options Clearing Corporation |
| # | Transaction you requested same day payment. Prior day's dividend retained to offset cost of advancing payment on your behalf |
| N/A | Price, value and/or cost data not available |
| N/C | Not-Calculated |
| N/N | Non-negotiable securities |
| N/O | Securities registered in your name |
| N/O CUST | Non-negotiable securities registered in the name of the custodian |
|  | Indicates that BofA Merrill Lynch Research has upgraded ( ) or downgraded ( ) its fundamental equity opinion on a security. |

EXHIBIT 156



## Customer Master Service - New XRef

Please **click here** to print the request details.
Note that these details will not reflect any changes made since the last save.

## Request Data

| | | | |
|---|---|---|---|
| Priority | HIGH | Priority Date | - |
| Request Contact Name | Kadam, Rahul | Request ID | 2973378 |
| Status | Acc_Complt | Request Type | New XRef |
| Initiator | rkadam3 | Created On | 05 Jul 2011 |
| Owner | - | Last Updated On | 05 Jul 2011 |
| Nominated Approver | tsander4 | Last Updated By | rkadam3 |

## Comments

**Comment**

[rkadam3 Eastern Daylight Time: Tue, 05-Jul-2011 03:37:45] SSI FINS 90756; NTPANY CUSTOMER CLASS TO BE 126; COPY SET-UP FOR 7A3340. BOOK CODE 06DY. Please add Broker Codes YB2B00, YC3RT0, YDTC20 & YDTC30 and create S9 links: Hugo = YUKZS0, YH = YH6DY0, YX = YX6GL0. Once 7A created please add to PIMS Matrix.

[abharat1 Tue, 05-Jul-2011 17:12:45]2:Error Code - ;Error Message - System:WARNING: no SSIs were set-up in NTPA as part of the hook-up,Field Name - ;Field Value -

[abharat1 Tue, 05-Jul-2011 17:12:45]NTPANY Information:NTPANY Hookup Successfully Done.

## Attachments

Title File Name Date

## Party Information

| | | | |
|---|---|---|---|
| Legal Name | CREDIT SUISSE SECURITIES (EUROPE) LIMITED | | |
| GSID | 2 | Parent GSID | 2 |
| Insight CSID | 3740 | LEI | - |
| Domestic Name | - | Alias/Mnemonic | - |
| Counterparty Type | INTERCOMPANY BANK | Investor Type | Legal Entity |
| Party Role | Principal | Party Role Status | - |
| Website Address | - | SWIFT Codes | - |
| Party Tax ID Type | non-US Issued ID | Party Tax ID Applied for | N |
| Party Alternate Identifier Start Date | - | Party Alternate Identifier End Date | - |
| Last Modified User Id | - | Last Modified Date Timestamp | - |
| EMIR Commercial Activity | - | | |

## Party Address

| Primary Trading Address | | Registered Address | |
|---|---|---|---|
| PO Box No | - | PO Box No | - |
| Floor Number | - | Floor Number | - |
| Number and Street | ONE CABOT SQUARE | Number and Street | ONE CABOT SQUARE |
| City | LONDON | City | LONDON |
| County/State/Province | - | County/State/Province | - |
| Country | United Kingdom | Country | United Kingdom |
| Postal/Zip Code | E14 4QJ | Postal/Zip Code | E14 4QJ |
| Telephone Number | -- | Telephone Number | -- |
| Fax Number | -- | Fax Number | -- |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC

CSSU-000001

## Country Information

| | |
|---|---|
| Residence | United Kingdom |
| Incorporation | United Kingdom |
| Jurisdiction of Incorporation | |

## Account Relationship

| | | | |
|---|---|---|---|
| Entity | FBCCREDIT SUISSE SECURITIES (USA) LLC | Transaction Coverage | Prime Services |
| Sub-Category | Equity PB | Salesperson | tsander4 |
| UK Implant Indicator | N | Product Coverage Rep | P00X |
| IBO ID | 0 | | |

## Confirmation

| | | | |
|---|---|---|---|
| Entity | FBCCREDIT SUISSE SECURITIES (USA) LLC | | |
| System | - | Account | - |
| Distribution Method | POST | Contact Name | - |
| Contact Tel. No | - | SWIFT ID | - |
| Client Name/Dept | - | Email Address | - |
| Fax No | - | PO Box | - |
| Telex No | - | Floor Number | - |
| Answerback | - | Number and Street | ONE CABOT SQUARE |
| ETC Fund ID | - | City | LONDON |
| Oasys Acronym ID | - | County/State/Province | - |
| FX Match Code | - | Country | United Kingdom |
| Postal/Zip Code | E14 4QJ | Information | - |
| Duplicate Confirm/Statement Indicator | - | Telex - Country of Settlement | - |
| Telex - Destination | - | Telex - Location | - |

## Account Details

| | | | |
|---|---|---|---|
| Account GSID | 4619934 | Account Type | Normal Customer Account |
| Account Name | CS SEC EUR LTD A/C COPPERSTONE ALPHA FUND | Fund Name | - |
| Short Name | - | Client Money Segregation | - |
| GMI Name | - | Stamp Tax | - |
| Customer Type | - | VAT | - |
| Customer Segment | - | Custody Indicator | - |
| Industry Sector | - | Eurotrade Eligible | No |
| Institution Sector | - | Soft Account | - |
| Head Office Code | - | SBI Counterparty | - |
| FSA Sub Type | Grandfathered | FSA Type | - |
| FC Swiss GAAP | - | Introduction Method | - |
| FC Institutional Type | - | FC Customer Classification | - |
| Ctpy Principal Bus. | INTERCOMPANY BANK | CP Type Classification | - |
| US ClientIDInstitutionType | Pvt Cmpny/Quoted No Rela 3rd Pty | UK ClientIDInstitutionType | UK/EU/FATF/US Regulated |
| Party GSID Linked | 4456997 | Country of Risk | United Kingdom |
| Sanction List | No | Special Purpose Entity | No |
| Swiss Tax Exempt | - | Dependencies | - |
| ReutersCode | - | Standard Charges Group | - |
| Commission Rate | - | Alert Access Code | - |
| NTPA NY | - | Tax Residence | - |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC

CSSU-000002

| Master Feeder Fund | - | PBSB Book Code | - |
|---|---|---|---|
| Re-hypothacation Flag | - | LSE Member Number | - |
| PIMS Code | - | Book Code | - |
| Alert Acronym | - | Charity Code | - |
| Account State | ACTIVE | Department | - |
| Low Level Owner | - | High Level Owner | - |
| Category Code | - | Internal Account Code | - |
| Business Case | - | Trade Book | - |
| Reconciliation | - | Escalation | - |
| Account Country of Citizenship/Incorporation | United Kingdom | State of Incorporation | - |
| Specified Ascot CIF NY Parent Number | - | Ascot CIF NY Customer Segment | - |
| Ascot CIF NY Customer Type | - | Collateral | - |
| Type of Account Tax ID | non-US Issued ID | Account Tax ID Applied For Flag | - |
| Cash Margin Loan | - | Non Cash Margin Loan | - |
| CS ENTITY INDICATOR | - | Hongkong Registration Agreement Number | - |
| AccountNet Code | - | NTPA Requested Code | - |
| Tax Lot Relief Method Code | N/A | Effective date | 05-Jul-2011 |

