NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff*, v. **EVGENII ZAVODCHIKOV, et al.,** *Defendants*. | Civil Action No. 16-845 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

    **THIS MATTER** comes before the Court upon application by Plaintiff Securities and Exchange Commission ("the Commission") for entry of default judgment against Defendants Evegenii Zavodchiko ("Zavodchiko"), Andrey Bokarev ("Bokarev"), Radion Panko ("Panko"), Natalia Andreevna Alepko ("Alepko"), Anton Maslov ("Maslov," or when referenced together with Zavodchiko, Bokarev, Panko, and Alepko, "Individual Defendants"), Extra Trading Company, Green Road Corporation, and Solar Line Inc. (together with Extra Trading Company and Green Road Corporation "Entity Defendants," or when referenced together with all Entity Defendants and Individual Defendants, "Defendants"), for failure to answer pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 44. For the reasons set forth herein, the motion is **GRANTED**.

    **I.**    **FACTS AND PROCEDURAL HISTORY**

    This action arises from an alleged international fraudulent scheme operated and promoted by Defendants. Defendants perpetrated the scheme in concert with other individuals, who are

1

named as defendants in a related enforcement action, S.E.C. v. Dubovoy, 15-cv-06076 (DNJ) (MCA).  Compl. ¶ 1.

Individual Defendants Zavodchiko, Bokarev, Panko, Alepko, and Maslov are all citizens and residents of Russia.  Id. ¶¶ 14, 16, 17, 19, 21.  Defendant Extra Trading is a corporation formed in the Seychelles.  Id. ¶ 15.  Defendant Green Road Corporation is a corporation formed in Belize.  Id. ¶ 18.  Defendant Solar Line Inc. is a corporation formed in the Commonwealth of the Dominica.  Id. ¶ 20.

The alleged scheme worked as follows.  From 2010 to 2014, two Ukrainian citizens[1] hacked into the computer systems of Marketwired L.P. and PR Newswire Association LLC (collectively "Newswire Services") and stole thousands of press releases that had been uploaded by publicly traded companies.  Id. ¶¶ 1-10, 61-62.  These press releases contained quarterly earnings data and other important financial information.  Id. ¶¶ 61-62, 73-74.

There was a window of time between when the client corporations uploaded the press releases and when Newswire Services published the press releases.  Id. ¶ 76.  During this window, the Hackers gained unauthorized access to the unpublished press releases and shared the information contained therein with Defendants.  Id. ¶¶ 5-6; 77, 102.  Defendants bought and sold stock based on the stolen inside information, which allowed them to collectively realize nearly $19.5 million in illicit profits.  Id. ¶¶ 1, 9, 108; See Declaration of Eugene Canjels, Dec. 4, 2018 ("Canjels Decl."), at ¶¶ 10-13 and Tables 1 and 2A-2D.

The Hackers employed the following techniques to conceal their identities and illegal activities on the internet: (1) use of stolen username/password information of authorized users; (2)

---

[1] Oleksandr Ieremenko and Ivan Turchynov (collectively "Hackers") are defendants in the related enforcement action, SEC v. Dubovoy, 15- cv-06076 (DNJ).

deployment of malicious computer codes that would delete evidence of the computer system breaches; (3) concealment of the identities and locations of the computers used to access the Newswire Services' systems; and (4) use of modules to access the computer servers through a back door. Compl. ¶ 79. Defendants also used deceptive means to conceal their trading by using undisclosed subaccounts and through the creation and use of offshore commercial entities. Id. ¶¶ 7, 108, 110. Defendants agreed to pay the Hackers a flat fee or a percentage of the illicit profits obtained from trading. Id. ¶ 89.

On February 17, 2016, Plaintiff filed a Complaint against Defendants and Tarek Investors.[2] ECF No. 1. That same day, the Court granted Plaintiff's motion for a temporary restraining order, which froze Defendants' assets in certain accounts and prohibited Defendants from destroying, altering, or concealing records. ECF No. 6. The Court subsequently issued a preliminary injunction that granted the same relief. ECF No. 10.

