NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>EVGENII ZAVODCHIKOV, et al.,<br><br>*Defendants*. | Civil Action No. 16-845<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court upon application by Plaintiff Securities and Exchange Commission ("the Commission") for entry of default judgment against Tarek Investors Inc. ("Defendant" or "Tarek") pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 53. For the reasons set forth herein, the motion is **GRANTED**.

**I.    BACKGROUND**

This action arises from an alleged international fraudulent scheme operated and promoted by Defendant and other parties. Defendant had assisted and participated in perpetrating the scheme in concert with other individuals, who are named as defendants in a related enforcement action, S.E.C. v. Dubovoy, No. 15-06076 (D.N.J.). Compl. ¶ 1, ECF No. 1.

Tarek is a corporation formed under the laws of Panama and owned by another defendant in this matter, Anton Maslov ("Maslov"). Id. ¶¶ 1, 22. Default judgment was previously entered against Maslov and seven others: Evengii Zvodihikov, Extra Trading Company, Andrey Bokarev, Radion Panko, Green Road Corp., Natalia Andreevna Alepko, and Solar Line, Inc. (collectively,

the "Defaulted Defendants"). See ECF Nos. 50-51. The Commission explained that was not included in the previous application for default because it had not yet been properly served with process. See SEC Mem. at 1, ECF No. 53.1.

The fraudulent scheme operated as follows. From 2010 to 2014, two Ukrainian citizens[1] hacked into the computer systems of Marketwired L.P. and PR Newswire Association LLC (collectively, the "Newswire Services") and stole thousands of press releases that had been uploaded by publicly traded companies. Compl. ¶¶ 1-10, 61-62. These press releases contained quarterly earnings data and other important financial information. Id. ¶¶ 61-62, 73-74.

During the window of time between when the public companies uploaded their press releases and when the Newswire Services published those releases, the Hackers gained unauthorized access to the unpublished press releases and shared the information contained therein with Defaulted Defendants and Tarek. Id. ¶¶ 5-6, 76-77, 102. Defaulted Defendants and Tarek bought and sold stock based on the stolen, confidential information, which allowed them to collectively realize nearly $19.5 million in illicit profits. Id. ¶¶ 1, 9, 108; see also December 4, 2018 Declaration of Eugene Canjels ¶¶ 10-13, Tables 1 & 2A-2D, ECF No. 45 ("Canjels Decl."). Tarek is alleged to have earned more than $9.6 million in gross profits through this scheme. Id. ¶ 13.

Tarek agreed to pay the Hackers a flat fee or a percentage of the illicit profits obtained from trading in exchange for access to the confidential information from the Newswire Services. Id. ¶ 89. Tarek used deceptive means to conceal their participation in the scheme, and the associated trading, by using undisclosed subaccounts and through the creation and use of offshore commercial entities. Id. ¶¶ 7, 108.

---

[1] Oleksandr Ieremenko and Ivan Turchynov (collectively, the "Hackers") are defendants in a related enforcement action, S.E.C. v. Dubovoy, 15-6076 (D.N.J.).

## II. PROCEDURAL HISTORY

On February 17, 2016, the Commission filed the Complaint against Defendant. ECF No. 1. That same day, the Court granted the Commission's motion for a temporary restraining order, which froze Defendants' assets in certain accounts and prohibited Defendants from destroying, altering, or concealing records. See Temporary Restraining Order, ECF No. 6 ("TRO"). The Court subsequently issued a preliminary injunction that granted the same relief. See ECF No. 10 ("Preliminary Injunction Order").

On June 19, 2019, the Commission requested that a default be entered against Tarek, and the Clerk's office entered default on June 20, 2019. See ECF No. 49. The Commission filed the instant Motion for Default Judgment on August 2, 2019. ECF No. 53.

## III. LEGAL STANDARD

The Court has discretion to enter a default judgment, but a decision on the merits is preferred. See Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008).