## Facilitation Accounts

| Account ID | Account Name | System Name | System Code |
|---|---|---|---|
| 4295236 | CS SEC EUR LTD A/C EVENSTAR MASTER FUND SPC FOR AND ON BEHALF OF EVENSTAR MASTER SUB-FUND I SEGREGATED PORTFOLIO | NTPANY | 7A3990 |
| 4295237 | CS SEC EUR LTD A/C HT ASIAN ALPHA AMOEBA FUND | NTPANY | 7A4000 |
| 4295238 | CS SEC EUR LTD A/C Affinium Master Fund Ltd | NTPANY | 7A4010 |
| 4371075 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DMA AND AES WAREHOUSE TRADES | FTSINT | MSXR |
| 4371075 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DMA AND AES WAREHOUSE TRADES | NTPA | YMSXR0 |
| 4408287 | DUMMY ACCOUNT - DMA AES BULKING | NTPA | YXXXX0 |
| 4408287 | DUMMY ACCOUNT - DMA AES BULKING | FTSINT | XXXX |
| 4408287 | DUMMY ACCOUNT - DMA AES BULKING | GOMAN | ECMTRAD |
| 4408287 | DUMMY ACCOUNT - DMA AES BULKING | GOMAN | ECMTRAD2 |
| 4408287 | DUMMY ACCOUNT - DMA AES BULKING | GOMAN | FIXTEST |
| 4415158 | MAP 34 SEGREGATED PORTFOLIO - DONE WITH | NTPANY | 2RYNV0 |
| 4439800 | CREDIT SUISSE SECURITIES optional PRENET electronic trading | FTSINT | OQMH |
| 4439800 | CREDIT SUISSE SECURITIES optional PRENET electronic trading | NTPA | YOQMH0 |
| 4443276 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - NASDAQ OMX Pan-Euro Prenet | FTSINT | OTKG |
| 4443276 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - NASDAQ OMX Pan-Euro Prenet | NTPA | YOTKG0 |
| 4443277 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - BATS Trading Europe Prenet | FTSINT | OTKF |
| 4443277 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - BATS Trading Europe Prenet | NTPA | YOTKF0 |
| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | GOMAN | FIXCASHSA |
| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | GOMAN | FIXSWAPSA |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC

CSSU-000003

| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | GOMAN | FIXTESTBG |
| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | GOMAN | FIXTSTCFD |
| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | GOMAN | FIXTEST2 |
| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | FTSINT | OTTV |
| 4443932 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED A/C FIXTEST2 NO SOR - EX POL CFA | NTPA | YOTTV0 |
| 4471800 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED | GOMAN | PCSL |
| 4471800 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED | NTPA | YPMUF0 |
| 4471800 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED | FTSINT | PMUF |
| 4471800 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED | GOMAN | PBCSSEL |
| 4475552 | PRUDENTIAL INVESTMENT MANAGEMENT, INC. | GLOB1NY | 8829 |
| 4475552 | PRUDENTIAL INVESTMENT MANAGEMENT, INC. | NTPANY | X88290 |
| 4475552 | PRUDENTIAL INVESTMENT MANAGEMENT, INC. | LOANNET | 8829 |
| 4510193 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DELTA ONE X POL ACCOUNT | GOMAN | D1TESTLMT |
| 4510193 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DELTA ONE X POL ACCOUNT | GOMAN | D1TESTMKT |
| 4510193 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DELTA ONE X POL ACCOUNT | GOMAN | D1TESTMOC |
| 4510193 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DELTA ONE X POL ACCOUNT | GOMAN | D1TESTRSK |
| 4510193 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DELTA ONE X POL ACCOUNT | FTSINT | QTGQ |
| 4510193 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED DELTA ONE X POL ACCOUNT | NTPA | YQTGQ0 |
| 4527055 | Surveyor Capital Ltd – US Listed Options | NTPANY | 2VD7V0 |
| 4549639 | CS SEC EUR LTD A/C Arnott 7200 | NTPANY | 7A0FN0 |
| 4553116 | CS SEC EUR LTD A/C Value & Recovery Limited | NTPANY | 7A0HT0 |
| 4553837 | CS SEC EUR LTD A/C ICS Europe (Asia) PB | NTPANY | 7A0HW0 |
| 4582729 | BLOCK A/C - FIXED INCOME | NTPA | YTCYB0 |
| 4582729 | BLOCK A/C - FIXED INCOME | CAMADES | 0427462 |
| 4582729 | BLOCK A/C - FIXED INCOME | GLOSS SCTS | 1A67GB2L |
| 4582729 | BLOCK A/C - FIXED INCOME | SDSFB | BLOCKA1LONGB |
| 4635534 | CSAG Lndn Branch Facilitation Account – HBK Master Fund (BONY) | NTPA | YUUNV0 |
| 4635534 | CSAG Lndn Branch Facilitation Account – HBK Master Fund (BONY) | FTSINT | UUNV |
| 4635551 | CSSE Facilitation Account – HBK Master Fund (BONY) | NTPA | YUUNZ0 |
| 4635551 | CSSE Facilitation Account – HBK Master Fund (BONY) | FTSINT | UUNZ |
| 4643040 | CSAG London Branch Facilitation Acct – Tremblant Partners Master Fund LP (BONY) | FTSINT | UXWP |
| 4643040 | CSAG London Branch Facilitation Acct – Tremblant Partners Master Fund LP (BONY) | NTPA | YUXWP0 |
| 4643044 | CSSE Facilitation Acct – Tremblant Concentrated Master Fund LP (BONY) | FTSINT | UYGB |
| 4643044 | CSSE Facilitation Acct – Tremblant Concentrated Master Fund LP (BONY) | NTPA | YUYGB0 |
| 4643050 | CSSE Facilitation Acct – Tremblant Concentrated Fund LP (BONY) | FTSINT | UXWN |
| 4643050 | CSSE Facilitation Acct – Tremblant Concentrated Fund LP (BONY) | NTPA | YUXWN0 |
| 4643051 | CSSE Facilitation Acct – Tremblant Partners Master Fund LP (BONY) | FTSINT | UXWM |
| 4643051 | CSSE Facilitation Acct – Tremblant Partners Master Fund LP (BONY) | NTPA | YUXWM0 |
| 4643052 | CSAG Lndn Branch Facilitation Account – Tremblant Partners LP (BONY) | NTPA | YUXZU0 |
| 4643052 | CSAG Lndn Branch Facilitation Account – Tremblant Partners LP (BONY) | FTSINT | UXZU |
|  | CSAG London Branch Facilitation Acct – Tremblant Concentrated Fund LP |  |  |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC

CSSU-000004

| 4643057 | (BONY) | FTSINT | UXWT |
| 4643057 | CSAG London Branch Facilitation Acct - Tremblant Concentrated Fund LP (BONY) | NTPA | YUXWT0 |
| 4643058 | CSAG London Branch Facilitation Acct - Tremblant Concentrated Master Fund LP (BONY) | FTSINT | UXWU |
| 4643058 | CSAG London Branch Facilitation Acct - Tremblant Concentrated Master Fund LP (BONY) | NTPA | YUXWU0 |
| 4643328 | CSSE Facilitation Acct - Tremblant Partners LP - BONY | NTPA | YUXZT0 |
| 4643328 | CSSE Facilitation Acct - Tremblant Partners LP - BONY | FTSINT | UXZT |
| 4647563 | CS SEC EUR LTD A/C Eiffel Equity Opportunities | NTPANY | 7AA0Y0 |
| 4675161 | CSSE Facilitation Account - GC Emerging Markets Equity Fund (Master) LP (BONY) | FTSINT | VTQB |
| 4675161 | CSSE Facilitation Account - GC Emerging Markets Equity Fund (Master) LP (BONY) | NTPA | YVTQB0 |
| 4675163 | CSAG Lndn Branch Facilitation Account - GC Emerging Markets Equity Fund (Master) LP (BONY) | FTSINT | VTQD |
| 4675163 | CSAG Lndn Branch Facilitation Account - GC Emerging Markets Equity Fund (Master) LP (BONY) | NTPA | YVTQD0 |
| 4680241 | CSSE Facilitation Acct - OZ Enhanced Master Fund Ltd | NTPA | YXEUY0 |
| 4680241 | CSSE Facilitation Acct - OZ Enhanced Master Fund Ltd | FTSINT | XEUY |
| 4684652 | C S SEC EUR LTD CASH FUNDING OFFSET ACCT | NTPANY | 2NWK10 |
| 4685121 | CSSE Facilitation Account - K2 Moore LP | NTPA | YVZSH0 |
| 4685121 | CSSE Facilitation Account - K2 Moore LP | FTSINT | VZSH |
| 4685197 | CSSE Facilitation Account - Moore Global Fixed Income (Master) Fund | NTPA | YVZSF0 |
| 4685197 | CSSE Facilitation Account - Moore Global Fixed Income (Master) Fund | FTSINT | VZSF |
| 4685199 | CSSE Facilitation Account - RV Moore Ltd | NTPA | YVZSK0 |
| 4685199 | CSSE Facilitation Account - RV Moore Ltd | FTSINT | VZSK |
| 4685201 | CSSE Facilitation Account - WM Moore LP | NTPA | YVZSD0 |
| 4685201 | CSSE Facilitation Account - WM Moore LP | FTSINT | VZSD |
| 4685202 | CSSE Facilitation Account - Moore Macro LP | NTPA | YVZSM0 |
| 4685202 | CSSE Facilitation Account - Moore Macro LP | FTSINT | VZSM |
| 4685203 | CSSE Facilitation Account - PFMC Ltd | NTPA | YVZSC0 |
| 4685203 | CSSE Facilitation Account - PFMC Ltd | FTSINT | VZSC |
| 4685316 | CSSE Facilitation Acct - Citadel Global Equities Master Fund Ltd | NTPA | YVZSU0 |
| 4685316 | CSSE Facilitation Acct - Citadel Global Equities Master Fund Ltd | FTSINT | VZSU |
| 4685317 | CSSE Facilitation Acct - Citadel Securities LLC | NTPA | YVZST0 |
| 4685317 | CSSE Facilitation Acct - Citadel Securities LLC | FTSINT | VZST |
| 4701477 | TRANSITION MGMT UK FACILITATION | ACIFLON | 103138 |
| 4701477 | TRANSITION MGMT UK FACILITATION | FXOPs | BF1154 |
| 4701477 | TRANSITION MGMT UK FACILITATION | WSSGFX | BF1154 |
| 4702564 | Portman Square as CSEL A/C Managed Account | GOMAN | PSCCSDMA |
| 4702564 | Portman Square as CSEL A/C Managed Account | FTSINT | WKUV |
| 4702564 | Portman Square as CSEL A/C Managed Account | NTPA | YWKUV0 |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPol | GOMAN | SMGLCFAMZ |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPol | GOMAN | SMGLCFASA |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPol | GOMAN | SMGLCFASE |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPol | GOMAN | SMGLCFASF |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPol | GOMAN | SMGLCFAWK |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC                                    CSSU-000005

| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPoI | FTSINT | WQQP |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPoI | NTPA | YWQQP0 |
| 4711489 | Credit Suisse GAT London Trading Desk A/C AES XPoI | GOMAN | SMGLCFBSR |
| 4711941 | CSSEL Facilitation Acct - OZ GC Opportunities Master Fund Ltd | NTPA | YWRBM0 |
| 4711941 | CSSEL Facilitation Acct - OZ GC Opportunities Master Fund Ltd | FTSINT | WRBM |
| 4720606 | CREDIT SUISSE SECURITIES EUROPE LIMITED AC CREDIT SUISSE EUROPE LTD MW LYXOR | FXOPs | BF1181 |
| 4720606 | CREDIT SUISSE SECURITIES EUROPE LIMITED AC CREDIT SUISSE EUROPE LTD MW LYXOR | ACIFLON | 105439 |
| 4720606 | CREDIT SUISSE SECURITIES EUROPE LIMITED AC CREDIT SUISSE EUROPE LTD MW LYXOR | WSSGFX | BF1181 |
| 4731000 | CSSE Facilitation Account - AB Moore LP | NTPA | YXBOU0 |
| 4731000 | CSSE Facilitation Account - AB Moore LP | FTSINT | XBOU |
| 4770324 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - ECM DUMMY | FTSINT | XWOJ |
| 4770324 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - ECM DUMMY | NTPA | YXWOJ0 |
| 4770324 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - ECM DUMMY | GOMAN | ECMTRAD2 |
| 4826702 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED CSSMGEU SA XPOL account | GOMAN | CSSMGEU |
| 4826702 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED CSSMGEU SA XPOL account | NTPA | YZGRP0 |
| 4826702 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED CSSMGEU SA XPOL account | FTSINT | ZGRP |
| 4837486 | Surveyor Capital Ltd DONE WITH | NTPANY | 20WG70 |
| 4861571 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - ExPoI TEST Account | GOMAN | MBTEST123 |
| 4861571 | CREDIT SUISSE SECURITIES (EUROPE) LIMITED - ExPoI TEST Account | NTPA | Y0MRF0 |

## NTPANY

| NTPA New York Shortname | CS SEC EL 06DY 7A0WM0 | Requested by Rep. | - |
| Office / Branch | 007,Prime Broker | OFI Indicator | N |
| Prime Banking code | - | Statement | |
| NSCC ID | - | GSCC ID | |
| Customer Class | 126, SEG EUROPE PRIME BROKER | Customer Industry Code | FS,FOREIGN BROKER |
| Reg Type | 01,Customer | FBC Type | 01,INSTITUTION |
| Fed Type | 03,Individual/Misc | NTPA New York Code Requested | - |
| Name of Introducer | - | Investment Objectives | - |
| Name of Investment Advisor or Other having power of attorney | - | Type of Power Attorney | - |
| Authorized Individuals Name | - | Relationship of Authorized Individual to Client | - |
| Is Authorized Individual a Credit Suisse Employee? | | Authorized Individual Credit Suisse Employee Number | - |
| Authorized Individual Name of Employer | | | |

### Account Type / Settlement Type

| NTPA Account Type Code |
| --- |
| 01,MARGIN |
| 02,CASH |

### Customer Restrictions

| Is customer an affiliate or control person of a public company? | | Name of Issuer for the affiliated public company | |
| Does customer hold restricted stock? | - | Name of Issuer of the restricted stock | |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC

CSSU-000006

Is customer subject to NASD
restrictions of new issues                              -

**DOCUMENTATION CONTACT**
Address Source                                          -
Name                                                    -        Phone Number                -

**MBSCC Info**

**References**
References: Current Broker(s)                           -        References: Former Broker(s)  -

## FUTURE OPTIONS
Account Type for Futures                                -
CFTC Number                                             -        Closeout                     -
Does customer intend to take
physical delivery                                       -        Total assets of entity       -1

**Advised Account Details**
Advisor's Name                                          -        Advisor's City               -
Advisor's State                                         -        Person handling the account  -
Advisor's experience and relationship
to customer                                             -        assets managed (in US$)      0
SEC Registered                                          -        CTA Registered               -

**Guarantor Details**
Guarantor of account: Name                              -
Guarantor of account: Address                           -        Guarantor of account: City    -
Guarantor of account: State                             -        Guarantor of account: Country -
Guarantor of account: Zip                               -