Plaintiff served the five Individual Defendants through alternative means approved by the Court. ECF Nos. 17-18, 20-21. Plaintiff also served the three Entity Defendants in accordance with Rule 4, either by mailing sent by the Clerk's Office or by hand delivery on each Defendant's registered agent.[3] ECF Nos. 27, 29, 33-34, 36, and 37. Defendants have not filed an Answer or other response to the Plaintiff's Complaint. See Declaration of John Donnelly, Dec. 4, 2018 (Donnelly Decl.") at ¶¶ 8, 11-15. The Clerk of the Court noticed default against the Individual

---

[2] Defendant Tarek Investors, Inc. had not yet defaulted when Plaintiff filed this motion. On June 20, 2019, the Clerk of the Court noticed Default against Tarek Investors, Inc. Plaintiff has not moved for default judgment against Tarek Investors, Inc. as of the date of this Opinion.

[3] Defendant Zavodchiko owns Defendant Extra Trading. Id. ¶ 15. Defendants Bokarev and Panko co-own Defendant Green Road Corp. Id. ¶ 18.

Defendants on February 28, 2018, and against the Entity Defendants on April 26, 2018, for their failure to plead or otherwise defend this action.  Id. at ¶10.

Plaintiff seeks injunctive relief, disgorgement of ill-gotten gains, prejudgment interest, and imposition of civil penalties stemming from Defendants' alleged violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.§ 78j(b),  and Rule 10b-5, 17 C.F.R. § 240.10b5; and Sections 20(b) and 20(e) of the Exchange Act, 15 U.S.C. §§ 78t(b) and (e).  Compl. ¶ 155-167.

## II. LEGAL STANDARD

The Court has discretion to enter a default judgment, but a decision on the merits is preferred.  See Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008).

Before entering default judgment, the court must:  (1) determine whether it has jurisdiction over both the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages.  See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011).  Although the Court accepts facts pled in the Complaint as true for the purpose of determining liability, Plaintiff must prove damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Furthermore, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party

4

subject to default. See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## III.  ANALYSIS

### A. Jurisdiction & Service

This Court has subject matter jurisdiction pursuant to Sections 20(b) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b) and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.  See 28 U.S.C. § 1331.

This Court has personal jurisdiction over Defendants. Federal securities laws authorize nationwide service of process.  See 15 U.S.C. §§ 77v(a), 78aa.  When a federal statute authorizes nationwide service of process, personal jurisdiction can be established when a defendant has minimum contacts with the United States as a whole, despite the defendant having no minimum contacts with the forum state where the federal court sits.  See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 371-73 (3d Cir. 2002); S.E.C. v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC, No. 17-01287, 2018 WL 4676043, at *4 (D.N.J. Sept. 27, 2018).   Furthermore, a foreign company who buys and sells securities in the U.S. Market "purposefully avail[s] [themselves] of the privilege of conducting activities in the American securities market, and thereby establish[es] the requisite minimum contacts with the United States." Pinker, 292 F.3d at 371.

Here, Defendants purposefully availed themselves by buying and selling securities on U.S. stock exchanges, thereby establishing the requisite minimum contacts with the United States. Compl. ¶ 1-9.  The Court has personal jurisdiction over Defendants in light of the applicable nationwide service of process provision.  Venue is proper in this judicial district pursuant to

Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Id. ¶ 13.

As noted in Section I, supra, Defendants were properly served by means approved by the Court.  ECF Nos. 17-18, 20-21, 27, 29, 33-34, 36, and 37.

**B. Liability**

As Defendants have not filed an Answer or otherwise responded to the Complaint, the Court must accept the truthfulness of Plaintiff's well-pled allegations as to liability.  Comdyne, 908 F.2d at 1149.  For the reasons expressed below, the Court is satisfied that Plaintiff adequately pled claims against Defendants for violations of federal securities laws.