Before entering default judgment, the Court must determine whether: (1) it has jurisdiction over both the subject matter and parties; (2) the defendant has been properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the Court accepts facts pled in the Complaint as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Furthermore, prior to entering a default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

**IV.    ANALYSIS**

**A.    Jurisdiction & Service**

The Court has subject matter jurisdiction pursuant to Sections 20(b) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b) and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. See 28 U.S.C. § 1331.

The Court has personal jurisdiction over Tarek. Federal securities laws authorize nationwide service of process. See 15 U.S.C. §§ 77v(a), 78aa. When a federal statute authorizing nationwide service of process, personal jurisdiction can be established when a defendant has minimum contacts with the United States as a whole, despite the defendant having no minimum contacts with the forum state where the federal court sits. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 371-73 (3d Cir. 2002); S.E.C. v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC, No. 17-01287, 2018 WL 4676043, at *4 (D.N.J. Sept. 27, 2018). Additionally, a foreign company who buys and sells securities in the U.S. market "purposefully avail[s] [themselves] of the privilege of conducting activities in the American securities market, and thereby establish[es] the requisite minimum contacts with the United States." Pinker, 292 F.3d at 371.

Here, Tarek purposefully availed itself of the forum by buying and selling securities on U.S. stock exchanges, thereby establishing the requisite minimum contacts with the United States.

See Compl. ¶1-9; Pinker 292 F.3d at 371-72. The Court therefore has personal jurisdiction over Tarek in light of the nationwide service of process provision. Venue is proper in this judicial district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Id. ¶ 13.

The Inter-American Convention on Letters Rogatory governs service of process in civil matters between the United States and Panama. See Donnelly Decl. ¶ 2, ECF No. 48. After submitting the Complaint and other relevant documents to Panama's Central Authority, the Ministry of Foreign Affairs, the Commission received confirmation that Tarek was served on May 16, 2019. Id. ¶¶ 3, Exs. A-C. Panama's Supreme Court of Justice, Fourth Chamber of General Business approved the service on Tarek in accordance with the Inter-American Convention and service was, therefore, proper. Id. ¶¶ 4, 6.

### B. Liability

As Defendant has not filed an Answer or otherwise responded to the Complaint, the Court accepts the truthfulness of the Commission's well-pled allegations as to liability. Comdyne, 908 F.2d at 1149. For the reasons expressed below, the Court is satisfied that the Commission adequately pled claims against Tarek for violations of federal securities law. Additionally, since the facts and arguments articulated in the Memorandum of Law filed in support of the First Default Judgment would apply equally to Tarek, the Court will incorporate those facts and arguments into its analysis.

The Commission's Complaint consists of four counts: (1) Violation of Section 17(a) of the Securities Act; (2) Violation of Section 10(b) of the Exchange Act and Rule 10b-5; (3) Violation of Section 20(b) of the Exchange Act; and (4) Violation of Section 20(e) of the Exchange Act. Compl. ¶¶ 155-167.

### 1. Violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 (Counts One and Two)

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 prohibit fraudulent conduct in connection with the purchase or sale of securities. 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); 15 U.S.C.§ 78j(b); 17 C.F.R. § 240.10b-5; see also United States v. Naftalin, 441 U.S. 768, 772-73 (1979). The elements to prove violations under these sections are "essentially the same." S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996). The Commission must show that: (1) Defendant made misrepresentations, omissions, or used a fraudulent device; (2) the misrepresentations or omissions were material; (3) the misrepresentations or omissions were made in connection with the sale of securities; and (4) the misrepresentations or omissions were made in connection with interstate commerce. See S.E.C. v. Desai, 145 F. Supp. 3d 329, 335-36 (D.N.J. 2015), aff'd, 672 F. App'x 201 (3d Cir. 2016); see also First Jersey Sec., 101 F.3d at 1467.