**Investment Experience Details**

## INDIVIDUAL
annual income                                           -        liquid net worth             -
net worth (exclusive of residence)                      -        Risk capital for Trading     -
Major Source of Income                                  -        Occupation/ Position         -
Nature of business                                      -        form of business             -
employed since                                          -        Birthdate                    -
marital status                                          -        Number of dependents         0

**Employer Details**
Name of Employer                                        -
Address                                                 -        City                         -
State                                                   -        Country                      -
Zip                                                     -

spouse name                                             -        is spouse or joint participant
                                                                 employed?                    -
Occupation/ Position for spouse                         -        Nature of business for spouse -
form of business for spouse                             -        Spouse Employed Since        -

**Spouse Employer Details**
Name of Employer for spouse                             -
Address                                                 -        City                         -
State                                                   -        Country                      -
Zip                                                     -

## Existing Cross References

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC                              CSSU-000007

Print Request                                                    Page 8 of 8

| System Name | Value | HookedUp |
|---|---|---|
| NTPANY | 7A0WM0 | Y |

### Account Alternate IDs

| System Name | Alternative Id | Parent Flag |
|---|---|---|
| NTPANY | 7A0WM0 | - |
| ALERTACC | 06DY | - |
| ALERTID | CS SEC EL | - |
| USTAXID | 999999999 | - |

CONFIDENTIAL TREATMENT REQUESTED BY
CREDIT SUISSE SECURITIES (USA) LLC

CSSU-000008

# EXHIBIT 157

Credit Suisse Securities (Europe) Limited

And

Copperstone Alpha Fund

Master Prime Brokerage Terms

SEC-IB-E-0223700

1. PRIME BROKERAGE

1.1. Services provided by CS

1.1.1. CS may provide the following services:

    (i)   execution of Transactions (in accordance with Part 1 of the CS Terms and Conditions);

    (ii)   clearance and settlement (including the making and receiving of payments of cash and delivery of Assets);

    (iii)  custody of Assets and recording of cash balances ;

    (iv)  customer reporting;

    (v)   securities lending; and

    (vi)  financing,

    each on the terms and conditions set out in these Terms.

1.1.2. CS may vary from time to time the services it will provide to Customer and the charges associated with those services by prior notice in writing (which notices shall form part of these Terms). CS shall give reasonable notice to Customer of any refusal to provide a particular service (to the extent practicable in the circumstances) but shall, in any event, be entitled to refuse to settle a Transaction at any time in its absolute discretion.

1.2. Transactions through Executing Brokers

1.2.1 CS, where it has undertaken in its absolute discretion to do so, will settle Transactions on behalf of Customer executed by Customer with any Executing Broker in accordance with these Terms. For such purpose CS shall establish on its books and records one or more cash accounts and one or more securities accounts (the "Accounts") designated with the name of Customer. Settlement of a Transaction by CS shall be subject to receipt by CS of a Trade Report from Customer, which Customer shall deliver to CS as soon as possible after execution of the Transaction and in any event no later than the close of business in London on the date of execution.

1.2.2 On the Business Day following receipt of the Trade Report by CS, CS shall report the Transaction to Customer based on the information in the Trade Report. However by so reporting, CS does not (expressly or impliedly) agree to settle such Transaction or represent that the details of the Transaction notified to Customer are accurate or correct.

1.2.3 Unless otherwise agreed from time to time, Customer shall make available for transfer from the Accounts, or provide to CS, any securities or cash (as the case may be) to be transferred by or on behalf of Customer to enable CS to settle the relevant Transaction. CS in its absolute discretion may agree to settle any Transaction by transferring cash or Securities on Customer's behalf pursuant to sections 1.3 or 4 respectively (below), provided there is sufficient Margin in the relevant Account.

1.2.4 CS settles any Transaction only as agent for Customer and not as principal. CS has no control over, or responsibility for, the execution of Transactions with any Executing Broker (other than itself). Where a Transaction does not settle on the due date for settlement, CS may in its absolute discretion provisionally credit and debit the Accounts on such settlement date as if the Transaction had in fact settled. This contractual settlement may, however, at any time prior to actual settlement and at the absolute discretion of CS be reversed, and any interest accrued adjusted accordingly.

1.2.5 Subject always to section 1.2.3 above, in the course of effecting settlement and in certain jurisdictions, CS will ensure that Customer's cash Accounts have sufficient cash in local currency to satisfy all settlement and regulatory obligations in that jurisdiction from time to time by executing such Foreign Exchange Transactions with local executing brokers, clearing houses, custodians or exchanges (as the case may be) as CS in its reasonable discretion thinks appropriate. In doing so, CS will act as Customer's agent and shall debit and credit the Customer's cash Accounts to reflect settlement of the Foreign Exchange Transactions. CS will, on request, provide Customer with details of the affected jurisdictions.

1.2.6 Notwithstanding any communication or undertaking which may be made or given from time to time by CS to attempt to resolve settlement of any Transaction, Customer shall be responsible for the ultimate resolution of discrepancies.

1.2.7 CS shall not be responsible or liable for:

    (i)   confirming any Transaction to any Executing Broker;

    (ii)   any acts or omission of any Executing Broker or its employees or agents; or

    (iii)  compliance with any regulatory requirement to report Transactions to an exchange or regulatory body (such action being the responsibility of Customer or Executing Broker) or any other regulatory reporting or notification requirements in respect of any Transaction or any Assets, unless CS is the Executing Broker and has regulatory obligations in that capacity pursuant to any applicable law.

2

SEC-IB-E-0223701

1.2.8    Customer shall to the extent that CS has not directly caused such loss by its negligence, willful default or bad faith reimburse CS on demand, for all costs, liabilities, losses, fees and expenses (including but not limited to those associated with buy-ins and sell-outs and those resulting from an Executing Broker's inability to settle a Transaction) arising out of the orders placed by Customer with an Executing Broker or any action taken or not taken by an Executing Broker with respect to Customer or its Accounts.

1.2.9    CS may decline to affirm and/or settle any Transaction or class of Transaction effected or to be effected by any Executing Broker or a particular Executing Broker or place a limit on the size of Transaction on Customer's behalf and CS shall, as soon as practicable upon so declining or placing a limit and so far as permitted by applicable laws and regulations, notify Customer thereof. In such circumstances, CS shall not be liable to Customer, any Executing Broker or any other third party for any costs, liabilities, damages or expenses incurred by any such person and Customer will settle outstanding Transactions with the Executing Broker directly.

SEC-IB-E-0223702

## EXECUTION PAGE

THESE MASTER PRIME BROKERAGE TERMS are intended to take effect as a Deed even though CS executes them (for itself and on behalf of each Affiliate) under hand.

### SIGNATURES

EXECUTED AS A DEED AND DELIVERED ON THE DATE STATED BELOW BY CUSTOMER:

Full legal name of Customer:    **Copperstone Alpha Fund**

Registered Address:    **Harbour Place, 2nd Floor**
**103 South Church Street**
**PO Box 10364**
**Grand Cayman KY1-1004**
**Cayman Islands**

Signature _____    Signature: _____

Name/Title: _____    Name/Title: _____

Witness Signature _____    Witness Signature _____

Name of Witness _____    Name of Witness _____

Details for Notices:

Address: _____ _16 Sadovnicheskaya Street, bld.1, Moscow, 115035 Russia

Tel No/Fax No:    Tel./Fax: + 7 495 951 14 10
Address for e-mail:    info@copperstone.ru; ml@copperstone.ru or da@copperstone.ru

Process Agent:    Law Debenture - 5th Floor, 100 Wood Street, London EC2V 7EX

By Credit Suisse Securities (Europe) Limited (for itself and on behalf of each Affiliate):

Signature(s): _____    _____

Name(s):    **Lesley Munro**    _____
    **Authorised Signatory**

Date: _____

Details for Notices:    One Cabot Square, London E14 4QJ (Attention of Head of Equity Prime Brokerage). Tel: 020 7888 7335. Fax: 020 7888 3368.