Plaintiff's Complaint consists of four counts:  (1) Violation of Section 17(a) of the Securities Act; (2) Violation of Section 10(b) of the Exchange Act and Rule 10b-5; (3) Violation of Section 20(b) of the Exchange Act; and (4) Violation of Section 20(e) of the Exchange Act.  Compl. ¶ 155-167.

**1. Violation of Section 17(a) of the Securities Act; Section 10(b) of the Exchange Act, and Rule 10b-5 (Counts One and Two)**

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 prohibit fraudulent conduct in connection with the purchase or sale of securities.  15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); 15 U.S.C.§ 78j(b); 17 C.F.R. § 240.10b-5; See United States v. Naftalin, 441 U.S. 768, 772-73 (1979).  The elements Plaintiff is required to show to prove violations under these sections are "essentially the same."  S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996).  Plaintiff must show that: (1) Defendants made misrepresentations, omissions, or used a fraudulent device; (2) the misrepresentations or omissions were material; (3) the misrepresentations or omissions were made in connection with the sale of securities; and (4) the misrepresentations or omissions were made in connection with interstate commerce.  See S.E.C.

6

v. Desai, 145 F. Supp. 3d 329, 335–36 (D.N.J. 2015), aff'd, 672 F. App'x 201 (3d Cir. 2016); See also First Jersey Sec., 101 F.3d at 1467.

Moreover, Plaintiff must show that Defendants made the misrepresentations or omissions with scienter. See Desai, 145 F. Supp. 3d at 335–36. Scienter is an intent to "deceive, manipulate or defraud." S.E.C. v. Cooper, 142 F. Supp. 3d 302, 313 (D.N.J. 2015); See S.E.C. v. Infinity Grp. Co., 212 F.3d 180, 192 (3d Cir. 2000). Scienter may be established by pleading facts that constitute circumstantial evidence of reckless or conscious behavior and the evidence establishes a motive or opportunity to engage in fraudulent activities. See Roofer's Pension Fund v. Papa, No. 16-2805, 2018 WL 3601229, at *15 (D.N.J. July 27, 2018).

The Court finds that Plaintiff has sufficiently pled these elements. Defendants engaged in a massive fraudulent scheme with a network of traders to defraud the United States by using hackers to illegally gain access to protected financial information. Compl. ¶¶ 5-6; 77,102. The Hackers intentionally hacked into Newswire Services' computer systems and illegally obtained unpublished press releases, which they transferred to Defendants. Id. ¶¶ 5-6; 77,102. The Hackers used deceptive means to attempt to hide their illegal activities by using stolen username and password information, deploying malicious computer codes deleted evidence of their attacks, concealing their identities and the locations of their computers, and accessing Newswire Services' servers through a back door. Id. ¶ 79. Defendants concealed their illicit activities by using undisclosed subaccounts and offshore commercial entities. Id. ¶¶ 7, 108, 110. In concert with the Hackers, Defendants bought and sold stock based on the stolen inside information, allowing them to collectively realize nearly $19.5 million in illicit profits. Id. ¶¶ 1, 9, 108; See Canjels Decl. ¶¶ 10-13 and Tables 1 and 2A-2D.

7

Plaintiff adequately alleges that the actions taken by Defendants constitute violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. Accordingly, the Court finds that Defendants are liable on Counts One and Two of the Complaint.

**2. Violation of Section 20(b) of the Exchange Act (Count Three)**

Section 20(b) of the Exchange Act states that it "shall be unlawful for any person, directly, or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of [the Exchange Act] or any rule or regulation thereunder through or by means of any other person." 15 U.S.C. § 78t(b).