Additionally, the Commission must demonstrate that Defendant made the misrepresentations or omissions with scienter. See Desai, 145 F. Supp. 3d at 335–36. Scienter is an intent to "deceive, manipulate or defraud." S.E.C. v. Cooper, 142 F. Supp. 3d 302, 313 (D.N.J. 2015); S.E.C. v. Infinity Grp. Co., 212 F.3d 180, 192 (3d Cir. 2000). Scienter may be established by pleading facts that constitute circumstantial evidence of reckless or conscious behavior and the evidence establishes a motive or opportunity to engage in fraudulent activities. See Roofer's Pension Fund v. Papa, No. 16-2805, 2018 WL 3601229, at *15 (D.N.J. July 27, 2018).

The Court finds that the Commission has sufficiently pled these elements. Tarek participated in a massive fraudulent scheme with a network of traders to defraud the United States by using hackers to illegally gain access to protected financial information. Compl. ¶¶ 5-6, 77, 102. The Hackers intentionally hacked into Newswire Services' computer systems and illegally

obtained unpublished press releases, which they transferred to Defendant. Id. The Hackers used deceptive means to attempt to hide their illegal activities by using stolen username and password information, deploying malicious computer codes deleted evidence of their attacks, concealing their identities and the locations of their computers, and accessing Newswire Services' servers through a back door. Id. ¶ 79. Tarek actively concealed their illicit activities in this scheme. Id. ¶ 7. In concert with the Hackers, Tarek bought and sold stock based on the stolen inside information, allowing them to collectively realize nearly $9.6 million in illicit profits. Id. ¶¶ 1, 9, 108; see also Canjels Decl. ¶¶ 10-13, Tables 1 & 2D.

The Commission adequately alleges that the actions taken by Defendants constitute violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. Accordingly, the Court finds that Defendant is liable on Counts One and Two of the Complaint.

### 2. Violation of Section 20(b) of the Exchange Act (Count Three)

Section 20(b) of the Exchange Act states that it "shall be unlawful for any person, directly, or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of [the Exchange Act] or any rule or regulation thereunder through or by means of any other person." 15 U.S.C. § 78t(b).

To establish liability under Section 20(b) of the Exchange Act, the Commission must allege facts that show: (1) an underlying primary violation of the Exchange Act by a controlled person or entity; (2) Defendant had control over the primary violator; and (3) Defendant was a culpable participant in the fraudulent scheme. See Padgett v. RiT Techs. Ltd., No. 16-4579, 2019 WL 913154, at *8 (D.N.J. Feb. 22, 2019); Wilson v. Bernstock, 195 F. Supp. 2d 619, 642 (D.N.J. 2002).

For the reasons set forth in Section III.B.1. supra, the Court finds that there was an underlying primary violation of the Exchange Act. The Court further finds that Tarek had control over the primary violator of the federal securities law and was a culpable participant in the fraudulent scheme. Accordingly, the Court finds that Tarek violated Section 20(b) of the Exchange Act and is liable on Count Three.

### 3. Violation of Section 20(e) of the Exchange Act (Count Four)

Section 20(e) of the Exchange Act provides that a person who "knowingly provides substantial assistance" to another in violating the Exchange Act is liable "to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(e).

To establish liability for aiding and abetting under this Section, the Commission must allege facts that show: (1) an underlying securities violation; (2) that Defendant had knowledge of the act that resulted in a securities violation; and (3) that Defendant "knowingly and substantially participated" in the securities violation. See S.E.C. v. Kearns, 691 F. Supp. 2d 601, 614-15 (D.N.J. 2010); S.E.C. v. Lucent Techs., Inc., 610 F.Supp.2d 342, 361 (D.N.J. 2009).

Through its illicit trading, payments to the Hackers, and its deceptive means to conceal its activities, Tarek knowingly and substantially participated in securities violations. Accordingly, the Court finds Tarek liable on Count Four of the Complaint.

### C. Appropriateness of Default Judgment

Before entering a default judgment, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. The Court concludes that in the absence of any responsive pleading and based upon the facts

alleged in the Complaint, Tarek does not have a meritorious defense.  See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012).

The Court further finds that the Commission will suffer prejudice absent entry of default judgment, as it would have no other means of obtaining relief, and this matter has been pending for nearly four years.