21

SEC-IB-E-0223703

EXHIBIT 158

## SUMMARY EXHIBIT PURSUANT TO FED. R. EVID. 1006
## Account Statements for Copperstone Alpha Account Ending *0WM0

Account Statements for the Copperstone Alpha Fund account ending *0WM0 at Credit Suisse
for the time period January 2012 through July 2015, being voluminous, are available for
examination or copying, or both, at a reasonable time and place, or by order of the court.

EXHIBIT 159

## Summary Exhibit Pursuant to Fed. R. Evid. 1006
## Copperstone Event Profits Cited in Complaint

Total Gross Profit: $1,076,343

| ID | Ticker | Company Name | Event Date | Press Release Submission Time | Press Release Distribution Time | Profit/Loss |
|----|--------|--------------|------------|------------------------------|--------------------------------|-------------|
| 1 | ZUMZ | ZUMIEZ INC | 10/31/2012 | 10/31/12 1:29 PM | 10/31/12 4:00 PM | $138,831 |
| 2 | EW | EDWARDS LIFESCIENCES CORP | 4/23/2013 | 4/23/13 11:39 AM | 4/23/13 4:01 PM | $159,345 |
| 3 | BRCD | BROCADE COMMUNICATIONS SYS INC | 5/1/2013 | 5/1/13 3:29 PM | 5/1/13 4:05 PM | $39,860 |
| 4 | PNRA | PANERA BREAD CO | 7/23/2013 | 7/23/13 10:00 AM | 7/23/13 4:00 PM | $52,726 |
| 5 | VMW | VMWARE INC | 7/23/2013 | 7/23/13 12:09 PM | 7/23/13 4:01 PM | $122,836 |
| 6 | TIBX | T I B C O SOFTWARE INC | 9/19/2013 | 9/19/13 1:47 PM | 9/19/13 4:05 PM | $108,804 |
| 7 | ALGN | ALIGN TECHNOLOGY INC | 10/17/2013 | 10/17/13 1:28 AM | 10/17/13 4:00 PM | $453,941 |

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
------------------------------------------------------------x
```

SECURITIES AND EXCHANGE ) 
COMMISSION, ) Civil Action No.: 15-cv-06076 (MCA-MAH)
 )
               Plaintiff, ) (Document Filed Electronically)
 )
            -against- )
 )
ARKADIY DUBOVOY, et al. )
 )
            Defendants. )
 )