To establish liability under Section 20(b) of the Exchange Act, Plaintiff must allege facts that show: (1) an underlying primary violation of the Exchange Act by a controlled person or entity; (2) Defendants had control over the primary violator; and (3) Defendants were culpable participants in the fraudulent scheme. Padgett v. RiT Techs. Ltd., No. 16-4579, 2019 WL 913154, at *8 (D.N.J. Feb. 22, 2019); See Wilson v. Bernstock, 195 F. Supp. 2d 619, 642 (D.N.J. 2002).

For the reasons set forth in Section (III)(B)(I), supra, the Court finds that there was an underlying primary violation of the Exchange Act. The Court further finds that Defendants had control over the primary violator of the federal securities law and Defendants were culpable participants in the fraudulent scheme. Accordingly, the Court finds that Defendants violated Section 20(b) of the Exchange Act and are liable on Count Three.

**3. Violation of Section 20(e) of the Exchange Act (Count Four)**

Section 20(e) of the Exchange Act provides that a person who "knowingly provides substantial assistance" to another in violating the Exchange Act is liable "to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(e).

8

To establish liability for aiding and abetting under this Section, Plaintiff must allege facts that show: (1) an underlying securities violation; (2) that Defendants had knowledge of the act that resulted in a securities violation; and (3) that Defendants "knowingly and substantially participated" in the securities violation. See S.E.C. v. Kearns, 691 F. Supp. 2d 601, 614–15 (D.N.J. 2010); S.E.C. v. Lucent Techs., Inc., 610 F.Supp.2d 342, 361 (D.N.J. 2009).

Through their illicit trading, payments to the Hackers, and their deceptive means to conceal their activities, Defendants knowingly and substantially participated in securities violations. Accordingly, the Court finds Defendants are liable on Count Four of the Complaint.

**C. Appropriateness of Default Judgment**

Next, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. The Court concludes that in the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense. See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012).

The Court further finds that Plaintiff will suffer prejudice absent entry of default judgment, as it would have no other means of obtaining relief.

Lastly, Defendants' failure to respond to the Complaint—which contains allegations of serious financial injuries resulting from intentional fraudulent misconduct—satisfies the culpable conduct standard. See Mrs. Ressler's Food Prod. v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017) (finding that "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the

9

culpable conduct standard"); Compl. ¶ 9.  Plaintiff also alleges that Defendants are not infants or otherwise incompetent, and are not presently engaged in military service.   Compl. ¶ 9.

### D. Injunctive Relief

The Court shall grant a plaintiff's request to enjoin a defendant from engaging in activities that violate federal securities laws upon a showing that past violations have occurred.  See S.E.C. v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980); See also S.E.C. v. Teo, No. 04-01815, 2011 WL 4074085, at *8 (D.N.J. Sept. 12, 2011), aff'd, 746 F.3d 90 (3d Cir. 2014).  Injunctive relief is proper in order to protect the public and investors, and to deter defendants from future violations of federal securities law.  Bonastia, 615 F.2d at 912; See S.E.C. v. Chester Holdings, Ltd., 41 F. Supp. 2d 505, 527 (D.N.J. 1999).

The Third Circuit has named five factors the court must consider when determining the likelihood that Defendants will violate federal securities laws in the future:  (1) the degree of Defendants' scienter; (2) whether the infraction was of an isolated or recurrent nature; (3) Defendants' recognition of the wrongfulness of their conduct; (4) Defendants' sincere assurance against future violations; and (5) the likelihood that future violations might occur because of Defendants' professional occupations.  See Teo, 2011 WL 4074085 at *8–9; Bonastia, 615 F.2d at 912.

Considering these factors, the Court concludes that Defendants should be enjoined from committing future violations.  Defendants acted with the requisite mental state and used deceptive means to conceal their activities that violated federal securities laws.  Compl. ¶¶ 7, 79, 84, 107.  Defendants participated in this scheme for a number of years.  Id. ¶¶ 1-10, 61-62.  Defendants made over 275 illegal trades and collected approximately $19.35 million.  See Canjels Decl. at ¶ 10-13.  Defendants have not responded to Plaintiff's Complaint and therefore have not shown

recognition of the wrongfulness of their actions, nor have they shown any assurance against any future violations. See Donnelly Decl. at ¶¶ 8, 11-15. The Court will accordingly grant Plaintiff's request for injunctive relief.