Lastly, Defendant's failure to respond to the Complaint—which contains allegations of serious financial injuries resulting from intentional fraudulent misconduct—satisfies the culpable conduct standard.  See Mrs. Ressler's Food Prod. v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017) (finding that "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard"); Compl. ¶ 9.

### D. Injunctive Relief

The Court shall grant the Commission's request to enjoin a defendant from engaging in activities that violate federal securities laws upon a showing that past violations have occurred. See S.E.C. v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980); see also S.E.C. v. Teo, No. 04-01815, 2011 WL 4074085, at *8 (D.N.J. Sept. 12, 2011), aff'd 746 F.3d 90 (3d Cir. 2014).  Injunctive relief is proper in order to protect the public and investors, and to deter defendants from future violations of federal securities law.  Bonastia, 615 F.2d at 912; S.E.C. v. Chester Holdings, Ltd., 41 F. Supp. 2d 505, 527 (D.N.J. 1999).

The Third Circuit has noted five factors that the Court must consider when determining the likelihood that Defendant will violate federal securities laws in the future:  (1) the degree of Defendant's scienter; (2) whether the infraction was of an isolated or recurrent nature; (3) Defendant's recognition of the wrongfulness of their conduct; (4) Defendant's sincere assurance

against future violations; and (5) the likelihood that future violations might occur because of Defendant's professional occupations. See Teo, 2011 WL 4074085 at *8–9; Bonastia, 615 F.2d at 912.

Considering these factors, the Court concludes that Tarek should be enjoined from committing future violations of the securities laws. Tarek, and its owner Maslov, acted with scienter and used deceptive means to conceal their illegal activities that violated federal securities. Compl. ¶¶ 7, 79, 84, 107. Tarek also participated in this scheme for several years, id. ¶¶ 1-10, 61-62, placing numerous illegal trades and reaping over $9.6 million in illicit profits. See Canjels Decl. at ¶ 13. Tarek has still not responded to the Complaint and therefore has not shown recognition of the wrongfulness of its actions, nor has it shown any assurance against any future violations. The Court will accordingly grant Plaintiff's request for injunctive relief.

### E. Disgorgement of Ill-Gotten Gains

The Securities Act and the Exchange Act allow the Commission to seek disgorgement of all profits realized through Defendant's misconduct. See 15 U.S.C. §77v(a); 15 U.S.C. §78aa. While the Commission is not required to establish a disgorgement amount with certainty, it must show that the disgorgement figure "reasonably approximates the amount of unjust enrichment." U.S. Funding Corp., 2006 WL 995499, at *7; see also Chester Holdings, Ltd., 41 F.Supp.2d at 528. The burden then shifts to Defendant to show why the Commission's calculation "was not reasonable." U.S. Funding Corp., 2006 WL 995499, at *7.

The Commission submits that Tarek be required to pay disgorgement in the amount of $9,653,814. See Canjels Decl. ¶¶ 13 and Tables 1 and 2D. Upon review of the detailed declarations and attached exhibits, the Court is satisfied that the requested disgorgement amount is appropriate.

F.  **Prejudgment Interest**

The Court has discretion over whether to order prejudgment interest on damages awarded pursuant to federal securities laws. See U.S. Funding Corp., 2006 WL 995499, at *7. When exercising its discretion, the Court must consider both fairness and compensation. See S.E.C. v. Antar, 97 F. Supp. 2d 576, 589 (D.N.J. 2000). Similar to ordering full disgorgement of ill-gotten gains, an award of prejudgment interest is appropriate to prevent unjust enrichment. Id. Prejudgment interest is warranted where the Commission can show that the defendant acted with scienter. See S.E.C. v. Secure Capital Funding, No. 11-916, 2014 WL 1716226, at *2 (D.N.J. Apr. 29, 2014); U.S. Funding Corp., 2006 WL 995499, at *7.

The Third Circuit has adopted the methodology to calculate prejudgment interest on disgorgement obligations in the same manner that the Internal Revenue Service uses to calculate tax underpayments pursuant to 26 U.S.C. § 6621(a)(2). See Antar, 97 F. Supp. 2d at 588. Furthermore, to the extent that Tarek's assets have been frozen, the value of those frozen assets must be excluded from the calculation because Tarek has already been denied use of those assets for a period of time. See S.E.C. v. Razmilovic, 738 F.3d 14, 36 (2d Cir. 2013), as amended (Nov. 26, 2013).