```
------------------------------------------------------------x
```

## SECOND DECLARATION OF GATIS EGLITIS IN SUPPORT OF DEFENDANT EXANTE LTD.'S OPPOSITION TO A PRELIMINARY INJUNCTION

I, Gatis Eglitis, of full age, hereby certify as follows:

1.     I am an Executive Director and co-founder of Exante Ltd. ("Exante"), a defendant in the above-captioned action (the "Action"). I principally am responsible for managing Exante's front office operations, including serving as the director of sales, director of the help desk, and director of the execution desk.

2.     I respectfully submit this declaration based upon my own personal knowledge in further opposition to the motion of the Securities and Exchange Commission ("SEC") seeking a preliminary injunction extending the Court's Amended Temporary Restraining Order Freezing Assets, Granting Other Relief, and Order to Show Cause (the "Order"), ECF No. 13.

3.     The purpose of this declaration is to respond to the SEC's submissions in Reply to Exante's opposition to its motion for a preliminary injunction, particularly to explain that Exante engaged in no proprietary trading, that its accounts were operated as omnibus accounts, that assets in the frozen accounts bear no connection to the alleged insider trading

scheme, and that Exante and its customers would be harmed if the preliminary injunction is granted.

**Exante's Financial Statements Demonstrate That it Did Not Engage in Proprietary Trading in the Frozen Accounts**

4.      Exante's financial statements from 2012 through the present confirm that the assets in the frozen accounts are the assets of Exante's customers and that Exante did not conduct any proprietary trading for its own account.

5.      Exante's year-end financial statements for 2012 through 2014 were audited by "big four" accounting firms PricewaterhouseCoopers ("PwC") and KPMG, both of which consistently delivered clean audit opinions and found no inconsistencies in the financial statements in their examinations, nor any indications that Exante's descriptions of its business as an executing broker were inaccurate.

6.      Exante also is required by its regulator in Malta, the Malta Financial Services Authority ("MFSA"), to submit "Interim COREP Returns," which are periodic reports that contain financial information including Exante's balance sheet and income statement, as well as information about the banks where Exante's customers' funds are held.

7.      Attached hereto as Exhibit 1 is a true and correct copy of Exante's Interim COREP Return for the period January 1, 2015 to June 30, 2015 ("2015 Interim Return"), to which page numbers have been added for the convenience of the Court and counsel.

8.      The 2015 Interim Return was filed by my colleague at Exante, Kristina Arbociute, on August 11, 2015, at or around 12:37 p.m. CEST (6:37 a.m. EST).  Attached hereto as Exhibit 2 is a true and correct copy of an email chain that includes the confirmation email from the MFSA confirming the date and time the 2015 Interim Return was filed.

9. The 2015 Interim Return confirms that Exante did not place trades for its own account and that Exante's frozen accounts contain the assets of Exante's customers.

10. Pages 3 and 9 of the 2015 Interim Return show that Exante did not realize any "Dealing Profit or (Loss)" in the first half of 2015. (Exhibit 1 at 3, 9.) They also show that the only revenue Exante generated in the first half of 2015 was from commissions for executing trades at the direction of its customers. (*See id.*) Similarly, the line item "Financial Instruments – Long Positions" on the Statement of Financial Position on page 11, Item 2.0(c), shows that Exante did not hold any long positions in securities. (*Id.* at 11.)

11. Page 21 of the 2015 Interim Return shows that Exante had 253 clients as of the reporting date under the MFSA's definition of client, which includes only accounts with funds. (*See id.* at 21.) Exante actually had over 400 customers as of June 30, 2015, including customers that had funds, were anticipated to have funds, or trade using Exante without keeping their funds in Exante's custody.

12. Critically, pages 21-22 of the 2015 Interim Return lists the banks where Exante holds its customers' assets, with total values for the different currencies held with those banks. (*See id.* at 21-22.) The list of banks on pages 21-22 includes Exante's frozen accounts at its United States clearing firms Lek Securities Corporation ("Lek") and R.J. O'Brien ("RJO"). The Lek accounts are listed as "LEK" on page 21, and the RJO accounts are listed as "RJO" on page 22. (*Id.*)

13. As shown in Exhibit 1, Exante's customers' assets in the accounts frozen by the Order are six times that of Exante's own assets.

14. Attached hereto as Exhibit 5 is a true and correct copy of Exante's 2014 Interim COREP Return, to which page numbers have been added for the convenience of the

Court and counsel.  It contains corresponding information to Exhibit 1, but for the period January 1, 2014 to December 31, 2014.

15.     Attached hereto as Exhibit 3 is a true and correct copy of Exante's Annual Report and Financial Statements for the Year Ended December 31, 2014 ("2014 Financial Statements").

16.     Exante's 2014 Financial Statements were audited by KPMG, which delivered a clean audit opinion.  (*See* Exhibit 3, at the two pages following page 26.)  KPMG examined Exante's financial statements in accordance with the International Standards of Auditing, including evaluating evidence about the amounts and disclosures in the financial statements.  (*See id.*)  KPMG's opinion states that the 2014 Financial Statements "give a true and fair view of the financial position of the Company as at 31 December 2014 and of its financial performance and its cash flows for the year then ended in accordance with International Financial Reporting Standards as adopted by the EU."  (*Id.*)  It also provides that KPMG has "nothing to report in respect of the following matters where the [Malta Companies Act, 1995] requires us to report to you," including if "the information given in the Director's Report . . . is not consistent with the financial statements," if "proper accounting records have not been kept by the Company," if "the Company's financial statements are not in agreement with the accounting records," and if "we have not obtained all the information and explanations which, to the best of our knowledge and belief, we require for the purpose of our audit . . . ."  (*Id.*)

17.     The Director's report for the 2014 Financial Statements provides the following description of Exante's "Principal activities":

> The Company was granted a Category 2 investment services license by the [MFSA].  The Company is engaged in the provision of investment services under the Investment Services Act, Cap. 370 of the Laws of Malta <u>and in particular to receive, transmit and execute client orders on behalf of professional clients and</u>

collective investment schemes.  More specifically, the Company provides its
clients with direct access to a broad range of financial instruments and global
markets through its electronic trading platform."

(*Id*. at 1 (emphasis added).)

18.     Note 14 for the 2014 Financial Statements states that Exante's revenues
"are derived from commissions and performance fees on transactions in fixed income, FX,
metals, futures, options, contracts-for-difference, stocks, exchange-traded funds and mutual
funds, which are initiated by clients through the Company's electronic trading platform."  (*Id*. at
23.)  It then lists four categories of revenue for Exante – "Commission income," "Interest
income," "Performance Fees income," and "Other income" (*id*.), none of which relates to
proprietary trading by Exante.

19.     Exante's balance sheet in the 2014 Financial Statements also reflects the
absence of proprietary trading by Exante.  It does not list any securities positions as belonging to
Exante.  (*Id*. at 4-5.)  Note 7 explains that the securities positions that Exante held for its
customers are not included on its balance sheet:

> [C]ertain client assets, including client monies, are held by the Company in a
> fiduciary capacity, and are hence not included in these financial statements.  As at
> the end of the reporting period the Company held total client assets, including
> client monies, in a fiduciary capacity of €65,311,633 (2013: €35,250,772).

(*Id*. at 20.)  Those "client assets" include all stock positions held at Exante's clearing brokers,
including Lek, RJO, and Interactive Brokers.

20.     Pages 4-5 of the 2014 Financial Statements include Exante's balance sheet.
(*Id*. at 4-5.)  The balance sheet's offsetting entries for "Margins and funds Placed on Brokerage
Activities" (among the "Current assets") and "Margins received" (among the "Current
liabilities"), each of which were €32,156,389 at year-end 2014 and €12,214,776 at year-end
2013, reflect exchange-cleared futures and options positions that Exante held for its customers.

(*Id.*)  They do not reflect proprietary assets of Exante.  Rather, as explained in Note 7, while acting "as an agent to a transaction between the trading client and the counterparty" on transactions involving such "derivative financial instruments," Exante "has direct obligations to the counterparties to meet margin calls" resulting from its clients' trades in those instruments.  (*See id.* at 20.)  Thus, the "Margins and funds Placed on Brokerage Activities represent cash placed with counterparties to cover customers' transactions," and "Margins received represent cash deposits from customers with the Company to satisfy margin requirements for trading on exchanges."  (*Id.*)  None of those entries involve proprietary trading positions of Exante.

21.     Attached hereto as Exhibit 4 is a true and correct copy of Exante's Annual Report and Financial Statements for the Year Ended December 31, 2013 ("2013 Financial Statements").

22.     As with its 2014 Financial Statements, Exante's 2013 Financial Statements include a "Directors' report" that discloses Exante's "Principal activities" are "to receive, transmit and execute client orders on behalf of professional clients and collective investment schemes. More specifically, the Company provides its clients with direct access to a broad range of financial instruments and global markets through its electronic trading platform."  (Exhibit 4 at 1.)