### E. Disgorgement of Ill-Gotten Gains

The Securities Act and the Exchange Act allow Plaintiff to see disgorgement of all profits realized through Defendants' misconduct. See 15 U.S.C. §77v(a); 15 U.S.C. §78aa. While Plaintiff is not required to establish a disgorgement amount with certainty, it must show that the disgorgement figure "reasonably approximates the amount of unjust enrichment." U.S. Funding Corp., 2006 WL 995499, at *7; See Chester Holdings, Ltd., 41 F.Supp.2d at 528. The burden then shifts to Defendants to show why the Plaintiff's calculation "was not reasonable." U.S. Funding Corp., 2006 WL 995499, at *7.

Plaintiff submits that Individual Defendants should be held jointly and severally liable with the entities they control in the following amounts: (1) Zavodchikov and Extra Trading: $2,120,618; (2) Bokarev, Panko, and Green Road: $3,161,160; (3) Alepko and Solar Line: $4,426,507; and (4) Maslov: $9,653,814. See Canjels Decl. ¶¶ 10-13 and Tables 1 and 2A-2D. Defendants have not contested these calculations. Upon review of the detailed declarations and attached exhibits, the Court is satisfied that the requested disgorgement amounts are appropriate.

### F. Prejudgment Interest

The Court has discretion over whether to order prejudgment interest on damages awarded pursuant to federal securities laws. See U.S. Funding Corp., 2006 WL 995499, at *7. When exercising discretion, courts must consider both fairness and compensation. See S.E.C. v. Antar, 97 F. Supp. 2d 576, 589 (D.N.J. 2000). Similar to ordering full disgorgement of ill-gotten gains, an award of prejudgment interest is appropriate to prevent unjust enrichment. Id. Prejudgment

interest is warranted where Plaintiff can show Defendants acted with scienter. See S.E.C. v. Secure Capital Funding, No. 11-916, 2014 WL 1716226, at *2 (D.N.J. Apr. 29, 2014); U.S. Funding Corp., 2006 WL 995499, at *7.

The Third Circuit has adopted the methodology to calculate prejudgment interest on disgorgement obligations in the same manner that the Internal Revenue Service uses to calculate tax underpayments pursuant to 26 U.S.C. § 6621(a)(2). See Antar, 97 F. Supp. 2d at 588; See also S.E.C. v. Cope, No. 14-7575, 2018 WL 3628899, at *5 (S.D.N.Y. July 30, 2018). Furthermore, to the extent that Defendants have some of their assets frozen, the value of those assets must be excluded from the calculation because they have already been denied use of those assets for a period of time. See S.E.C. v. Razmilovic, 738 F.3d 14, 36 (2d Cir. 2013), as amended (Nov. 26, 2013).

Plaintiff submits that the Individual Defendants should be held jointly and severally liable with the corporate entities they control in the following amounts: (1) Zavodchikov and Extra Trading: $69,889.75; (2) Bokarev, Panko, and Green Road: $145,369.75; (3) Alepko and Solar Line: $344,030.60; and (4) Maslov: $571,246.31. See Donnelly Decl. ¶¶ 16-23 and Ex. 1-4. Plaintiff also submits that the prejudgment interest calculation excludes any assets from the date they were frozen. Id. ¶ 19. Defendants have not contested these calculations. After review of the detailed declarations and attached exhibits, the Court is satisfied that the requested prejudgment interest amounts are appropriate.