The Commission submits that Tarek, as a corporate entity, should be held liable for $571,246.31 in prejudgment interest. See SEC Mem. at 12-13. Specifically, the Commission argues that Tarek should be liable for the same amount of prejudgment interest as its owner, Maslov, see id. at 13 n.2 (citing Donnelly Decl. ¶23 and Ex. 4, ECF Nos. 46, 46.4), and submits that the prejudgment interest calculation excludes any assets from the date they were frozen. Because Tarek's disgorgement is equal to that of Maslov, and for the reasons previously set forth

by the Court in the Defaulted Defendants Opinion, see ECF No. 50 at 12, the Court finds that an award of $571,246.31 in prejudgment interest is appropriate as against Tarek.

### G. Civil Penalties

Section 21A of the Exchange Act applies upon a showing that a person has violated federal securities laws by buying and selling securities "while in possession of material, nonpublic information in . . . a transaction on or through the facilities of a national securities exchange . . . which is not part of a public offering by an issuer of securities." 15 U.S.C. § 78u-1(a)(1). The Commission may bring an action in a United States district court to seek civil penalties to be paid by the defendants who violated federal securities laws. See id. § 78u-1(a)(1)(A). The Court will determine the amount of the penalty in light of the facts and circumstances presented, but the penalty must not exceed three times the profit gained or loss as the result of the illegal buying and selling of securities. Id. § 78u-1(a)(2). The Court will also look to a number of factors, including: "(1) the egregiousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) the defendant's failure to admit to his wrongdoing; (5) whether the defendant's misconduct created substantial losses or the risk of substantial losses to others; and 6) the defendant's lack of cooperation and honesty with authorities." S.E.C. v. Clay Capital Mgmt., LLC, No. 11-05020, 2013 WL 5946989, at *7 (D.N.J. Nov. 6, 2013).

Considering these factors, the Court concludes that Defendant should pay the maximum civil penalty for their violations of federal securities laws—three times the amount of their ill-gotten gains. In light of the facts and circumstances presented, the Court finds that Defendant acted intentionally for a number of years in a massive scheme to defraud investors. Compl. ¶¶ 1-10, 61-62, 79, 84, 107. Tarek's conduct allowed it to realize millions of dollars and its failure to

respond to the Complaint shows a complete lack of cooperation in this matter.  Id. ¶¶ 1, 9, 108; Canjels Decl. ¶¶ 8-9, 13 and Tables 1 & 2D.

The Commission requests that the Court impose the following penalties a monetary penalty of $28,961,442 (three times the disgorgement amount of $9,653,814).  Defendant Tarek has not contested this calculation.  After review of the detailed declarations and attached exhibits, the Court is satisfied that the requested civil penalties are appropriate.

**IV.    CONCLUSION**

For the reasons set forth above, Plaintiff's motion for entry of default judgment is **GRANTED** as to its request for judgment in the following amounts: $9,653,814 in disgorgement, $571,246.31 in prejudgment interest, and a civil monetary penalty of $28,961,442.

Defendant shall satisfy its obligation by paying the amount owed to the Commission within 14 days after entry of this Final Judgment.

The Commission's request for injunctive relief is **GRANTED**, and Defendant Tarek, along with its agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of Order by personal service or otherwise are enjoined from future violations of violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C.§ 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b5; and Sections 20(b) and 20(e) of the Exchange Act, 15 U.S.C. §§ 78t(b) and (e).

The Commission's request that the TRO issued on February 17, 2016, ECF Nos. 5-6, and in the Preliminary Injunction issued on February 29, 2017, ECF No. 10, be lifted for the limited

purpose of transferring assets, up to the amount owed under this Order, to an account designated by the Commission is **GRANTED**.

Dated: 02/10/2020

*/s/ Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**