23.     Exante's 2013 Financial Statements were audited by PwC, which examined the contents of the financial statements in accordance with International Standards on Auditing.  (*See* Exhibit 4 at 4.)  PwC delivered a clean audit opinion, finding that the financial statements "give a true and fair view of the financial position of [Exante] as at 31 December 2013, and of its financial performance and its cash flows for the year then ended in accordance with IFRSs and adopted by the EU. . . . ."  (*Id.*)  PwC's report also states that it was required to

report under the Maltese Companies Act, 1995, if, in its opinion, the "information given in the directors' report is not consistent with the financial statements," if "[a]dequate accounting records have not been kept," if "[t]he financial statements are not in agreement with the accounting records and returns," and if "[w]e have not received all the information and explanations we require for our audit." (*Id.* at 5.)  PwC stated that "[w]e have nothing to report to you in respect of these responsibilities." (*Id.*)

24.     Note 10 of the 2013 Financial Statements makes clear that Exante executes its customers' trades and does not treat the proceeds of those trades as belonging to Exante.  (*See id.* at 25.)  Note 10 states, in part:

> Client monies are held by the Company as a result of client trades that have not yet been fulfilled.  As a result of these monies held in a fiduciary capacity, they are not included in these financial statements.
>
> Client assets, including client monies, are held by the Company in a fiduciary capacity and are hence not included in these financial statements.  As at the end of the reporting period the Company held total client assets, including client monies, of €28,089,694 (2012: €17,409,440).

(*Id.* at 25.)

25.     Note 14 of the 2013 Financial Statements similarly makes clear that Exante's revenues are derived from commissions on transactions that were "initiated by clients through the Company's electronic trading platform." (*See id.* at 26.)

26.     Due to the erroneous claims that Exante has engaged in proprietary trading, Exante requested that its auditors, KPMG, provide a letter verifying that, in conducting its audit for the year ended December 31, 2014, KPMG did not come across any evidence that Exante engaged in any proprietary trading for its own account.

27.     Attached hereto as Exhibit 6 is a true and correct copy of a letter dated August 23, 2015 from KPMG Partner Noel Mizzi to Exante's Board of Directors, confirming that

KPMG did not identify any evidence that Exante engaged in proprietary trading. Specifically, the letter states:

- "[D]uring the course of the audit of the financial statements for the year ended 31 December 2014, the audit team did not come across any evidence that indicates that Exante did not comply with its licence by dealing for its own account." (Exhibit 6 at 1.)

- "The audited financial statements for the year ended 31 December 2014 reflect the absence of proprietary trading in that these show that Exante had not recognised any trading revenues in 2014." (*Id.*)

- "Exante's statement of financial position (which appears on pages 4 and 5 of the financial statements) also reflects the absence of proprietary trading, in that it does not list any securities positions as belonging to Exante." (*Id.* at 2)

### The Trades at Issue in the Complaint Represent a Tiny Fraction of Exante's Business

28.     At least prior to being named as a defendant in the Action, Exante has enjoyed consistent growth since it opened for business in March 2011. Exante has more than 110 employees and offices in six major cities in five countries: Malta, Singapore, Amsterdam, Riga, Moscow, and Saint Petersburg. (*See also* Declaration of Gatis Eglitis in Support of Defendant Exante Ltd.'s Opposition to a Preliminary Injunction (ECF No. 19-1) ("First Declaration"), Exhibit A (ECF No. 19-2) at 126.)

29.     Compared to its total customer base, the trades at issue in this Action – *i.e.,* those listed in Tables 1b and 1c of the Declaration of Dr. Eugene P. Canjels ("Canjels Declaration") filed with Plaintiff's Reply papers (*see* ECF No. 22-2) – represent just a tiny fraction of all of the trades Exante has executed on behalf of and at the direction of its customers.

30.     I have reviewed Exante's trading records for Exante's customers for the period January 1, 2012 through May 30, 2013, the time period for all of the trades detailed in Tables 1b and 1c of the Canjels Declaration. At this point, Exante has been able to identify just 11 customer accounts that were responsible for the trades identified in Exante's accounts.

31.     The alleged illicit trades in Exante's accounts were directed by, and executed by Exante on behalf of, just 11 of Exante's customers.  Only one of those 11 customers, Memelland Investments Ltd. ("Memelland"), has any assets in the accounts frozen by the Order.

32.     Only two defendants in this Action have any assets in Exante's frozen accounts:  Memelland and Global Hedge Capital Fund ("Global Hedge").  Global Hedge did not direct Exante to execute trades for any of the securities and time periods identified in Tables 1b and 1c to the Canjels Declaration.  Exante has voluntarily frozen Memelland and Global Hedge's accounts, including assets in accounts outside the United States.

33.     Exante keeps detailed records segregating the assets in its clearing brokerage accounts, including the frozen accounts, so that Exante knows at all times which assets in the accounts belong to which of Exante's customers.  When a customer opens an account with Exante, Exante assigns the customer a customer identification number ("Customer ID") which consists of three letters and four numbers.

34.     The full list of the 11 Exante customers who directed the alleged illicit trades is as follows (with Customer ID in parentheses):



-     ████████████ 1218)
-     ████████████ 1223)
-     ██████████████ 1217)
-     ████████████ 1213)
-     Memelland Investments Ltd. (██ 1204)
-     ██████████████ 1214)
-     ██████████ 1228)
-     ████████████ 1228)

- ███████████████ 1205)
- ███████████████ 1214)
- ███████████████ 1213)

35.     In total, since January 1, 2012, Exante has processed 2,589,078 trades at the direction of its customers. Less than 0.5% of those trades were made in the securities identified by the SEC. Over 99.5% of the trades Exante has executed at the direction of its customers since January 1, 2012 concern securities completely unrelated to the SEC's allegations.

### Exante's Frozen Accounts Were Operated as an Omnibus Account by Exante

36.     All of Exante's frozen accounts were operated as omnibus accounts by Exante, including the accounts at Lek that the SEC claims were set up and used as proprietary trading accounts. (*See also* First Declaration ¶¶ 8, 13.)

37.     The SEC apparently does not dispute the fact that Exante's frozen accounts at its U.S. clearing firms R.J. O'Brien ("RJO") and Interactive Brokers were omnibus accounts, as set forth in my First Declaration, the evidence attached thereto, and evidence submitted by the SEC. (*See id.* ¶ 8, Exhibit B (ECF No. 19-3); Declaration of Lynn O'Connor, Exhibit 95 (ECF No. 7-34).)

38.     The SEC does appear to contest, however, that Exante's frozen accounts at Lek Securities Corporation ("Lek") were operated as omnibus accounts. The SEC is correct that there were ministerial errors in the classification of that account, which Exante was in the process of correcting when the Order was issued. However, Exante requested that the Lek accounts be set up as omnibus accounts and believed that all of its accounts were properly classified as an omnibus account during the time periods identified in the Complaint. In any

event, Exante has always operated its Lek accounts as omnibus accounts, has used those accounts solely to execute trades directed by its customers, and has never engaged in proprietary trading using the Lek accounts, just like the frozen accounts at RJO and Interactive Brokers.

39.     When Exante was in the process of opening its accounts with Lek in September 2012, I spoke over the phone with Serge Pustelnik, Managing Director at Lek, concerning Exante's requirements for its Lek accounts, including that the accounts be classified as omnibus accounts.  On September 11, 2012, following a phone call with Mr. Pustelnik, I sent him an email following up on our conversation and the due diligence process, mentioning that, "as agreed," Exante was expecting "[c]ontract details for Omnibus Account and rates."  Attached hereto as Exhibit 7 is a true and correct copy of that September 11, 2012 email correspondence.

40.     Documents executed and submitted by Exante in connection with opening its Lek accounts identified Exante's business as brokerage and investment services, not proprietary trading.  When opening its Lek accounts, Exante submitted copies of its Professional Subscriber Agreements with the New York Stock Exchange ("NYSE") and Options Price Reporting Authority ("OPRA").  Those agreements permit Exante, among other things, to receive and use data concerning the last sale prices for securities, bonds, and options on various United States exchanges.  True and correct copies of Exante's Agreement for Receipt of Consolidated Network A Data and NYSE Market Data ("NYSE Subscriber Agreement") and its OPRA Professional Subscriber Agreement are attached hereto as Exhibits 9 and 10, respectively. Exante's NYSE Subscriber Agreement specifies that the type of Exante's business is "Brokerage."  (Exhibit 9 at 2.)  Exante's OPRA Professional Subscriber Agreement specifies that the "business to be conducted by" Exante is "Investment Services."  (Exhibit 10 at 1.)

41.     When Exante was opening its Lek accounts, Lek sent Exante certain documents that Exante was directed to execute.  Attached hereto as Exhibit 11 is a true and complete copy of email correspondence between Lek and Exante on September 19 and 20, 2012, to which page numbers have been added for the convenience of the Court and counsel.  On September 19, 2012, Svetlana Pershinova sent an email to my colleague at Exante, Kristina Arbociute, stating that Ms. Pershinova had "received a message from [Lek's] compliance department that according with the new regulations all clients need to fill the standard document package and not just the agreements that I provided."  (Exhibit 11 at 1.)  Attached to Ms. Pershinova's email were thirteen Lek forms for Exante to execute.  (*See id.*)