**G. Civil Penalties**

Section 21A of the Exchange Act applies upon a showing that a person has violated federal securities laws by buying and selling securities "while in possession of material, nonpublic information in . . . a transaction on or through the facilities of a national securities exchange . . . .

which is not part of a public offering by an issuer of securities." 15 U.S.C. § 78u-1(a)(1). Plaintiff may bring an action in a United States district court to seek civil penalties to be paid by the defendants who violated federal securities laws. See id. § 78u-1(a)(1)(A). The court will determine the amount of the penalty in light of the facts and circumstances presented, but the penalty must not exceed three times the profit gained or loss as the result of the illegal buying and selling of securities. Id. § 78u-1(a)(2). The court will also look to a number of factors, including: "(1) the egregiousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) the defendant's failure to admit to his wrongdoing; (5) whether the defendant's misconduct created substantial losses or the risk of substantial losses to others; and 6) the defendant's lack of cooperation and honesty with authorities." S.E.C. v. Clay Capital Mgmt., LLC, No. 11-05020, 2013 WL 5946989, at *7 (D.N.J. Nov. 6, 2013); See S.E.C. v. Johnson, No. 02-5490, 2004 WL 5561799, at *5 (D.N.J. Aug. 27, 2004), aff'd as modified, 174 F. App'x 111 (3d Cir. 2006).

Considering these factors, the Court concludes that Defendants should pay the maximum civil penalty for their violations of federal securities laws. In light of the facts and circumstances presented, the Court finds that Defendants acted intentionally for a number of years in a massive scheme to defraud investors. Compl. ¶¶ 1-10, 61-62, 79, 84, 107. Their conduct allowed them to realize millions of dollars and their failure to respond to the Complaint shows their lack of cooperation in this matter. Id. ¶¶ 1, 9, 108; See Canjels Decl. ¶¶ 8-15 and Tables 1 and 2A-2D.

Plaintiff requests that the Court impose the following penalties: (1) Defendants Zavodchikov and Extra Trading Company are jointly and severally liable for a monetary penalty of $6,361,854; (2) Defendants Bokarev, Panko, and Green Road Corp. are jointly and severally liable for a monetary penalty of $9,483,480; (3) Defendants Alepko and Solar Line Inc. are jointly

13

and severally liable for a monetary penalty of $13,279,521; and (4) Defendant Maslov is liable for a monetary penalty of $28,961,442. Defendants have not contested these calculations. After review of the detailed declarations and attached exhibits, the Court is satisfied that the requested civil penalties are appropriate.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for entry of default judgment is **GRANTED** as to its request for judgment in the following amounts:

a) Defendants Zavodchikov and Extra Trading Company are jointly and severally liable for $2,120,618 in disgorgement, $69,889.75 in prejudgment interest, and a monetary penalty of $6,361,854;

b) Defendants Bokarev, Panko, and Green Road Corp. are jointly and severally liable for a $3,161,160 in disgorgement and $145,369.75 in prejudgment interest and a monetary penalty of $9,483480;

c) Defendants Alepko and Solar Line Inc. are jointly and severally liable for $4,426,507 in disgorgement, $344,030.60 in prejudgment interest, and a monetary penalty of $13,279,521; and

d) Defendant Maslov is liable for disgorgement of $9,653,814 in disgorgement, $571,246.31 in prejudgment interest, and a monetary penalty of $28,961,442.

Each Defendant shall satisfy their obligation by paying the amounts owed to the Commission within 14 days after entry of this Final Judgment.

Plaintiff's request for injunctive relief is **GRANTED**, and Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of Order by personal service or otherwise are enjoined from future violations

of violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C.§ 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b5; and Sections 20(b) and 20(e) of the Exchange Act, 15 U.S.C. §§ 78t(b) and (e).

Plaintiff's request that the Temporary Restraining Order issued on February 17, 2016 and in the Preliminary Injunction issued on February 29, 2017 be lifted for the limited purpose of the assets, up to the amount owed under this Order, be transferred to an account designated by the Plaintiff is **GRANTED**.

Dated: July 31, 2019

*/s/ Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**