42.     One of the documents attached to Ms. Pershinova's email was a form for a "Corporate Resolution" (*id.* at 48-50), which Exante's Directors executed and returned to Lek at Lek's direction.  That corporate resolution, which indicated that Exante would "establish and maintain one or more accounts . . . with [Lek] . . . for the purpose of investing in, or otherwise acquiring, selling (including SHORT SALES), possessing, or turning to account of, or realizing upon and generally dealing in and with any and all forms of securities" was attached to the Second Declaration of Lynn O'Connor as purported evidence that Exante's account at Lek was used for proprietary trading.  (*See* Second Declaration of Lynn O'Connor (ECF. No. 22-1) ¶ 9, Exhibit 145.)

43.     Notwithstanding the execution of that Corporate Resolution at Lek's request, or any other documents reflecting Lek's mistaken classification of Exante's accounts as "principal" accounts, Exante always operated its Lek accounts as omnibus accounts and never engaged in proprietary trading through those accounts.  Exante's use of the Lek accounts was consistent with the properly-classified omnibus accounts at RJO and Interactive Brokers, and

consistent with its Category 2 license from the MFSA, which authorizes Exante to "provide any Investment Service, and to hold or control Clients' Money or Customers' Assets, but not to deal for their own account or underwrite."  (*See* First Declaration, Exhibit F (ECF No. 19-7).)

44.    Exante learned earlier this year that its accounts with Lek were not properly documented as omnibus accounts, notwithstanding Exante's intent to open them as omnibus accounts and consistent use of them as omnibus accounts.  Exante and Lek were actively engaged in trying to correct that ministerial error when the Order freezing Exante's account at Lek was entered.

### Exante's Account Statements Demonstrate That All Assets in the Frozen Accounts Were Held on Behalf of Exante's Customers

45.    The account statements for Exante's customers confirm that the assets in the frozen account are the property of Exante's customers, not Exante.

46.    Exante's customer account statements list at the top the customer's full name (Client Name), Customer ID (Account), and date of the statement (Reporting date).  The account statements then list the entirety of the customer's positions with Exante, regardless of which of Exante's clearing accounts (including its frozen accounts with Lek and/or RJO) hold those positions.

47.    The Exante account statements confirm, when read in conjunction with Exante's Lek account statement (First Declaration, Exhibit H (ECF No. 19-9)) and RJO account statement (First Declaration, Exhibit I (ECF No. 19-10)), that Exante's frozen accounts contain only assets of Exante's customers.  Exante has 102 customers whose assets are held in the frozen Lek and RJO accounts.  Comparing all of those 102 customers' account statements as of July 31, 2015 with the Lek and RJO account statements as of July 31, 2015 would confirm that every

asset in the Lek and RJO accounts was held by Exante for the benefit of one of Exante's customers.

48.     Attached hereto as Exhibit 12 is a true and correct copy of all of the Exante account statements for those 102 customers as of July 31, 2015, to which page numbers have been added for the convenience of the Court and counsel.

49.     Pages 1-36 of Exhibit 12 are the account statements for Exante's nine customers whose assets are held in Exante's frozen accounts at both Lek and RJO.  Pages 37-165 are the account statements for Exante's 80 customers – including defendants Memelland and Global Hedge – whose assets are frozen in Exante's accounts at Lek (but not RJO).  Finally, Pages 166-234 are the account statements for Exante's 13 customers whose assets are held in Exante's frozen accounts at RJO (but not Lek).

50.     While this Declaration will not walk through each of the July 31, 2015 account statements for the 102 customers whose assets are currently frozen in the Lek and RJO accounts to demonstrate that all of the assets in those accounts belong to Exante's customers, Exante is willing to engage in that exercise if it would please the Court.

51.     As an example, Memelland's account statement can be found at pages 108-109 of Exhibit 12.  The total value of Memelland's Exante account as of July 31, 2015 was approximately $2,274.33.  (*See id.* at 108.)  Memelland's account statement shows that it held two stock positions with Exante as of July 31, 2015, one of which was 50,000 shares of an instrument with the symbol "MARFB.ATH" (*id.*), which are shares of a bank known as Marfin Popular Bank that were traded on the Athens Stock Exchange.

52.     A comparison with Exante's account statement for the frozen Lek account, which was attached to my First Declaration as Exhibit H (ECF No. 19-9), shows that the Lek

account held 50,000 shares of a security with a listed symbol and International Securities

Identification Number ("ISIN") of "CY0000200119."  (First Declaration, Exhibit H, at 1.)

Searching for "CY0000200119" using the International Securities Identification Numbers

Organization's website, www.isin.org, reports that it is the ISIN for "Marfin Popular Bk Inh."

Attached hereto as Exhibit 13 is a true and correct printout of the search results page for

CY0000200119 from www.isin.org.  Thus, all of the shares for that security held in Exante's Lek

frozen account statement were held for the benefit of Memelland, Exante's customer.

53. Exante has no affiliation with Memelland, other than in its capacity as a

customer of Exante.

54. Attached hereto as Exhibit 14 is a true and correct copy of Memelland's

trading records with Exante for the period January 1, 2012 to May 30, 2013, to which page

numbers have been added for the convenience of the Court and counsel.  That period covers all

of the alleged illicit trades in this Action.  (*See* Canjels Declaration (ECF No. 22-2), Tables 1b-

1c.)

55. As a further example, Global Hedge's account statement can be found at

page 91 of Exhibit 12.  The total value of Global Hedge's account as of July 31, 2015 was

approximately $13,212.78.  (*See id.* at 91.)  Global Hedge's account statement shows that it holds

seven open positions with Exante, including four stock positions.  (*Id.* at 91.)  Three of those four

stock positions are held in Exante's frozen Lek account:  10 shares of "AMZN.NASDAQ"

(Amazon.com Inc.), 80 shares of "BABA.NYSE" (Alibaba Group Holding Ltd.), and negative 60

shares – indicating a short position – of "QQQ.NASDAQ" (NASDAQ's Powershares QQQ Trust

Series I Fund).

56.     The account statement for the frozen Lek account reflects Global Hedge's positions, as well as those of other Exante customers who invested in the same securities. The Lek account statement reflects the following positions as of July 31, 2015: 41 shares of Amazon.com (Exhibit F at 2), 1,256 shares of Alibaba (*id.*), and a short position of 80 shares in the Powershares QQQ Trust Series Fund (*id.* at 9).

### A Preliminary Injunction Will Drive Exante Out of Business

57.     Being named as a defendant in this action and having its assets frozen by the Order has already caused severe harm to Exante.

58.     An executing broker such as Exante cannot stay in business if it cannot allow its customers to access their assets or if its customers fear that their assets will be frozen and potentially seized, even where their trades have absolutely no connection to the allegations in the Complaint.

59.



60.

61.



62.

\* \* \* \* \*

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24 day of August, 2015 in  Moscow                    .

Gatis Eglitis

Robert E. Griffin, Esq.
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
TEL: (212) 756-2000; FAX: (212) 593-5955
*Attorneys for Defendant Exante Ltd.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

-------------------------------------------------------------x

SECURITIES AND EXCHANGE                       )
COMMISSION,                                               )          Civil Action No.: 15-cv-06076 (MCA-
                                                                          )          MAH)
                   Plaintiff,                          )
                                                                          )
                 -against-                          )          **CERTIFICATE OF SERVICE**
                                                                          )
ARKADIY DUBOVOY, et al.,                            )          (Document Filed Electronically)
                                                                          )
              Defendants.                       )
                                                                          )

-------------------------------------------------------------x

       I, ROBERT E. GRIFFIN, ESQ., of full age, do hereby declare as follows:

       1.      On August 24, 2015, I caused a redacted version of the Second Declaration of

Gatis Eglitis in Support of Defendant Exante Ltd.'s Opposition to a Preliminary Injunction, and

this Certificate of Service, to be served via the Court's ECF system on all counsel of record in the

above-captioned matter.

       2.      On August 24, 2015, an unredacted version of the Second Declaration of Gatis

Eglitis in Support of Defendant Exante Ltd.'s Opposition to a Preliminary Injunction was

personally served on counsel for the Securities and Exchange Commission in open Court.

       3.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Respectfully submitted,

Dated: August 24, 2015

SCHULTE ROTH & ZABEL LLP

By: /s/ Robert E. Griffin
    Robert E. Griffin, Esq.
    robert.griffin@srz.com

    919 Third Avenue
    New York, NY 10022
    Telephone: 212.756.2000
    Facsimile: 212.593.5955

*Attorneys for Defendant Exante Ltd.*

# EXHIBIT E

EXHIBIT E
SUMMARY EXHIBIT PURSUANT TO FED. R. EVID. 1006
PROFIT AND TRADING SUMMARY

| ACCOUNT | NUMBER OF EVENTS | DOLLARS TRADED | GROSS PROFIT |
|---|---|---|---|
| EXANTE *1228 | 101 | $219,203,434 | $9,968,202 |
| EXANTE *1228 | 74 | $78,620,465 | $4,631,483 |
| EXANTE *1213 | 78 | $87,888,277 | $3,194,036 |
| EXANTE *1217 | 55 | $77,242,297 | $2,073,726 |
| EXANTE *1204 | 97 | $39,307,941 | $729,412 |